ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAIME RIVERA,                    :

        Petitioner         :        No. 1:CV-01-0096

                     :

        v.               :        (Judge Caldwell)

                     :

WARDEN, L.S.C.I. ALLENWOOD,      :        (Magistrate Judge Blewitt)

        Respondent         :

FILED
HARRISBURG, PA

MAR 0 7 2001

MARY E. D'ANDREA, CLERK
Per _____
              Deputy Clerk

GOVERNMENT'S EXHIBITS IN SUPPORT OF ITS
RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS

DAVID M. BARASCH
United States Attorney

KATE L. MERSHIMER
Assistant U.S. Attorney
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA    17108-1754
717/221-4482

Date: March 7, 2001

**EXHIBIT - 1**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### FORM FOR MOTIONS UNDER 28 U.S.C. §2255

UNITED STATES OF AMERICA

vs.                                     Criminal Indictment No. 91-00394-01

JAIME RIVERA
(full name of movant)                   (include name under which you were convicted)

(If movant has a sentence to be served in the *future* under a federal judgment which he wishes to attack, he should file a motion in the federal court which entered the judgment).

JAIME RIVERA
Name

44529-066
Prison Number

F.C.I. Raybrook, P.O. BOX 905, Raybrook, NY 12977
Place of Confinement

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY

### A PERSON IN FEDERAL CUSTODY

### INSTRUCTIONS—READ CAREFULLY

(1) This motion must be legibly handwritten or typewritten and signed by the movant. Any false statement of a material fact in this motion or in a motion for leave to proceed *in forma pauperis* may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form. Where more room is needed to answer any question use reverse side of sheet.

(2) Additional pages are not permitted. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

(3) Upon receipt, your motion will be filed if it is in proper order. No fee is required with this motion.

(4) If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type you may request permission to proceed *in forma pauperis,* in which event you must complete the form on the last page, setting forth information establishing your inability to pay the costs. If you wish to proceed *in forma pauperis,* you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

(5) Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different judges or divisions either in the same district or in different districts, you must file separate motions as to each judgment.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the motion you file seeking relief from any judgment of conviction. Exh.1 07

(7) When the motion is fully completed, the *original and three copies* must be mailed to the Clerk of the United States District Court whose address is *Room 2609, 601 Market Street, Philadelphia, Pennsylvania 19106.*

—2—

(8) Motions which do not conform to these instructions will be returned with a notation as to the deficiency.

MOTION

1. Name and location of court which entered the judgment of conviction under attack: United States District Court, Eastern District of Pennsylvania

2. Date of judgment of conviction: June 2, 1992

3. Length of sentence: 292 months        Sentencing Judge: Hon. Edward N. Cahn

4. Nature of offense or offenses for which you were convicted: Conspiracy to Distribute Cocaine 21 U.SC. Sec. 846, Distribution of Cocaine, 21 U.S.C. Sec. 841(a)(2), Distribution of Cocaine within 1000 Feet of a School, 21 U.S.C. Sec. 860, Possession with Intent to Distribute Cocaine, 21 U.S.C. Sec. 841(a)(2) and Criminal Forfeiture, 21 U.S.C. Sec. 853(a)(1).

5. What was your plea? (Check one)
   (a) Not Guilty ( X )
   (b) Guilty ( )
   (c) Nolo contendere ( )
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: _____

   _____

   _____

   _____

6. Kind of trial: (Check one)
   (a) Jury ( X )
   (b) Judge only ( )

7. Did you testify at the trial? Yes ( )    No ( x )

8. Did you appeal from the judgment of conviction? Yes ( X )    No ( )

9. If you did appeal, answer the following:

   (a) Name of court: United States Court of Appeals for the Third Circuit

   (b) Result: Dismissed/Withdrawn

   (c) Date of result: September 18, 1992

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court? Yes ( )    No ( x )

11. If your answer to 10 was "yes", give the following information: N/A

    (a) (1) Name of court _____

        (2) Nature of proceeding _____

— 3 —

(3) Grounds raised: _____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion? Yes ( )    No ( )

(5) Result: _____

(6) Date of Result: _____

(b) As to any second petition, application or motion, give the same information: N/A

(1) Name of court: _____

(2) Nature of proceeding: _____

(3) Grounds raised: _____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion? Yes ( )    No ( )

(5) Result: _____

(6) Date of result: _____

(c) As to any third petition, application or motion, give the same information: N/A

(1) Name of court: _____

(2) Nature of proceeding: _____

_____

(3) Grounds raised: _____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion? Yes ( )    No ( )

(d) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion? N/A
  (1) First petition, etc.     Yes ( )   No ( )
  (2) Second petition, etc.   Yes ( )   No ( )
  (3) Third petition, etc.    Yes ( )   No ( )

(e) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not: _____

09

_____

—4—

12. State *concisely* every ground on which you claim that you are being held unlawfully.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, *you should raise in this motion all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose. Do not check any of the grounds listed below. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground One:  Denial of effective assistance of counsel.

Supporting FACTS (tell your story *briefly* without citing cases or law): My trial attorney, Nino V. Tinari, Esq., failed to inform me that he was under investigation, indicted and cooperating with the U.S. Government while he was representing me. Mr. Tinari had his son enter his appearance and file Motions on my behalf unbeknownst to me in order to avoid having to inform me and the Court of his criminal problems.

B. Ground Two:  Denial of effective assistance of counsel.

Supporting FACTS (tell your story *briefly* without citing cases or law): My trial attorney, Nino V. Tinari, Esq. failed to photocopy and direct copies of any discovery materials to me prior to my trial, although I had repeatedly requested that he do this. Mr. Tinari was also requested to provide copies of the tape recorded conversation so that I could listen to them. Mr. Tinari failed to provide copies of the tape recorded conversations and additionally failed to provide copies of the transcri

(over)

10

C.  Ground Three: __Denial of effective assistance of counsel.__

Supporting FACTS (tell your story *briefly* without citing cases or law): __My trial attorney, Nino V.__
__Tinari, Esq., failed to investigate, prepare and represent me according to general__
__standards for criminal attorneys. Mr. Tinari misinformed me regarding sentencing__
__guidelines when he indicated to myself and my family that the most time I could__
__receive was a maximum sentence of ten (10) years when in fact the ten (10) year__
__time period was a mandatory minimum sentence prescribed by the charges and I was,__
in fact, sentenced to 292 months. Because Mr. Tinari informed me that the most I
__could face was ten (10) years, I failed to pursue any plea negotiations or__
__investigate any plea negotiations. (over)__

D.  Ground Four: __Denial of effective assistance of counsel.__

Supporting FACTS (tell your story *briefly* without citing cases or law): __My trial attorney, Nino V.__
__Tinari, Esq., appeared in Allentown on the day of the trial and for the first time__
__indicated to me that in order for him to represent my interests I would have to__
__waive any rights that I may have as to his conflict of interest which had to do__
__with the fact that he was currently indicted and under investigation by the__ United
States Government. I was given the option of having Mr. Tinari represent me or
proceed with the representation of the Public Defender. Mr. Tinari wilfully failed
to disclose these facts prior to trial in order to continue his silent representat
of me, receive legal fees and avoid his obligation to me.

13. If any of the grounds listed in 12A, B, C and D were not previously presented, state *briefly* what grounds were
not so presented, and give your reasons for not presenting them: None of the grounds listed above have
been previously presented to any Court. I did not raise them on my appeal to the
United States Court of Appeals for the Third Circuit since it is my understanding that
claims of ineffectiveness of counsel are generally not heard on direct appeal.
U.S. v. Rieger, 942 F.2d 230 (3rdCir. 1992). I do not believe the third Circuit would
have heard this claim on direct appeal on the basis of the record below.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?

Yes (  )    No ( X )

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judg-
ment attacked herein:
(a) At preliminary hearing: __James Heidecker, 27 West 7th St. Allentown, PA__

(b) At arraignment and plea: __Eugene Tinari, Esq. 205 North Broad St., Philadelphia, PA__

-5a-

E.     Ground Five:   <u>Denial of effective assistance of counsel</u>.

Supporting Facts (tell your story briefly without citing cases or law):

My trial attorney, Nino V. Tinari, Esquire, failed to present and argue the defense of entrapment.  Mr. Tinari failed to discuss with me the abandonment of this defense although I had repeatedly requested that he discuss all aspects of the case with me.


F.     Ground Six:   <u>Denial of effective assistance of counsel</u>.

Supporting Facts (tell your story briefly without citing cases or law):

My trial attorney, Nino V. Tinari, Esquire, failed to file a Motion for Severance or in the alternative ask for severance when the trial court granted co-defendants Motion to Admit Guilty Plea. Petitioner believes it was impossible for the jury to compartmentalize the fact that a co-defendant had plead guilty to making two distributions of cocaine from petitioner's food market when they were both charged with conspiracy in the indictment.


G.     Ground Seven:   <u>Conviction obtained by a violation of the privilege against self-incrimination</u>.

During the course of the trial the Government solicited testimony from Detective James Stevens as to the post-arrest silence of Jose Rivera.  There was an objection and a motion for a mistrial.  The objection was sustained, however, the motion for a mistrial was denied.  The trial court eventually ruled that the

12

-5b-

Government was not allowed to comment on the assertion of the right to remain silent.  The trial court recognized that it was important in the cautionary instruction that nothing said on the subject of unconstitutional testimony of the conversation between Detective Stevens and Jose Rivera be attributed to the defendant.  However, the Court concluded it would not give cautionary instruction to go to Jose Rivera.  The reference to the request to remain silent by the Government can only in the eyes of the jury indicate a predisposition of guilt of both Jose Rivera and Jaime Rivera.  The detective stated they were both arrested together.  They were both co-defendants in a conspiracy charged in the same indictment.  This violation of petitioner's rights was further compounded in that the cautionary instruction was not given until hours after the testimony.

H.    Ground Eight: <u>Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant and denial of effective assistance of counsel.</u>

Supporting Facts (tell your story briefly without citing cases or law):

During the course of the testimony of Manuel De La Cruz, a Government witness, it came to the attention of defense counsel that the witness was referring to notes.  Although the U.S. attorney admitted he had knowledge of the notes he stated that the notes were made by the witness to refresh his recollection. However, conflicting testimony was offered as to the origin and use of these notes.  The notes were ultimately turned over to defense

13

-5c-

counsel however they were turned over at such a late point in the witness' testimony that it was impossible to investigate them fully. Furthermore, defense counsel failed to object to the use of these notes by the witness and further failed to object to the improper foundation for the use of these notes.

I.    Ground Nine:  <u>Denial of effective assistance of counsel</u>.

Supporting Facts (tell your story briefly without citing cases or law):

My trial attorney, Nino V. Tinari, Esquire, failed to request appropriate jury instructions as to the credibility of the government witness, Manuel De La Cruz. Counsel should have requested a "Falsus in Uno, Falsus in Omnibus, Instruction" wherein a jury could have determined that if the witness lied that they need not believe any of his testimony.

—6—

(c) At trial: Nino V. Tinari, Esq. 205 North Broad St., Philadelphia, PA

(d) At sentencing: Louis T. Savino, Jr., Esq., Suite 1516, 15th & John F. Kennedy Blvd.

Philadelphia, PA 19102

(e) On appeal: Louis T. Savino, Jr., Esq.

(f) In any post-conviction proceeding: Mr. Savino represents me in this Section 2255

action.

(g) On appeal from any adverse ruling in a post-conviction proceeding: N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time? Yes (X)    No ( )

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? Yes ( )    No (X)

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) And give date and length of sentence to be served in the future: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future? Yes ( )    No ( )

Wherefore, movant prays that the court grant him all relief to which he may be entitled in this proceeding.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on _____    X _____
                    (Date)                        Signature of Movant

15

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

JAIME RIVERA,

        PETITIONER,

    -V-                      CASE No:_____

UNITED STATES,

        RESPONDENT.


BRIEF IN SUPPORT OF

MOTION UNDER 28 U.S.C. Sec.2255.


                      JAIME RIVERA, pro se.

                      #

                      P.O. BOX 905.

                      RAYBROOK, N.Y. 12977.

16

CONTENTS.

PAGE.

AUTHORITIES CITED                                        (i)-(viii).


ARGUMENT: DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE

OF COUNSEL....                           1.


ARGUMENT: THE GOVERNMENT ENTRAPPED THE DEFENDANT,

GOVERNMENT BEHAVIOUR WAS OUTRAGEOUS....        5.


ARGUMENT: THE CONFIDENTIAL INFORMANT'S USE OF NOTES

THROUGH OUT HIS TESTIMONY VIOLATED THE

DEFENDANT'S CONSTITUTIONAL RIGHTS...       22.


ARGUMENT: THE DISTRICT COURT ERRED IN NOT GRANTING

THE MOTION FOR SEVEREANCE...          25.


ARGUMENT: THE GOVERNMENT DID NOT PROPERLY INSTRUCT

THE JURY THAT THE GOVERNMENT'S WITNESSES

WERE NOT CREDIBLE...             28.


ARGUMENT: THE COURT IMPROPERLY SENTENCED DEFENDANT

UNDER U.S.S.G. 3B1.1(a)...          31.


ARGUMENT: THE RELEVANT CONDUCT...              35.


CONCLUSION..                              40.

17

(i).

## AUTHORITIES CITED.

CASE.                                                            PAGE.

UNITED STATES V. AGULERA-ZAPATA

        901 F. 2d. 1209 (5th Cir. 1990)...   37.

UNITED STATES V. AIELLO

        900 F. 2d. 518 (2nd Cir. 1989)...    2.

UNITED STATES V. ANDERSON

        942 F. 2d. 606 (9th Cir. 1991)...   32.

UNITED STATES V. BEAULIEU

        959 F. 2d. 375 (2nd Cir. 1991)...   34.

BELLAMY V. COGSDELL

        952 F. 2d. 626 (2nd Cir. 1991)...    3.

UNITED STATES V. BLACKSTON

        940 F. 2d. 877 (3rd Cir. 1991)...   32.

UNITED STATES V. BOOZ

        451 F. 2d. 725 (3rd Cir. 1971)...   24.

UNITED STATES V. BUSBY

        780 F. 2d. 804 (9th Cir. 1986)...    6.

UNITED STATES V. BUSHEN

        353 F. 2d. 477 (9th Cir. 1965)...   24.

UNITED STATES V. CANCILLA

        725 F. 2d.  867 (2nd Cir. 1983)...    2.

18

(ii).

CASE.                                                          PAGE.

CAMERA V. FOGG

        658 F. 2d. 80 (2nd Cir. 1981)...        3.

UNITED STATES V, CARTER

        953 F. 2d. 1449 (5th Cir. 1992)...      20.

UNITED STATES V. CORNEY

        945 F. 2d. 1504 (11th Cir. 1991)...     40.

UNITED STATES V. CASTRO

        979 F. 2d. 1182 (2nd Cir. 1991)...      33.

UNITED STATES V. CUANCOWSKI

        894 F. 2d. 74 (3rd Cir. 1990)....       34.

CUYLER V. SULLIVAN 446 U.S. 335, 100 S. ct. 1280,

        64 L. Ed. 2d. 2240 (1976)...            17.

UNITED STATES V, DAVIS

        551 F. 2d. 233 (8th Cir. 1977)...       23.

UNITED STATES V. DIGERT

        916 F. 2d. 916 (4th Cir. 1990)...       38.

DERDEN V. WAINWRIGHT 477 U.S. 168, 106 S. Ct. 2469.

        91 L. Ed. 2d. 144....                   20.

UNITED STATES V. DOBBS

        488 F. 2d. 1262 (4th Cir. 1973)...      23.

(iii).

CASE.                                                                    PAGE.

DONNELLY V. DE CHRISTOFORO 416 U.S. 637, 94 S. Ct.

      1868, 40 L. Ed. 2d. 431 (1974)...    20.


UNITED STATES V. ECCLESTON

      961 F. 2d. 955 (D. D.C. 1992)...    21.


UNITED STATES V. EL-GAWLI

      837 F. 2d. 142 (3rd Cir. 1988)...    5.


UNITED STATES V. ENGLER

      806 F. 2d. 425 (3rd Cir. 1986)...    5.


UNITED STATES V. EUFRASIO

      935 F. 2d. 553 (3rd Cir. 1991)...    27.


UNITED STATES V. FATICO

      603 F. 2d. 1535 (@nd. Cir. 1979)...    34.


UNITED STATES V. FEDROFF

      874 F. 2d. 178 (3rd Cir. 1989)...    15.


UNITED STATES V. GAMBINO

      788 F. 2d. 938 (3rd Cir. 1986)...    10.


UNITED STATES V. GANTZER

      810 F. 2d. 349 (2nd Cir. 1987)...    14.


UNITED STATES V. GOING

      377 F. 2d. 753 (8th Cir. 1990)...    21.


UNITED STATES V. GOODNER BROS. AIRCRAFT

      966 F. 2d. 380 (8th Cir. 1992)    19.

(iv).

| CASE. | PAGE. |
|---|---|

UNITED STATES V. GOMEZ

       911 F. 2d. 847  (1st Cir. 1990)...   21.

UNITED STATES V. GREENWALD 1 L. Ed. 2d. 931    22,31.

GREER V. MILLER 483 U.S. 756 (1987)...     18.

HAIL V. CAMEREAU BAKERIES Co.

       873 F. 2d. 1133(8th Cir. 1989)...   23.

UNITED STATES V. HALE 422 U.S. 171, 45 L. Ed. 2d.

       99, 95 S. Ct. 2133...     22.

UNITED STATES V. HAMPTON 425 U.S. 484, 96 S. Ct.

       1646, 48 L. Ed. 2d. 113, (1976)...   16.

UNITED STATES V. HOFFMAN

       733 F. 2d. 596 (9th Cir. 1984)...    2.

UNITED STATES V. INIGO

       925 F. 2d. 641 (3rd Cir. 1991)...   33.

UNITED STATES V. JACOBSON ---U.S. ---, 112 S. Ct.

       1535, 118 L. Ed. 2d. 174 (1992)...   16.

UNITED STATES V. JANNOTTI

       673 F. 2d. 578 (3rd Cir. 1982)...   16.

UNITED STATES V. JOHNSON

       427 F. 2d. 957 (2nd Cir. 1991)...   24.

21

(v).

| CASE. | PAGE. |
|---|---|
| JOHNSON V. ZERBST 304 U.S. 458, 58 S. Ct. 1019, 82 L. E.d 2d. 1461.... | 1. |
| UNITED STATES V. JOYNER 944 F. 2d. 454 (2nd Cir. 1991)... | 38. |
| LOGUE V. INTERNATIONAL REHABILITATION 683 F. Supp. 518 (W.D. Pa. 1988)... | 30. |
| UNITED STATES V. MADDERIA-GALLEGOS 945 F. 2d. 264 (9th Cir. 1991)... | 32. |
| UNITED STATES V. MANTHEI 913 F. 2d. 1130 (5th Cir. 1990)... | 33. |
| UNITED STATES V. MARINO 868 F. 2d. 549 (3rd Cir. 1988)... | 16. |
| UNITED STATES V. McGLORY 968 F. 2d. 309 (3rd Cir. 1992)... | 27. |
| UNITED STATES V. MEESTER 762 F. 2d. 867 (11th Cir. 1985)... | 27. |
| UNITED STATES V. MODINA 531 F. 2d. 183 (4th Cir. 1973)... | 23. |
| UNITED STATES V. MICHAELSON 335 U.S. 469, 93 L. Ed. 16, 69 S. Ct. 213... | 15. |
| PARLIAMENTARY INSURANCE Co. V. HANSEN 676 F. 2d. 1069 (3rd Cir. 1982)... | 24. |

22

(vi).

CASE.                                                      PAGE.

UNITED STATES V. PHILLIPS

        959 F. 2d. 1182 (3rd Cir. 1992)...   33.


UNITED STATES V. PRESTON

        910 F. 2d. 81 (3rd Cir. 1990)...   24.


UNITED STATES V. RECIANDI

        174 F. 2d. 883 (3rd Cir.    )...   24.


UNITED STATES V. REID

        911 F. 2d. 1456 (10th Cir. 1990)...   33.


UNITED STATES V. RESTREPO

        903 F. 2d. 648 (9th Cir 1990)...   38.


UNITED STATES V. REIGER

        942 F. 2d. 230 (3rd Cir. 1992)...    1.


UNITED STATES V. ROBINSON

        967 F. 2d. 287 (9th Cir. 1992)...   31.


UNITED STATES V. ROSSELL 411 U.S. 431, 93 S. Ct.

        1642.                                 15.


UNITED STATES V. SANDINI

        888 F. 2d. 300 (3rd Cir. 1981)...   21.


SHAW V. RAPONE

        585 F. Supp. 89 (E.D. Pa. 1984)...   24.


UNITED STATES V. SHERMAN

        200 F. 2d. 880 (2nd Cir. 1952)...   14.

23

(vii).

CASE.                                                    PAGE.

UNITED STATES V. SOLINA

       709 F. 2d. 160 (2nd. Cir. 1983)...  2.

UNITED STATES V. SOLOMAN

       944 F. 2d. 1106 ( 3rd Cir. 1991)... 34.

STRICKLAND V. WASHINGTON  466 U.S. 668, 104 S. Ct.

       2052, 80 L. Ed. 2d. 674 (1984)...  3.

UNITED STATES V. SZYMANCIE

       888 F. 2d. 300 (3re Cir. 1981)...  20.

UNITED STATES V. TARANTINO

       846 F. 2d. 1384 ( D. D.C. 1988)... 26.

UNITED STATES V. TAYLER

       878 F. 2d. 853 (3rd Cir. 1988)...  20.

TEAGUE V. LANE   106 S. Ct. 1060 (1989)..       38.

UNITED STATES V. TWIGG

       588 F. 2d. 373 (3rd Cir. 1978)...  17.

VICK V. LOCKHART

       952 F. 2d. 999 (8th Cir. 1991)...  19.

UNITED STATES V. VIVIANO

       437 F. 2d. 295 (2nd Cir. 1971)...  14.

WAINWRIGHT V. GREENFIELD  744 U.S. 284.          20.

34

(viii).

CASE.                                                    PAGE.

UNITED STATES V. WALI

       860 F. 2d. 588 (3rd Cir. 1988)...    30.


UNITED STATES V. WRIGHT

       921 F. 2d. 42 ( 2rd Cir. 1990)...    15.


UNITED STATES V. ZAFIRO

       91-6824 (1/25/93) 52 Cr. L. 2083...    27.

-I-

## THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS.

The claim of ineffective assistance of counsel is not heard on direct appeal.    It should be raised in a Motion under 28 U.S.C. § 2255; United States vs. Rueger 942 F. 2d. (3rd Cir. 1992).

The Defendant was charged in an indictment by the Eastern District of Pennsylvania at Philadelphia, Pennsylvania.

The Defendant was not informed until the first day of trial that his attorney Nino V. Tinari was also indicted by the same District , or that Tinari was cooperating with the United States Attorney's Office in Philadelphia to obtain a lenient sentence.    Tinari is currently incarcerated at F.C.I. Allenwood.

The Defendant, as stated, was informed of this egregious conflict for the first time at the first day of his trial. The Court then offered the Defendant the choice of proceeding with Tinari or a Federal Defender without any continuance.

The Defendant was given no choice, and his actions don't constitute a waiver.    This falls short of a knowing and intelligent waiver of a Constitutional right, if that right can be waived, Johnson vs. Zerbst 304 U.S. 458, 58 S. CT. 1019, 82 L. Ed. 2d. 1461

-2-

The Defendant did not waive his right to counsel. <u>United States vs. Hoffamn</u> 733 F. 2d. 596 (9th Cir. 1984).

Tinari remained silent as to his situation to receive legal fees and avoid his obligation to his client.

To assume that Tinari could vigorously pursue a defense before the United States Attorney's Office by whom he was under indictment and with whom he was cooperating, is to assume an impossibility.   This is a conflict that cannot be refuted.

"What could be more of a conflict than a concern over getting oneself into trouble with criminal law enforcement authorities?" <u>United States vs. Cancilla</u> 725 F. 2d. 867 & 870 (2nd Cir. 1983).

No argument or assumption could indicate that Tinari or anyone else could provide a "vigorous" defense in such circumstances.   The failure to provide a "vigorous" defense is conflict; <u>Solina vs. United States</u> 709 F. 2d. 160 (2nd Cir. 1983).

A similar situation was addressed in <u>Aiello vs. United States</u>  900 F. 2d. 528 (2nd Cir. 1989) the attorney was under investigation by the Organizer Crime Strike Force in New York, and the court stated:

> "Some conflict of interest affront the right to
> effective assistance of counsel as to constitute per-
> se violation of the Sixth Amendment."

The second circuit based on Aiello established a per-se rule, attorneys under indictment and/or criminal investigation

-3-

represent a Sixth Amendment violation; a conflict of interest.

"Once a Defendat shows a conflict of interest actually affecting the adecuacy of his representation [he] needs not demostrate prejudice in order to obtain relief".

Cuyler vs. Sullivan 446 U.S. 335, 100 S. Ct. 1208, 64 L. Ed. 2d. 333 (1980), Camera vs. Fogg 658 F. 2d. 80 (2nd Cir.) Cert. Dnd. 454 U.S. 1129, 102 S. Ct. 981, 71 L. Ed. 2d. 117 (1981).

There is little question that in the instant case Tinari's representation in front of the same tribunal that had him under indictment and was prosecuting him, is a Sixth Amendment violation, and prejudice is presumed to result in prejudice.   This is one of the small class of cases that need not meet the Strickland two prong test. Strickland vs Washington 466 U.S. 668. 104 S. Ct. 2052, 80L. Ed. 674 (1984), at 466 U.S. 692, 104 S. Ct. 2067, quoted in Bellamy vs. Cogdell 952 F. 2d. 626 (2nd Cir. 1991).

Further Tinari acts were so egregious they could be applied as ineffective assistance under Strickland (supra), twin elements of error and prejudice.


Tinari, due to his effort to hide his criminal prosecution, his son enter his appearance, and filed motion for the Defendant, without Defendant's knowledge or permission.

-4-

Tinari failed to provide copies of discovery, transcripts, tape recorded conversations, and any other legal material, although this Defendant repeatedly requested him.

Further, Tinari stated that only two recordings will be used by the government, when in fact the government played over twenty tapes to the jury, and this was the first time Defendant had heard them.

Tinari misinformed Defendant and his family as to the U.S.S.G. He indicated to Defendant, and Defendant's family that the maximum sentence he could be facing was the minimum mandatory sentence. This Defendant was sentenced to 292 months.

Because Tinari informed the Defendant that the maximum sentence was ten years, the Defendant failed to pursue a Plea negotiation.

This Defendant met with Tinari only in two (2) occasions, and spent less than one (1) hour discussing the case. In addition, Mr. Tinari refused to this Defendant's specific request to retain a Private Investigator.

These acts standing alone meet the Strickland test, although there is not question that Tinari was motivated by his criminal indictment and need to remain as much in favor as possible with the United States Attorney's Office in Philadelphia for the most lenient sentence.

-5-

## THE GOVERNMENT (A) ENTRAPPED THE DEFENDANT, (B) THE GOVERNMENT'S CONDUCT WAS OUTRAGEOUS, VIOLATING THE DEFENDANT'S DUE PROCESS RIGHTS.

A. ENTRAPMENT:

The court appears to be prejudiced to the defense of entrapment from the discussion prior to opening statements;

> THE COURT: "Well, I have to hear about the defense need be, there can't... it seems to me there can't be much entrapment... I mean, maybe there's entrapment, but I kind of doubt it..." (R.T. Nov. 19, 1991; 9).

This statement prior to long testimony on admission is clearly prejudicial.   The Third Circuit utilizes the "unitary" approach to entrapment, the judge decides, and must ponder the evidence, both of government's persuasion of the criminal act, and the predisposition of the Defendant to commit the criminal act.   When this is evidence, the burden shifts to the government to prove beyond reasonable doubt that entrapment did not occur; United States vs. El-Gawli, 837 F. 2d. 142 (3rd Cir. 1988). Cert. Dnd. 488 U.S. 817, 109 S. Ct. 55, 102 L. Ed. 2d. 34, United States vs. Engler 806 F. 2d. 425 (3rd Cir. 1986).

If the court approaches the case with disposition, the defendant has already been denied Due Process.

The case will clearly indicate through the testimony of the government's confidential informant that the Defendant was entrapped, that the government initiated the crime, and the Defendant was not predisposed to commit the charged crime.

30

-6-

The government's case is anchored on the testimony of MANUEL DE LA CRUZ, the government's confidential informant, hereinafter refered to as C.I.

The C.I. may well be considered a government agent, as a person becomes a government agent when his activities are under the direction and supervision of law enforcement. United States vs. Busby 780 F. 2d. 804 & 807 (9th Cir. 1986).

The C.I. met with Javier Cruz, and a relative of this defendant, at the home of a friend of the C.I. (R.T. Nov. 19, 1992, 42)   The C.I. then proceeded to go where JAVIER CRUZ worked, The Puerto Rican Food Market (R.T. Nov. 19, 1991, 42) The C.I. then solicited the purchase of 2 ozs. of cocaine from JAVIER CRUZ.

> Q. "So you asked Mr. Cruz if he could supply you with cocaine?"
>
> A. "Yes, I did."
> (R.T. Nov. 19, 1991, 44)

The C.I. readely admits that he solicited the purchase of a small amount of recreational cocaine.  The story of the C.I. then becomes quite confusing.  The C.I. indicates that at this initial solicitation he was not working for the D.E.A. then the C.I. states he moved to Allentown, PA. to work with the D.E.A.   The C.I. was marrying a woman from Allentown, PA. and had worked for the D.E.A. in New York for years, and called them and told them he was moving to Allentown, PA.   the C.I. then met with the D.E.A. in Allentown, PA. about prospective work.

31

-7-

The C.I. further states that he desperately needed money and the D.E.A. was to be his source, not regular employment. The C.I. clearly lies throughout the trial.

The C.I. stated he did not work for the D.E.A. at the initial solicitation of the 2 ozs of cocaine.

> Q. "So when you first met Mr. Cruz were you working
>    for the D.E.A.?
> A. "Not in Allentown."
> Q. "Were you working for the D.E.A. anywhere?"
> A. "No, not at that time."

(R.T. Nov. 19, 1991, 45-46).

At this point the C.I. is admitting the commission of a crime, he is soliciting the purchase of 2 ozs. of cocaine without D.E.A. authorization, simply a citizen breaking the law.

Then after the C.I. commits a crime he states he goes to the D.E.A. and offers information. (R.T. Nov. 19, 1991, 46)

The C.I. states:

> "I said to the D.E.A. that Mr. JAVIER CRUZ could sell
> drugs and they said O.K., so we'll do that.  We'll,
> you know, send you in over there and you'll buy drugs
> from him."

(R.T. Nov. 19, 1991, 46-47).

The D.E.A. then agreed to pay the C.I. $7,000.00.  The D.E.A. then gave the C.I. the money to purchase the 2 ozs. of cocaine he had solicited from JAVIER CRUZ. (R.T. Nov. 19, 1991, 47).

The C.I. further stated that he moved from New York City to Allentown, PA. that one of the reasons that the C.I. came to

32

-8-

Allentown was that he recently married a woman from Allentown PA. (R.T. Nov. 19, 1991, 185)

The C.I. was then questioned, if he was contacted by the D.E.A. to come to Allentown PA., and he stated:

    A. "Was I contacted by the D.E.A.?"
    Q. "yes."
    A. "Did the D.E.A. here in Allentown call me in New York City?"
    Q. "Yeah... either in Allentown or the D.E.A. in New York City telling you..."
    A. "Yes, yes."
    Q. "... to come down?"
    A. "Yes."
    Q. "So there was a point in time you were contacted by the Agency to come to Allentown?"
    A. "No, I'll tell you exactly what happened, if you'll allow me.  When I knew I was coming down here I told the agents in New York the area where I was going to be moving to and if they had a field office in that area, and they said, yes we do.  I'm going to call the office now and I'm going to give you the name of an undercover agent over there or a D.E.A. agent for you to get in touch with him."

The C.I. inmediately after his testimony indicating that the D.E.A. did not send him to Allentown, answers questions refering to his response to questions before the Grand Jury on August 18, 1991.:

    Q. "How did you look up the D.E.A. in Allentown?"
    A. "I came down from the field office in New York."
    Q. "D.E.A. in New York City sent you here?"
    A. "Yes."
    (R.T. Nov. 19, 1991, 187).

This is obviously contradictory to his statements. Perhaps realizing that the C.I. goes on to state, " I wasn't sent here by the D.E.A." (R.T. Nov. 19, 1991, 188).   The C.I.

33

-9-

then states that he called the D.E.A. agent in Allentown, he came to meet him, the D.E.A. agent asked for his help, and they discussed money. (R.T. Nov. 19, 1991, 188).   The C.I. then came to Allentown, PA., and (30) days after getting to Allentown solicits 2 ozs. of cocaine in a small family gathering. (R.T. Nov. 19, 1991, 199).   This was used as his spring-board to the Defendant on June 18th, only two weeks later, under D.E.A. direction. (R.T. Nov. 19, 1991, 199).

The C.I. testifies that he made numerous telephone calls not at all successful, to JAVIER CRUZ soliciting the purchase of drugs. (R.T. Nov. 19, 1991, 203).   The C.I. then clearly testifies to his critical need of money, he had a part-time job for $5.00 per hour.   The C.I. was just married and wanted to buy a home, and a car plus the need to just pay the regular expenses of living. (R.T. Nov. 19, 1991, 241).

```
Q.  "So, money was important to you?"
A.  "Yeah, I said this to everybody I guess."
Q.  "And therefore the money you were getting from
     the D.E.A. at this point was very important to
     you, correct?"
A.  "Yes."
```

(R.T. Nov. 19, 1991, 243).

The C.I. was paid $7,000.00, most of it after the Defendant's arrest.

```
Q.  "How much after arrest?"
A.  "$4,800.00, I told you before."
```

34

-10-

> Q. "All right, so the bulk of your money was after
> the arrest?"
> A. "Yes."

(R.T. Nov. 19, 1991, 243)

The C.I. then admits to manipulating the Defendant, and doing so for the money he would receive from the D.E.A., (R.T. Nov. 19, 1991, 250).

The C.I. apparently worked extensively for the D.E.A. in New York City, then for reasons truly unknown left New York for Allentown PA.  The C.I. contacted the D.E.A. office in Allentown at the referral from the New York D.E.A. Office. The C.I. met with an agent in Allentown before moving to this community.  The C.I. then targeted the Puerto Rico Food Market, its employees, and owner, the Defendant.  That, while in a "social" visit he solicited the original purchase of cocaine.  Now according to the C.I. testimony he did so as citizen, then went to the D.E.A., or in other testimony he did so as an agent of the D.E.A.  That, in either event, he did so for the money he needed to live, as his employment provided little income.

There is little question the Defendant meets the first prong of the entrapment test.  The government initiated the crime, and there is not testimony that the Defendant had any predisposition to commit the crime United States vs. Gambino 788 F. 2d. 938 (3rd Cir. 1986), quoting United States vs.

35

-11-

Jannotti, 729 F. 2d. 213, (3rd Cir. 1984) (Jannotti II); quoting United States vs. Watson, 489 F. 2d. 504, 529, (3rd Cir. 1973).

Entrapment is a matter of law; United States vs. Kaminski, 703 F. 2d. 1004, (7th Cir. 1983), Sherman vs. United States, 356 U. S. 369, 78 S. Ct. 819, 2 L. Ed. 2d. 848 (1958). Entrapment only occurs when the criminal conduct was the product of the creative activity of "Law enforcement officials"; United States vs. Jannotti, 673 F. 2d. 578, (3rd Cir. 1982) (En Banc). Cert. Dnd. 457 U. S. 1106, 102 S. Ct. 2906, 73 L. Ed. 2d. 1315, (1982) (Jannotti I). Entrapment occurs when a defendant who was not predisposed to commit the crime does so as a result of the Government's inducement. It is further recognized that Government inducement is relevant to predisposition. United States vs. Watson, 489 F. 2d. 504, (3rd Cir. 1973).

There is not much more creativity than importing a C. I. from New York, who is desperate financially, who has serious problems (R. T. Nov. 19, 1991, 25), who either on his own, or at the direction of the DEA floats around trying to buy recreational drugs after having been briefed as to targets in the area.

The initial solicitation of the two ounces of cocaine was only the first step to get to the Defendant and attempt to conduct business at the Puerto Rico Food Market.

-12-

There is never any evidence introduced of the Defendant's predisposition:

The testimony of Mrs. Eck:

Q.  "How long have you known Jaime?"

A.  "I know Jaime for about 20 years."

Q.  "And  do you know other people that know Jaime Rivera?"

A.  "Yes, I do, I know almost his whole family."

Q.  "And among those people whom you know that know Mr. Rivera, what is his reputation for being an honest and law-abiding person?"

A.  "As far as I am concern, he si honest and a good worker.   I never seen anything wrong or, you know, as far as Jaime's concern."

(R.T. Nov. 21, 1991, 73)

Testimony fo Reverend Rodriguez:

Q.  "And where is that church located?"

A.  "2nd St., and Chew St."

Q.  "Is that near the Puerto Rico Market?"

A.  "Yes."

Q.  "Among those people whom you know that know Jaime Rivera, what is his reputation for being an honest and law-abiding person?"

A.  "See, he was a good working man, very nice temper, and every time I go to buy at his grocery, he is a nice man."

(R.T. Nov. 21, 1991 76)

37

-13-

Testimony of Enma Ortiz:

Q. "Do you know Jaime Rivera?"

A. "Yes, I am"

Q. "Do you know -- how long have you known him?"

A. "I know him from 1971"

Q. "And do you know other people that know Jaime Rivera?"

A. "Yes, yes"

Q. "Among those people whom you know that know Jaime Rivera what is his reputation for being an honest and a law-abiding person?"

A. "He is a nice person.  He's help us a lot because..."

Q. "And..."

A. "...he is good working"

Q. "What is his reputation for those characteristics that I have mentioned?"

A. "Very good reputation"

Testimony of Mrs. Perez:

Q. "How long have you known Jaime Rivera?"

A. "Going on 11 years"

Q. "Do you know other people that know Jaime Rivera?"

A. "Yes"

Q. "Among those people whom you know that know Jaime Rivera, what is his reputation for being a peaceful and law-abiding person?"

A. "Nice.   He's a good man."

38

-14-

The Defendant has no criminal record and has been a community business man with an excellent reputation for twenty (20) years.

There have been a number of tests for the predisposition requirement is aimed at showing "that the accused was ready and willing to commit the offense charged", and that "the prosecution has not seduced an innocent person, but has only provided the means fpr the accused to realize his preexisting purpose." United States vs. Gantzer, 810 F. 2d. 349 at 352. (2nd. Cir. 1987). United States vs. Sherman, 200 F. 2d. 880, 882, (2nd. Cir. 1952)

Formulated second test to determine predisposition:

    (1) Existing record of clear conduct.

    (2) An already formed design by the accused to commit the crime.

    (3) A willingness to commit the crime shown by early response to inducement.

Further quoting United States vs. Viviano 437 2d. 295. (2nd Cir. 1971) Cert. Dnd. 402 U.S. 983, 91 S. Ct. 1659, 29 L. Ed. 149 (1971).

the Defendant meets all three tests, no criminal history, no clear design, the C.I. had to repeatedly formulate the design, no willingness, the C.I. had to repeatedly call.

The Defendant has not history of such activity, a history

39

-15-

of being hard-working is generally viewed as relevant to any criminal offense <u>Michelson vs. United States</u>  335 U.S. 469, 93 L. Ed. 2d. 168, 69 S. Ct. 213.   The three prong test used in El Gawni (Supra) was used also in <u>United States vs. Twigg</u> 588 F. 2d. 373 (3rd Cir. 1978)

The government implanted the proposition and there was never any testimony or any prior attempted or suspicion of drug dealing, this is a Due Process violation.   <u>United States vs. Wright</u> 921 F. 2d. 42 (3rd Cir. 1990) quoting <u>United States vs. Fedroff</u> 874 F. 2d. 178 (3rd Cir. 1989).   The Defense met his burden at trial, producing evidence of both indicement and non-predisposition to commit the crime.   <u>United States vs. Marino</u> 868 F. 2d. 549 N3 (3rd Cir. 1988) Cert. Dnd. ---U.S.----. 109 S. Ct. 3243. 106 L. Ed. 2d. 590 (1989).

The government must prove beyond reasonable doubt that entrapment do  not occur.

The government conduct created a substantial risk that an unpredisposed person or otherwise law abiding citizen would commit the offense.   the Dedendant was merely a modestly successful small neighborhood  businessman.

> ".. May someday be... a situation in which the
> conduct of the law enforcement agents is so
> outrageous that due Process principles would
> absolutely bar the government from invoking judicial
> to obtain a conviction."

(<u>United States vs. Rossell</u>, 411 U.S. 431-432, 93 S. Ct. at 1642-43).

40

-16-

B. OUTRAGEOUS CONDUCT:

One has only to review the testimony of the C.I. to be outraged. If in fact the C.I. was free-lancing he went into the home of his wife's friend and then solicited a criminal act that he committed. The C.I. then went to the D.E.A., desperate for money and received absolution for his criminal act. The C.I. lies with ingenuity under oath, in court one realy cannot firmly determine the C.I.'s relationship with the D.E.A. when he moved to Allentown. Furthermore, the C.I. admits not paying any income taxes for years, and that this is a criminal act, that he is now attempting to resolve with government's help. This is tolerated as being constitutional, is insulting to the conscience.

The court must look at the government's behavior, to the outrageous criminal conduct Jacobson vs. United States---U.S.---, 112 S. Ct. 1535, 118 L. Ed. 2d. 174 (1992).

The defense of outrageous behavior, based on the Due Process Clause can be invoked successfully even if the entrapment defense is unavailable because of predisposition; Hampton vs. United States 421 U.S. 484, 96 S. Ct. 48 L. Ed. 2d. 117, Id. @ 495, 96 S. Ct. @ 1653. (Powell S. Ct. @ 1653). This has been followed in the Third Circuit in United States vs. Jannotti, 673 F. 2d. 578 (3rd Cir.) (En Banc) Cert. Dnd. 457 U.S. 1106, 107 S. Ct. 2906, 73 L. Ed. 2d. 1315 (1982).

The Third Circuit upheld the Outrageous Conduct Defense

41

-17-

in <u>United States vs. Twigg</u> (Supra) @ 381;

> "When the government's agent generates the
> criminal acts for the purpose of prosecution as
> opposed to merely interposing agent into an
> ongoing criminal enterprise."

Unquestionably the C.I. created criminal activity as a

baker, baking bread from scratch.

### THE DOYLE VIOLATION REQUIRED A MISTRIAL RULING.

It has been firmly held that the use of a post-arrest

silence as evidence violates the 14th Amendment Due Process

rights of the Defendant, and requires a new trial.  <u>Doyle vs.</u>

<u>Ohio</u> 426 U.S. 610, 49 L. Ed. 2d. 91, 96 S. Ct. 2240 (1976).

The government solicited testimony from Detective James

Stephens as to the post-arrest silence of co-defendant JOSE

RIVERA.

> Q.  "Agent Stephens, did the Defendant say that he
> wanted to terminate questioning at that time?"
>
> A.  "As we talked about this, he became concerned
> about what he was telling us, and he asked if he
> could consult with an attorney."
>
> The government proceeded to press this line of
> questioning, emphasizing the silence of the
> Defendant.
>
> Q.  "What did the... <u>tell the members of the jury</u>
> <u>what the Defendant said at that point?</u>"
>
> A.  "We were basically talking about what was going
> on that day..."
>
> Q.  "And what did the..."

42

-18-

       A.   "...and his part, and he became concerned
          about... again, and asked to consult with an
          attorney."

R.T. Nov. 21, 1991, 30)

This testimony referred to the actual arrest of the
Defendant JAIME RIVERA, and JOSE RIVERA.    (R.T. Nov. 21, 1991,
28).

The government then, in its case of chief, questioned
Detective Stephens if he had administrated a Miranda warning to
the Defendants.    That was the only context of the questioning
up to the Doyle violation.  (R.T. Nov. 21, 1991, 28,29).

The court, after the Defendant's attorney objected, (R.T.
Nov. 21, 1991, 30) and moved for a mistrial, then took it under
advisement and proceeded with the testimony.    Thereupon ensued
several sidebar discussions with the attorneys.    The court
took a break, then ruled, based on Greer vs. Miller 483 U.S.
756 (1987) that:

          "The government may not comment on the assertion
          of the right to remain silent."

(.R. Nov. 21, 1991, 65 at 18-21).
and that cautionary instructions would satisfy the violation.
(R.T. Nov. 21, 1991, 66).    The court recognized that is was
important in the cautionary instructions that nothing said on
the subject of unconstitutional testimony of the conversation
between Detective Stephens and Jose Rivera be attributed to the
Defendant.    (R.T. Nov. 21, 1991, 66).    The court then

43

-19-

concluded it would not give a cautionary instruction to go to Jose Rivera, but would go to Defendant.  (R.T. Nov. 21, 1991, 68).

The solicitation of the request to remain silent by the government of Jose Rivera can only in the eyes of the jury indicate a pre-disposition of guilt to Jose Rivera, and Jaime Rivera.  Detective Stephens stated that they were both arrested together, and questioned at the same time.  The two co-defendants in a conspiracy, which by its anture involves the intersection of each's action.  They are related, what more could a jury want to lump them together as one egg in one basket.  This is the danger with co-defendants when a severance has been denied.

The cautionary instructions that the court made hours after the testimony, after additional testimony of various witness is totally unfair and there ca be no presumption of the jury following the instructions of the court.

The presumption of the jury following the cautionary instructions is founded upon the bases of it being given promptly and succinctly, which it was not;   United States vs. Goodner Bros Aircraft Inc. 966 F. 2d. 380 (8th Cir. 1992). Green vs. Miller (supra).

The government cannot attack the silence of the Defendant(s) and have it held harmless error beyond a reasonable doubt.  Vick vs. Lockhart 952 F. 2d. 999 (8th Cir.

44

-20-

1991).

> "This case clearly involved the testimony of a perjurious government informant, a lieing woman who admitted lieing in her delivery of cocaine, police officers whose video tapes had incorrect and conflicting dates and times; Then the government introduces in direct questioning the desire to secure an attorney as an effort to avoid the truth."

The statement solicited to a Defendant's desire to remain silent was invaluable in the government's case in chief as it prejudiced the Defendant's character.   United States vs. Szymaniac 934 F. 2d. 434 (2nd Cir. 1990) quoting Wainright vs. Greenfield 474 U.S. 284 (1986).

The Third Circuit stated the same principle and stated such testimony is prejuditial and requires a new trial. United States vs. Tayler 878 F. 2d. 753 (3rd Cir. 1988).

There is not question this so infected the trial as to make the resulting conviction a denial of Due Process.   Derden vs. Wainwright 477 U.S. 168, 106 S. Ct. 2469, 91 L. Ed. 2d. 144 (1986). quoting Donnely vs. De Christoforo 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d. 431 (1974).

The Fifth Circuit recently stated it quite succinctly.

> "The use of a Defendant's silence for its substantive value is prohibited as a jury could construe the silence to equal to a criminally motivated character."

United States vs. Carter 953 F. 2d. 1449 (5th Cir. 1992).

When this violation of constitutional right is taken in light of a government case repleat with perjurious testimony

45

-21-

the cumulative effect of the police officer's testimony is devastating United States vs. Eccleston 961 F. 2d. 955 (D.C. Cir. 1992), quoting United Sates vs. Gomez Pab, 911 F. 2d. 847 (1st Cir. 1990).

The violation requires that a retrial be ordered.

-22-

## THE CONFIDENTIAL INFORMANT'S USE OF NOTES THROUGHOUT HIS TESTIMONY VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHTS.

The C.I., the government's chief witness, testified with notes;

> Q. "So you keep your own notes, is that correct?"
> A. "Would you like to see them"
> Q. "My question to you is, did you keep your own notes?"
> A. "Yes, I did"
> Q. "Did you supply a copy to the government of these handwritten note?"
> A. "No, I did not... and..."

> Mr. Rice, (Asst. U.S. Attorney): Your Honor, If I may clarify.  These were notes that the witness made while he was meeting with me to refresh his recollections.   These were not notes he kept that we withheld from the defense.

(R.T. Nov. 19, 1991, 1660).

> Q. "The notes that you have with you are they the notes as a result of your meeting with the Assistant U.S. Attorney, is that correct?"

> A ."No, that is not correct."   [Emphasis added].

Either the Assistant U.S. Attorney is lying, or the C.I. has lied throughout the trial.   The entire testimony inconsistent and impeachable. United States vs. Hale 422 U.S. 171, 45 L. Ed. 99, 95 S. Ct. 2133, quoting Greenwald vs. United States 1 L. Ed. 2d. 931.

The testimony of the C.I. must be reviewed in this light.

47

-23-

> Q. "Sir, the notes that you have in your pocket,
> that you were about to present to us, where did
> you prepare them?"
> A. "I have been preparing for a while now."
> Q. "Okay, when you say for a while, during the time
> that you were involved in the investigation, or
> after the arrest was completed?"
> A. "Oh, after the arrest."    [Emphasis added].

(R.T. Nov. 19, 1991, 167).

The C.I. prepared these notes sebsequent to the arrest

of the defendant, therefore they are not a fresh recollection

of the event(s).    They are a product, a transcript of the

C.I.'s memory months after the events, or a planned testimony.

> Q. "All right, now these notes that you've made, you
> then used them to help you when you are speaking
> with the Assistant U.S. Attorney a week and a
> half ago in preparation for trial testimony, am I
> correct?"
> A. "To a point you are correct"

(R.T. Nov. 19, 1991, 168).

Neither the government nor the Defense were aware that

the C.I. had notes on his person to aid in his testimony.

Allowing a witness to use notes while testifying was error

where no foundation was laid regarding the need of the witness

to refresh his memory.   The Defense accidently stumbled on to

the notes.  Hail vs. Camereau Bakeries Co. 873 F. 2d. 1133 (8th

Cir. 1989). Fed. Rules of Evidence, Rule 612, 28 U.S.C.   This

has been followed in United States vs. Davis 551 F. 233 (8th

Cir. 1977): Going vs. United States 377 F. 2d. 753 (8yh Cir.

1967): United States vs. Modana 531 F. 2d. 183 (4th Cir. 1973):

United States vs. Dobbs 448 F. 2d. 1262 (5th Cir. 1970): United

-24-

States vs. Johnson 427 F. 2d. 957 (5th Cir. 1970): Bushan vs.
United States 353 F. 2d. 477 (9th Cir. 1965), Cert. Dnd. 384
U.S. 921, 86 S. Ct. 1371 16 L. Ed. 2d. 441, Fontana vs.
Pattason 305 F. 2d. 124. (5th Cir. 1962)

The District Court should have determined if the need or
device of refreshing the C.I.'s recollections was merely a
subterfuge to improperly direct the C.I. in his testimony. Shaw
vs. Rapone 585 F. Supp. 89 (E.D. Pa. 1984), quoting United
States vs. Reciaudi 174 F. 2d. 883 (3rd Cir.) Cert. Dnd. 337
U.S. 941, 69 S. CT. 1519, 93 L. Ed. 2d. 1746. Parliamentary
Insurance Co. vs. Hanson 676 F. 2d. 1069 (3rd Cir. 1982)

The prerequisite as to whether notes can be used to
refresh the witness' memory is to identify the authenticity,
the identity, and accuracy of the notes used. United States vs.
Booz 451 F. 2d. 725 (3rd Cir. 1971) 3 Wigmore Evidence @ 747
(Chadburn Rev. 1970) and cases cited at 142, N-1.   The court
must verify the accuracy of the notes.

These notes were prepared months after the alleged
crime, if the Court is to believe the C.I., the Assistant U.S.
Attorney stated the notes were made in his meeting with the
C.I., and the C.I. states this is untrue.

What is true is an impeacheable witness took notes into
the witness stand unkown to the government, defense and court.
There was not identity, no authentication, nor determination of

-25-

the accuracy of the notes.    There was no foundation laid by the government for the use of the notes.    Notes used by a witness who is a blatant liar.

## THE DISTRICT COURT ERRED IN NOT GRANTING THE MOTION FOR SEVERANCE.

The case involved three (3) co-defendants.    Prior to the commencement of the trial, co-defendant JAVIER CRUZ filed a motion to admit a guilty plea. (R.T. Nov. 19, 1991, 7).    The government moved for severance, the court denied the motion (R.T. Nov. 9, 1991, 7).    The court stated it would give the jury careful instructions to compartmentalize the defendants (R.T. Nov. 1991, 7).

There is not possible way to compartmentalize an act in a conspiracy charge of selling drugs.    JAVIER CRUZ was a co-conspirator and sold cocaine from the store owned by the Defendant.

The government in it's opening statement stated:

"You will also hear testimony that JAVIER CRUZ  the second Defendant seated closest to you, sold cocaine from the Puerto Rico Food Market, that he's plead guilty to making two distributions of cocaine to government informants during the conspiracy, and used the Puerto Rico Food Market as his base and introduced a key... a government informant to JAIME RIVERA.    A government informant came to Mr. CRUZ,

-26-

said he wanted cocaine and Mr. CRUZ directed him, and
said "Jaime, could you get the cocaine for him?", and
Jaime agreed."

(R.T. Nov. 19, 1991, 15)

This statement cannot be compartmentalized, JAVIER CRUZ
plead guilty to selling cocaine from the Puerto Rico Food
Market as his base to sell drugs.   The Market is owned by the
Defendant.   The entire statement then goes to link JAVIER CRUZ
to the Defendant and to the sale of cocaine.

If CRUZ is guilty, the equation is automatic, so is the
Defendant, - simple geometry.

The government says it, that CRUZ made the sale of
cocaine during the conspiracy, a conspiracy is more than one
person acting in concert.   Then states that CRUZ directed the
C.I. to the Defendant to purchase cocaine.

The guilt of CRUZ not just spill over to the Defendant,
it is more, the floodgates opening and drowning the Defendant.
After the government's statement the Defendant is awash in
guilt and there is no possilibity of a fair trial.   The court
had to grant the severance in light of the possibility. United
States vs. Tarantino 846 F. 2d. 1384 (D.C.) Cert. Dnd. 488 U.S.
864. 109 S. Ct. 174, 102 L. Ed. 143 (1988).

At the moment, the instant, of this opening statement
there ceased to be any opportunity for the Defendant to have a
just trial, "innocent until proven guilty" under the

51

-27-

Constitution.   The act could not be, and was not compartmentalized and Severance was required Zafiro vs. United States 91-6824, 1/25/93, 52 Cr. L. 2083.

The evidence of the guilty plea in this court could not be compartmentalized and the jury would unquestionably consider it to the prejudice of the Defendant against whom it was not directed United States vs. Meester 762 F. 2d. 867 (11th Cir. 1985) Cer. Dnd. 474 U.S. 1024, 106 S. Ct. 579, 88 L. Ed. 2d. 85 @ 883; "District Court abused right if prejudice that resulted patently."

The trial developments at the opening statement were foreseeable and in that light the District Court abused it's discretion in denying severance; United States vs. McGlory 968 F. 2d. 309 (3rd Cir. 1992), quoting United States vs. Sandini 888 F. 2d. 300, @ 305-6, (3rd Cir. 1981). Cert. Dnd. 454 U.S. 1089, 110 S. Ct. 1831, 118 L. Ed. 2d. 959 (1990).

If the jury cannot compartmentalize, the severance should be granted United States vs. Eufrasio 935 F. 2d. 553 (3rd Cir. 1991). Cert. Dnd. ---U.S.---, 117 S. Ct. 340, 116 L. Ed. 2d. 282 (1991).

The court erred in not granting the Motion for Severance.   A new trial must be ordered.

52

-28-

## THE GOVERNMENT DID NOT PROPERLY INSTRUCT THE JURY THAT THE GOVERNMENT'S WITNESSES WERE NOT CREDIBLE.   MOST OF THE GOVERNMENT'S WITNESSES BLATANTLY LIED.

The government's chief witness MANUEL DE LA CRUZ lies in previous segments of this Memorandum, in his testimony in why he came to Allentown, in how he developed his notes in aid of testimony.   Either he lied or the United States Attorney lied.

The C.I. repeatedly lied concerning his criminal history, and states he lied (R.T. Nov. 19, 1991, 173).   The C.I. lied to the D.E.A. and Court about the expenses he submitted for his informant activities. (R.T. Nov. 19, 1991, 238).

The C.I. admitted that he knowingly committed the crime of not paying Federal Income Tax for years, and only decided he must correct this matter due to his upcoming testimony in open court. (R.T. Nov. 19, 1991, 263, R.T. Nov. 20, 1991, 25).   The C.I. admitted committing drug related crimes while a D.E.A. informant (R.T. Nov. 19, 1991, 178).

The C.I. lied about his past criminal acts, arrests, and convictions. (R.T. Nov. 19, 1991, 173. R.T. Nov. 20, 1991; 15, 16, 17, 18).

Cpl. MARINETTI testified and wrote on his report that "he" removed a wallet with $3,000.00 and other documents from the Defendant.   Then testimony developed that the wallet was removed from the Defendant by another person at a different time than Cpl. MERINETTI testified or wrote in his report.

-29-

(R.T. Nov. 20, 1991, 103-105).

Pennsylvania State Trooper PERRASEE testified that the survilliance video tape had the wrong date and time, in fact various dates and times all incorrect, relating to the acts of the Defendant (R.T. Nov. 20, 1991; 173-178).

PATRICIA MERCEDEZ RODRIGUEZ admitted lieing when she was arrested that what she said to the agent that day was not true.

> Q.  "... you are telling us... said to the agent
>     that... you were not telling the truth...?"
>
> A.  "Today I am saying it."

(R.T. Nov. 20, 1991, 251).

> Q.  "... you said something different to them than
>     what you are saying today...?"
>
> A.  "At the beginning."
>
> Q.  "Yes."
>
> A.  "I never spoke to the agents."

(R.T. Nov. 20, 1991, 252).

RODRIGUEZ just testified that she lied to the agents, then later states she never spoke to them.

RODRIGUEZ, when questioned about the plea  agreement she signed, states that the government offered her a lower sentence for cooperation (R.T. Nov. 20, 1991, 256-257).   Then she states and vehemently denies ever signing any agreement (R.T. Nov. 20, 1991, 256).

> "I haven't made an agreement with anyone." ¶ 8.
>
> "I haven't signed any papers." ¶ 22.

54

Then she admits she was told that she could get 40 years, but if she cooperates she could get 17 months. (R.T. Nov. 20, 1991, 258).

Then she states she signed no plea (R.T. NOv. 20, 1991, 258 ¶ 20).

RODRIGUEZ then admits that she lied to all the people she informed on to be delivering cocaine for, and with. (R.T. Nov. 20, 1991, 261-263).

These witnesses are an insult to the intelligence of the court, to the very concept of injustice initiated by the founders of this country.

The legal Maxim; "Falsus in Uno, falsus in Omnibus" never had a clearer application.

It is at the trial judges' discretion to evaluate the credibility of the witnesses, the court abused it's discretion in not instructing the jury that these witnesses should be viewed with a discerning eye; Logue vs. International Rehabilitation Assn. 683 F. Supp. 518 (W.D. Pa. 1988)

The Third Circuit stated that inconsistencies in testimony show impeachment United States vs. Wali 860 F. 2d. 588 (3rd Cir. 1988), quoting United States vs. Hale 427 U.S. 171, 95 S. Ct. 2133, 45 L. Ed. 2d. 99 (1975), qouting Greenwald vs. United States 1 L. Ed. 2d. 931.

The chain of custody and dates on the admission of an

-31-

ambivalent video is plain error <u>United Sates vs. Robinson</u> 967 F. 2d. 287 (9th Cir. 1992).

The court committed error in allowing the jury to consider testimony of these witnesses, who are the government's case without serious limitting instruction or recognizing the testimony as a flagrant deception of the court.

## THE COURT IMPROPERLY SENTENCED DEFENDANT UNDER U.S.S.G. 3B1.1(a).

The Presentence Report recommended a four (4) point enhacement for organizer leader of a criminal activity that involved five (5) or more participants.   It states at Offense Level Computation 29.   Adjustment for Role in the Offense that, "The Defendant directed a minimum of seven (7) individuals in this drug conspiracy".

The Presentence Report identifies three (3) co-defendants JAVIER CRUZ, PATRICIA RODRIGUEZ, and JOSE RIVERA Jr.

The Presentence Report refers to two employees of the family owned Food Market (¶ 9), and indicates that they had been arrested for possession of small amounts of cocaine. This is no evidence, nor has it been suggested that they were part of any drug transaction with the Defendant.   Their only connection with the Defendant was that they were working at the family Food Market.   There is no reference of their acting on behalf of the Defendant in any drug activity.

56

-32-

The only participant identified from this enormous ring in the Presentence Report are the four co-defendants.

U.S.S.G. 3B1.1(a) Commentary at (3) clarifies that to distinguish leadership and organizational role from one of mere management or supervision, the court should consider the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in the planning or organization of the offense, the value and scope of the illegal activity, and the degree of control, and authority exercises over others.    This adjustment does not aply to a Defendant who merely suggests committing the offense.

Neither the Presentence Report, nor the Court addressed to these areas in relation to the Defendant.    There is no testimony on record to support one of these criteria.

Courts should always consider the commentary, and should construe Guidelines, and its Commentary so as to be consistent; United States vs. Maderrie Gallegos 945 F. 2d. 264 (9th Cir. 1991): United States vs. Anderson 942 F. 2d. 606 (9th Cir. 1991): United States vs. Blackston 940 F. 2d. 877 (3rd Cir. 1991).

The Third Circuit stated to distinguish leader and organizer from manager and supervisor there must be a degree

-33-

control or organizational authority as required by U.S.S.G.
3B1.1 for it to apply. United States vs. Phillips 959 F. 2d.
1182 (3rd Cir. 1992)

The testimony indicates that each of the four (4) co-
defendants were acting without any authority exercised over
them by the Defendant.

The court must be confident before appying a 3B1.1
enhacement, after review of the testimony of the government
chief witness, and the Presentence Report there can be no
confidence in the enhacement; United States vs. Castro 979 F.
2d. 921 (2nd Cir. 1992).

The U.S.S.G. Sec. 3B1.1(a) enhacement requires five (5)
or more participants and the court have clearly stated that the
five (5) or more participants must be identified.   They are
not; United States vs. Fuentes 954 F. 2d. 151 (3rd Cir. 1992).
There must be identified five (5) or more participants who are
involved with the offense charged as was the underlying
activities of the participants involved in the limited sphere
of the elements of the specific charged offense., with direct
control over those participants. United States Vs. Inigo 925 F.
2d. 641 (3rd Cir. 1991), quoting United States vs. Manthei 913
F. 2d. 1130 (5th Cir. 1990), quoting United States vs. Reid
911 F. 2d. 1456 (10th Cir. 1990).

Being characterized as a leader under U.S.S.G. 3B1.1(a)
depends upon the degree of his participation in planning or

-34-

organizing the offense and the degree of control, and authority
exercised over the members of the conspiracy; United States vs.
Beaulieau 959 F. 2d. 375 (2nd Cir. 1991) Id. Comment N. 3 at
379.

The court must analyze the degree of control over others
United States vs. Salomon 944 F. 2d. 1106. (3rd Cir. 1991)

The testimony, facts indicate group activity with the
various co-defendants acting at their own discretion.   The
view must be under the erroneous standard for the District
Court to make an actual determination; United States vs.
Cianscewski 894 F. 2d. 74 (3rd Cir. 1990).

The review is plenary; United States vs. Preston 910 F.
2d. 81-84 (3rd Cir. 1990).

A hearing is required under U.S.S.G. 6A1.3 a Fatico
hearing; United States vs. Fatico 603 F. 2d. 1053, 1057, N. 9
(2nd Cir. 1979).

## THE RELEVANT "CONDUCT" OF THE DEFENDANT
## PURSUANT TO U.S.S. G. Sec. 1B1.3(a).

THE AMOUNT OF DRUGS THE DEFENDANT WAS RESPONSABLE FOR
IN THE CONSPIRACY WAS NOT DETERMINED.    THE OFFENSE
LEVEL WAS NOT PROPERLY CALCULATED.

"The Presentence Report at Offense Level Computation 26,
Base Offense Level states:

The base offense level is found in Section

2D1.1(a)(3)(c), the Drug Quantity Table, this Section

directs that a base offense level of 34 be provided when

at least 15 kilograms but less than 50 kilograms of

cocaine is <u>involved</u>. [emphasis added]."

The Presentence Report at the Offense Conduct indicates
that JAVIER CRUZ offered to supply as much as 20 kilogramss of
cocaine, (¶ 10).   RIVERA met with the C.I., and showed him...
one half kilogram of cocaine (¶ 13).   RIVERA offered to sell
the C.I. 125 grams... (¶ 14), and stated that the previous day
he had sold 2 kilograms of cocaine... (¶ 15)... Rivera sold
the 125 grams.   The C.I. observed the purchase of
approximately 1½ kilograms of cocaine... from JAIME RIVERA, (¶
16).   CRUZ sold approx. 1 oz of cocaine... (¶ 18), RODRIGUEZ
stated that RIVERA... requesting... she pick up 6 kilograms,
(but she only had 3 kilograms) (¶ 19).

The Presentence Report at optimun indicates an allegation
of 4½ kilograms to a maximum of 7½ kilograms; actually 125
grams maximum atributable to the Defendant.

-3 6

There was not determination of what specifically the Defendant had been involved in, or with, or to what degree.

The Defendant was found guilty of conspiracy.    The U.S.S.G. was amended in November 1, 1992 to clarify the interpretation of "relevant conduct" to put logic into the distribution of responsability particularly in drug conspiracy offenses.

U.S.S.G. 1B1.3(a) was amended to read;

"Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the Defendant (the jointly undertaken activity) is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant.    In order to determine the Defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular Defendant agreed to jointly undertake (i.e. the scope of the specific conduct and objectives embraced by Defendant's agreement).    The conduct of others that was in furtherance of, and was reasonably forseeable in connection with the criminal activity jointly undertaken by the Defendant's relevant conduct under this provision."

61

-37-

This transfers the focus from the amount of the total acts with all the participants to the individual participant. The Amendment of Nov. 1, 1992 was a clarifying amendment.

U.S.S.G. 1B1.11 as Amended Nov. 1992, Use of Guideline Manual in Effect on date of sentencing. (Policy Statement).

(a) The court shall use the Guideline Manual in effect on the date that the defendant is sentenced.

(b)(2) The Guideline Manual in effect on a particular date shall be applied in its entirely... however if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent Amendments to the extent that such Amendments are clarifying [Emphasis added] rather than substantive changes.

This transfers the focus from the amount of the total acts with all the participants to the scope of the actions and responsability of the individual participant.

The Amendment of November, 1992 was a clarifying Amendment.

Courts have expressly stated that a clarifying amendment can be considered before implimentation and/or applied retroactively.

The Fifth Circuit stated in: United States vs. Agulera Zapata 901 F. 2d. 1209 (5th Cir. 1990):

62

"Because the Amendments were intended only to clarify
Section 1B1.3's application, and therefore, implicity was
not intended to make any substantial changes to it, or
it's commentary, we may consider the amendment language
of Application Note 1 to Sec. 1B1.3 even though it was
not effective at the time of the offense in question."
Id. @ 1213.

The Fourth Circuit stated in United States vs. Deigert

916 F. 2d. 916 (4th Cir. 1990):

"That the relevant (1988) amendment was not substantive
change, but clarification of the existing  principle
requiring relevant conduct..."   Id. @ 917.

The court therefore found that they could be applied to a

Defendant charged with a crime which had ocurred before the

amendment.

The Second Circuit followed the reasoning of Deigert in

United States vs. Joyner 924 F. 2d. 454. (2nd Cir. 1991) a

clarifying amendment should be applied retroactively.

The Ninth Circuit followed the reasoning of Deigert in

United States vs. Restrepo 903 F. 2d. 648, 656 (9th Cir.

1990).

In Teague vs. Lane 106 S. Ct. 1060 (1989), the Supreme

Court rules that a clarifying statement could be presented on

collateral review.

Teague found two exceptions that encompass clarifying

statements:

"First, a new rule should be applied if it places certain
kinds of primery, private individual conduct beyond the
power of the criminal law-making authority to proscribe."

63

"Second, a new rule should be applied retroactively if it requires the observance of those procedures that... are implicit in the concept of ordered liberty."   Id. @ 1073.

This is a clarifying amendment, the result sought in collateral review was dictated by the prior Guidelines just not understood by the court.

Further, there is language which evidences and intent by the Commission to allow collateral relief.

The Federal Register, where the amendments were first listed (57 FR 20148) states;

"Comments regarding clarifying amendments that the Commission should specify for retroactive application to previously sentenced Defendants should be received no later than July 31, 1992."

Therefore, the Commission recognizes the importance of these clarifications to persons already sentenced and anticipates that they may be elegible for relief.

-40-

CONCLUSION

The court, in the interest of justice must order a new
trial.   Regardless of guilt or innocense, when the integrity
of the criminal justice, and the prestige of the United States
Court require it.   When the courts tolerate the acts as
exhibit in this case by a confidential informant, concern must
be for the survival of the American System.

President Thomas Jefferson once said.

"When a man assumes public trust he should consider
himself public property." (Readers Digest, Quotable
Quotes, ¶ 37, Feb. 1993).

The testimony is that truth and justice are meaningless
concepts to that person of public-property.

"When the jury verdict may be supportable on one ground
but also may be based on another ground that is
unconstitutional or illegal and when it is impossible to
tell what ground the jury selected, verdict must be set
aside."   United States vs. Corney 945 F. 2d. 1504 (11th
Cir. 1991).

A new trial must be ordered, in the alternative, the
Defendant must be resentenced

Respectfully submitted,

C5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       : NO. 91-0394-01
                            :
         vs.               :
                            :
JAIME RIVERA               :

### BRIEF IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

Defendant was tried by a jury and convicted in the United States District Court for the Eastern District of Pennsylvania on June 2, 1992 for the following offenses: Conspiracy to Distribute Cocaine, Distribution of Cocaine, Distribution of Cocaine within 1,000 feet of a School, Possession with the Intent to Distribute Cocaine, and Criminal Forfeiture.

Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. Section 2255 alleging seven (7) instances of denial of effective assistance of counsel, one (1) instance of a conviction obtained by violation of the privilege of self-incrimination and one (1) instance of conviction obtained by the unconstitutional failure of the prosecution to disclose to the petitioner evidence favorable to him at that time.

Petitioner alleges he was denied the effective assistance of counsel when his trial attorney, Nino V. Tinari, Esquire, failed to inform petitioner that he was under investigation, indicted and cooperating with the United States Government while he was representing petitioner.  In order to conceal this fact from petitioner Mr. Tinari had his son, Eugene Tinari, entered his

C6

appearance and filed Motions on behalf of petitioner, unbeknownst to petitioner, to avoid having to inform petitioner and the Court of Mr. Tinari's conflict and criminal problems.

An evidentiary hearing was held wherein the petitioner and his family members along with Mr. Nino Tinari and Mr. Eugene Tinari testified. A review of that transcript clearly shows that Nino Tinari was contacted by the family and hired to represent petitioner. Mr. Tinari testified that he was arrested for income tax evasion and related charges on August 1, 1991. Mr. Tinari was contacted by the petitioner's family in September of 1991 to effect representation for petitioner. (N.T. 143-144, 11/22/93). Eugene Tinari entered his appearance on behalf of petitioner on September 19, 1991 (Id. at 95). On October 2, 1991 Eugene Tinari again entered his appearance on behalf of petitioner. (Id. at 103). All Motions filed on behalf of petitioner were filed in Eugene Tinari's name. (Id. at 107). In addition, the Jury Instructions were filed in Eugene Tinari's name. (Id. at 105).

Nino Tinari testified that he knew the government would require a colloquy if he entered his appearance. (Id. at 48). Nino Tinari also testified that he failed to inform petitioner he was under investigation until jury selection began. (Id. at 158). The petitioner testified that Nino Tinari told him about his arrest and indictment in the courtroom prior to trial. (Id. at 184). Petitioner testified that during this conversation, Nino Tinari refused to return any of the fees paid to him when asked to withdraw so that petitioner could hire another attorney. (Id. at 185). Petitioner also testified that he was given the option of

67

having Nino Tinari or a Public Defender represent him.   (<u>Id</u>. at 190).   No one told petitioner he could have his case continued to hire counsel of his choice.   (<u>Id</u>.).

A defendant claiming ineffective assistance of counsel must meet two (2) requirements to get relief.   First, a defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.   <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).   In <u>United States v. Moscony</u>, 927 F.2d 742 (3rd. Cir. 1991) the Court stated that the Sixth Amendment guarantee of effective assistance of counsel includes the right to the attorney's undivided loyalty free of conflict of interest.   The Court reasoned that an attorney's undivided loyalty is required to put the government to its proofs in an adversarial manner and for this counsel to be free of conflicts of interests is necessary.   (<u>Id</u>. at 748).

It is clear from the waiver colloquy that there was a conflict of interest present in this instance case.   Petitioner claims that he was denied a fair opportunity to secure counsel of his own choosing as required by <u>Powell v. Alabama</u>, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).   A presumptive right to counsel of one's choice has been recognized as arising out of the Sixth Amendment. <u>United States v. Moscony</u>, 927 F.2d 742, 748 3rd Cir. 1971).

68

Petitioner contends that he was forced to either go with Mr. Nino Tinari, with whom he was dissatisfied, or a Public Defender who had no knowledge of the case. Mr. Rivera testified at the evidentiary hearing that given the choice of this two evils he chose Mr. Tinari. Petitioner was never informed that the case could have been continued to give him additional time in which to hire the counsel of his choosing. For these reasons petitioner believes he was denied the effective assistance of counsel as required by the Constitution of the United States and respectfully requests this Honorable Court to grant him a new trial.

Petitioner next alleges that he was denied effective assistance of counsel when his trial attorney failed to photocopy and direct copies of any discovery materials to him prior to trial. Trial counsel was also requested to provide copies of tape recorded conversations, along with the transcripts of these conversations, so that petitioner to could evaluate them. Trial counsel never provided any discovery or tape recorded conversations to petitioner.

In <u>United States v. Baines</u>, 687 F.2d 659 (3rd. Cir. 1982) the Court reasoned that effective assistance refers not only to forensic skills but also painstaking investigation in preparation for trial. In <u>Baines</u>, the Court found that trial counsel was ineffective in failing to investigate a voice exemplar in comparison with tape recorded conversations of defendant used by the government. The Court held that a defense attorney is obligated to inquire thoroughly into all potentially exculpatory defenses and evidence. (<u>Id</u>. at 668). Petitioner would contend

that trial counsel, in failing to supply the requested discovery and tapes for petitioner, was constitutionally incapable of determining the weight to be accorded this evidence.  Mr. Tinari testified that the tapes and transcripts were available for Wyrma Rivera to review in his office.  (N.T. 134-135).  Mr. Tinari denied that petitioner requested tapes.  (Id. at 155).

It is axiomatic that a defendant be allowed to participate with defense counsel in preparation for his trial.  Petitioner cannot understand how he is expected to prepare for trial while incarcerated prior to trial and denied access to discovery and the evidence the government is preparing to use against him. Petitioner can see no reasonable basis designed to effectuate his interest in denying him access to discovery.  In addition, petitioner testified that Mr. Tinari informed him that the tapes would not be used at trial.  (Id. at 178).  Also, the tapes and recordings of conversations took place in Spanish and the transcripts provided translations of the tapes.  Petitioner was never given the opportunity to compare the tapes with the translations and was arguably the most competent to do this type of work.  In addition, petitioner explained that some of the conversations which were recorded at the grocery store could possibly have contained innumerable voices due to the number of people that were habitually in the store.

Petitioner contends that trial counsel's failure to supply him with discovery as requested was constitutionally deficient.  As a result of this, petitioner was denied the effective assistance of counsel as required by the United States Constitution and

79

respectfully requests this Honorable Court to grant him a new trial.

Petitioner alleges that he was denied the effective assistance of counsel when trial counsel misinformed him and his family regarding sentencing guidelines when he indicated to both that the most time petitioner could receive was a maximum sentence of ten (10) years when, in fact, the ten (10) year time period was a mandatory minimum sentence prescribed by the charges and petitioner was, in fact, sentenced to 292 months. Because of this advice petitioner failed to pursue plea negotiations or investigate any plea negotiations.

Wyrma Rivera testified that Nino Tinari told her that the maximum sentence petitioner faced was ten (10) years. (N.T., 11/22/93, p. 11). Luis Rivera, petitioner's brother, met with Nino Tinari along with Wyrma Rivera, Jose Rivera, Miguel Rivera and Yvette Pagan. (Id. at 45). Luis Rivera testified that Nino Tinari sent Eugene to get the sentencing book, reviewed the book and said the most petitioner could receive is ten (10) years. (Id. at 46). Miguel Rivera, petitioner's brother, testified that he met with Nino Tinari along with others. When asked about the sentence, Nino sent Eugene to get the sentencing book and stated that the maximum amount of time petitioner was exposed to would be ten (10) years. (Id. at 63). Jose Rivera, petitioner's brother, testified that he was at the same meeting and that Mr. Nino Tinari explained that the most time petitioner could get was ten (10) years. (Id. at 74). Eugene Tinari testified that he could not recall what was discussed regarding sentencing. (Id. at 90). Nino Tinari testified that he

discussed petitioner's exposure at sentencing. Mr. Tinari specifically said there was a minimum of ten (10) and a maximum of life and that he informed Wyrma Rivera of this. (Id. at 136-137).

In United States v. Day, 969 F.2d 39 (3rd. Cir. 1992) the Court examined a situation that is remarkably similar to the instant one. In that case, at trial, Mr. Day was represented by Nino Tinari although at critical times Tinari's son, Eugene, also represented Day. (Id. at 42). Mr. Day alleged that Nino Tinari affirmatively misrepresented that Day faced a maximum sentence of 11 years in prison when, in fact, Mr. Day was sentenced to 22 years and faced a far stiffer sentence than the sentence he received. The Day Court reasoned that if counsel had, in fact, advised his client that he was only subject to less than half of what he actually received, this would be deficient performance on counsel's part at a critical stage of the proceeding which violated the Sixth Amendment. (Id. at 43). The Court explained that prejudice could result if defense counsel's failure to communicate deprives petitioner of the opportunity to present a plea bargain for the consideration of the trial judge and, on acceptance by the trial judge, the ability to enter a plea in exchange for a lesser sentence. (Id. at 44). For these reasons, petitioner believes he was denied the effective assistance of counsel, as required by the United States Constitution, and respectfully requests this Honorable Court to grant him a new trial.

Petitioner next contends that he was denied the effective assistance of counsel when Nino Tinari willfully failed to disclose, prior to trial, the fact that he was indicted and under

investigation by the United States Government in order to continue his silent representation of petitioner, receive legal fees and avoid his obligations to petitioner.    On the day of trial petitioner was given the option of waiving his conflict of interest rights, and keeping representation of Mr. Tinari, or to proceed with representation by the Public Defender.    The facts upon which this contention is based are referred to above.

As stated above, under Strickland, petitioner must show that counsel's performance was deficient and the deficient performance prejudiced the defense.    Our Supreme Court has also stated, however, that when an ineffective assistance of counsel claim is based on an alleged conflict of interest on the part of trial counsel, prejudice is presumed "if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely effective his lawyer's performance".    Strickland, 466 U.S. at 692, 104, S.Ct. at 2067, 80 L.Ed. 2d 674; United States v. Brown, 991 F.2d 1162, 1168 (3rd. Cir. 1993).    The Third Circuit has recognized that the most important decision a defendant makes in shaping his defense is his selection of an attorney.    United States v. Laura, 607 F.2d 52, 56 (3rd. Cir. 1979); United States v. Romano, 849 F.2d 812, 819 (3rd. Cir. 1988).    Rule 1.7(b) of the Pennsylvania Rules of Professional Conduct require that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's own interest unless the client consents after full disclosure.    It is clear here that Mr. Tinari did everything in his power to avoid full disclosure to his client/petitioner.    It is

also clear that the Court should have been aware of this with a simple review of the record which showed that Mr. Tinari's appearance was not entered until the day of trial. The two (2) prior entries of appearance were entered by Eugene Tinari. Coupling this with the fact that petitioner was given the choice of accepting Mr. Tinari or a Public Defender who was not familiar with the case, it is clear that petitioner was denied the effective assistance of counsel. In United States v. Moscony, 927 F.2d 742, 749 (3rd. Cir. 1991) the Court stated that the trial court has an institutional interest in protecting the truth seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver. Petitioner believes that Mr. Tinari not only willfully deceived him but also deceived the Court. In addition, petitioner was not aware that it may have been possible for him to ask the Court for a continuance so that he could have sought counsel of his own choosing. This becomes important because petitioner testified that he was, in fact, speaking to appellate counsel to attempt to have said counsel assume representation. (N.T., 11/22/93, p. 181). In this case it is clear that Mr. Tinari breached his duty of loyalty to petitioner and perhaps this is the most basic of counsel's duties. Government of Virgin Islands v. Zepp, 748 F.2d 125, 132 (3rd. Cir. 1984).

For the above stated reasons petitioner believes he was denied the effective assistance of counsel as required by the United States Constitution and respectfully requests this Honorable Court to grant him a new trial.

74

LOUIS T. SAVINO & ASSOCIATES

Petitioner alleges he was denied the effective assistance of counsel when his trial attorney failed to present and argue the defense of entrapment.    Mr. Tinari failed to discuss with petitioner the abandonment of this defense although petitioner had repeatedly requested that all aspects of the case be presented to him for his approval.    Mr. Tinari testified that he had, in fact, discussed the defense of entrapment.    (N.T., 11/22/93, p. 138). Mr. Tinari explained that he explored it through looking at the discovery and he thought he also may have raised it during the course of the trial although he wasn't sure.    However, a thorough review of the trial notes does not reveal the raising of any entrapment defense.

The Sixth Amendment right to counsel exists in order to protect the fundamental right to a fair trial.    The test as formulated in Strickland for determining whether counsel rendered Constitutional ineffective assistance is stated in two (2) parts: (1) Deficient performance and; (2) prejudice.    The first step of the test of deficient performance is clearly met here.    Trial counsel apparently found that an entrapment defense was viable after a review of discovery and, in fact, testified that he thought he had used it at trial.    However, a review of the trial transcript shows that he failed to raise this defense.    This is clearly a deficient performance.    Petitioner mustthen show prejudice.    If trial counsel believes, after a review of the discovery and information provided by the government, that an entrapment defense was viable then it is clearly prejudicial to petitioner to not have that defense presented for consideration by the jury.    As this

Court is well aware, an entrapment defense, if proven, would entitle petitioner to an acquittal of all charges. The entrapment basically centers on the conduct of the government agents involved. However, this argument was not made to the jury, nor was any substantial evidence placed before the jury so that they could consider this argument. Petitioner believes he was clearly prejudiced by the abandonment of this defense. For these reasons, petitioner believes he was denied the effective assistance of counsel as required by the United States Constitution and respectfully requests this Honorable Court to grant him a new trial.

Petitioner contends he was denied the effective assistance of counsel when trial counsel failed to file a Motion for Severance after the trial court granted co-defendant's Motion to Admit Guilty Plea. Petitioner believed it was impossible for the jury to compartmentalize the fact that a co-defendant had plead guilty to making two distributions of cocaine from petitioner's food market, when they were both charged with conspiracy in the indictment. Although it is well settled that provisions for joinder of defendant's, under Rule 8(b) of the Federal Rules of Criminal Procedure, are satisfied when an indictment charges a single conspiracy. Severance may be granted, under Rule 14 of the Federal Rules of Criminal Procedure, if it appears that a defendant may be prejudiced by the joinder of offenses. The notes of Advisory Committee on the Rules clearly state that a defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. The purpose of

76

this Rule is to provide a procedure whereby the issue of possible prejudice can be resolved on a Motion for Severance. However, trial counsel failed to ask the Court to sever petitioner after the trial court granted co-defendant's Motion to Admit Guilty Plea. Petitioner believes that trial counsel's performance was deficient in failing to request severance. Furthermore, petitioner believes he was prejudiced in that the jury was allowed to consider the fact that a co-defendant had, in fact, plead guilty to two counts of distributing cocaine from petitioner's food market and this was an integral part of the conspiracy case against petitioner. For these reasons, petitioner believes he was denied effective assistance as required by the United States Constitution and respectfully requests this Honorable Court to grant him a new trial.

Petitioner contends that his conviction was obtained by the violation of the privilege against self-incrimination. During the course of the trial, the government solicited testimony from Detective James Stevens as to the post-arrest silence of Jose Rivera, a co-defendant of petitioner. There was an objection and a Motion for a Mistrial. The objection was sustained, however, the Motion for Mistrial was denied. The trial Court eventually ruled that the government was not allowed to comment on the assertion of the right to remain silent. The trial court recognized that it was important in the cautionary instruction that nothing said, on the subject of unconstitutional testimony of the conversation between Detective Stevens and Jose Rivera, be attributed to petitioner. However, the Court concluded it would not give a cautionary instruction to go to petitioner. Petitioner believes that the

reference to the post-arrest silence of Jose Rivera could only, in the eyes of the jury, indicate a pre-disposition of guilt of Jose Rivera which would spill over to petitioner as they were both charged in the same conspiracy. The detective stated that they were both arrested together. They were both co-defendants in a conspiracy charged in the same indictment. They were both tried before the same jury.

A reference to a defendant's post-arrest silence violates a Fifth Amendment privilege against self-incrimination in violation of the Rule of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965). Reference to post-arrest silence of an accused may impermissibly contribute to any verdict. Our courts have consistently held that the government is prohibited from commenting or eliciting testimony on post-arrest silence as it is clearly a penalty imposed by the Court for one exercising a Constitutional privilege. Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed. 2d 678 (1964). The comment on the post-arrest silence of Jose Rivera who was charged in a conspiracy which contained petitioner, was clearly prejudicial and damaging to petitioner. Petitioner believes that the trial Court should have granted the Motion for Mistrial, or in the alternative, should have given a more explicit cautionary instruction as to petitioner. For these reasons, petitioner believes that he was denied the protection of the United States Constitution as contained in the Fifth Amendment and respectfully requests this Honorable Court to grant him a new trial.

Petitioner contends that his conviction was obtained by the unconstitutional failure of the prosecution to disclose to the petitioner evidence favorable to the defense. Petitioner was denied the effective assistance of counsel when trial counsel failed to object to the use of this evidence and further failed to object to the improper foundation for the use of this evidence. During the course of the testimony of Manual De La Cruz, a government witness, it came to the attention of defense counsel and petitioner that the witness was referring to notes. Although, the United States Attorney admitted that he had knowledge of the notes, he stated that the notes were made by the witness to refresh his recollection. However, conflicting testimony was offered as to the origin and use of these notes. The notes were ultimately turned over to defense counsel, however, they were turned over at such a late point in the witness' testimony that it was impossible to investigate them fully. Furthermore, defense counsel failed to object to the use of these notes by the witness and further failed to object to the improper foundation for the use of these notes.

Petitioner contends that the failure of the government to provide this information to them before trial, constitutes a violation of the government's duty to reveal material which is exculpatory as to defendants, as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963). Brady provides that suppression by the prosecution, of evidence favorable to an accused, upon request by the defense, violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

Id. at 87.  A defendant is entitled to a new trial where there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome.  United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 3383, 87 L.Ed. 2nd 481 (1985).  Our Circuit has recognized that the Bagley inquiry requires consideration of the totality of the circumstances, including possible effects of non-disclosure on the defense's trial preparation.  United States v. Perdomo, 929 F2d. 967, 971 (3rd Cir. 1991).  In Strickland v. Washington, 466 U.S. 668, 104, S.Ct. 2052, 80 L.Ed. 2d 674 (1984) the Supreme Court stated "...an incomplete response to a specific request not only deprived the defense of certain evidence, but also has the effect of representing to the defense that the evidence does not exist.  In reliance on this misleading representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that they otherwise would have pursued".

Petitioner believes that the information denied him was material.  Had this evidence been disclosed, the result of the proceeding would have been different.  Petitioner would have had the ability to investigate the information contained in these notes.  The information contained in the notes could have been used to petitioner's benefit when cross-examining the witness.  This information, if disclosed and properly investigated and used effectively, may have made the difference between conviction and acquittal.  This error was further compounded by defense counsel's

failure to object to the use of these notes by the witness and by his further failure to object to a proper foundation for the use of the notes, when the United States Attorney stated the notes were made to refresh this witness' recollection. However, during the course of the testimony of the witness, a proper foundation to use notes to refresh the witness' recollection was not laid. Petitioner would contend that he was clearly prejudiced by defense counsel's lack of objection to the use of this material by this witness who supplied materially damaging evidence on behalf of the government. For these reasons petitioner believes he was denied due process under the United States Constitution by the prosecution withholding this information and was further denied the effective assistance of counsel as required by the United States Constitution when defense counsel failed to object to the use of these notes. Petitioner respectfully requests this Honorable Court to grant him a new trial.

Petitioner contends he was denied the effective assistance of counsel when his trial attorney failed to request appropriate jury instructions as to the credibility of the government witness, Manuel De La Cruz. During the course of this witness' testimony, several contradictions were elucidated from the testimony of this witness. Petitioner believes that counsel should have requested a "falsus in uno, falsus in omnibus", instruction. In this case the jury would have been properly instructed that if they felt that this witness had, in fact, lied that they need not believe any of his testimony. Petitioner believes that under the test for ineffective assistance of counsel, as enunciated in Strickland

above, he has shown that trial counsel's performance was deficient in failing to request this instruction. Petitioner believes that he was prejudiced in that, had the jury been instructed that they were allowed to, in effect, disregard all of the testimony of this witness, petitioner had a significant chance of being acquitted. For these reasons, petitioner believes that he was denied the effective assistance of counsel as required by the United States Constitution and respectfully requests this Honorable Court to grant him a new trial.

For all of the foregoing reasons, petitioner respectfully requests that this Court grant him a new trial or grant such other or further relief to which he may be entitled.

Respectfully submitted,

LOUIS T. SAVINO, JR.
Attorney for Petitioner

82

EXHIBIT - 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      CRIMINAL ACTION
     :      No. 91-00394
     :
         v.      :
     :
     :      CIVIL ACTION    FILED   MAY 20 1994
JAIME RIVERA      :      No. 93-2411

## M E M O R A N D U M

CAHN, C.J.                                           MAY 19, 1994

     The defendant Jaime Rivera ("defendant") is serving a 292 month sentence at the Federal Correctional Institution in Raybrook, New York.  Defendant moves the court to vacate the sentence pursuant to 28 U.S.C. § 2255, claiming that he received ineffective assistance of counsel during his criminal prosecution and that therefore his incarceration violates the Sixth Amendment of the United States Constitution.  He also claims a violation of the Fifth Amendment privilege against self-incrimination and failure of the prosecution to disclose exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  On November 22, 1993, the court held an evidentiary hearing for which the defendant retained counsel.  After careful consideration of the defendant's evidence and arguments the court denies the Motion.

ENTERED: MAY 2 0 1994

Exh. 2

CLERK OF COURT

101

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

A grand jury indicted the defendant in 1991, charging him with six counts of drug-related offenses arising out of an alleged conspiracy to distribute cocaine.  Following the defendant's arrest on July 31, 1991, he retained the services of Attorney James Heidecker ("Heidecker").  (N.T. at 7, 28, 42.) Heidecker represented the defendant at his preliminary hearing. (N.T. at 7.)  Defendant then discharged Heidecker and on August 14, 1991, retained Attorney Emmanuel H. Dimitriou ("Dimitriou"). ((Aff. of Emmanuel H. Dimitriou at ¶ 1) (N.T. at 7, 29)).

Dimitriou contacted the Assistant United States Attorney ("AUSA") assigned to the case and, through some investigation, determined that the prosecution possessed video- and audio-taped evidence of the defendant's crimes.  (Dimitriou Aff. at ¶ 2; N.T. at 30).  Dimitriou estimated that, under the United States Sentencing Guidelines ("USSG"), the defendant could face a mandatory five-year minimum sentence if convicted.  Dimitriou Aff. at ¶ 2.  On August 19, 1991, Dimitriou visited the defendant at the Patterson County Prison in Passaic, New Jersey. (Dimitriou Aff. at ¶ 3; N.T. at 174).  He told the defendant that the Government had a strong case for conviction, informed defendant of the five-year minimum sentence, and advised the defendant that the Government was willing to request a USSG § 5K1.1 downward departure in exchange for a guilty plea,

---

1.  Citations to the transcript of the § 2255 hearing are cited simply as "N.T.".  Transcripts of other proceedings will be cited similarly, but also include the date of the testimony.

2

cooperation and testimony.   (N.T. at 76; Dimitriou Aff. at ¶ 3).

Under no circumstances, however, did the defendant desire to

plead guilty and cooperate.   (N.T. at 36, 174).   Rather,

defendant steadfastly maintained his innocence.   Dissatisfied

with Dimitriou's handling of the case and unwilling to enter a

guilty plea, defendant discharged Dimitriou on August 27, 1991.

Defendant then retained Attorney Nino V. Tinari ("Tinari").

(N.T. at 175).   Tinari visited the defendant in prison, and

defendant persisted in maintaining his innocence and

unwillingness to plead guilty or cooperate.   (N.T. at 136).   When

Tinari received discovery from the AUSA, he determined that the

defendant risked sentencing exposure for up to six kilos of

cocaine[2] and that, under the USSG, a conviction would trigger a

mandatory ten-year sentence with a possibility of life

imprisonment.   (N.T. at 136-37).   Tinari told the defendant of

the potential sentence, yet the defendant would not plead guilty

or cooperate.   Id.

A jury tried and convicted the defendant on November 22,

1991.   He then retained Attorney Louis T. Savino, Jr. to

represent him during the sentencing and appeal.   The defendant's

crimes translated into a USSG offense level of 40, which carries

an imprisonment range of 292 to 365 months.   This court imposed a

292 month sentence.

---

2.  Apparently, at some point during discovery and for reasons
not relevant here, the government increased the amount of cocaine
allegedly possessed from approximately three kilograms to over
six kilograms.

3

## II.  DISCUSSION

### A.  Ineffective Assistance of Counsel

The defendant asserts seven separate bases for a finding of ineffective assistance.  The Court of Appeals for the Third Circuit has explained that the

> "Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest."

United States v. Moscony, 927 F.2d 742, 748 (3d Cir.) (quoting United States v. Gambino, 864 F.2d 1064, 1069 (3d Cir. 1988), cert. denied, 115 L. Ed. 2d 984 (1991)).  "Effective assistance" also requires that the defendant "be afforded a fair opportunity to secure counsel of his own choice."  Powell v. Alabama, 287 U.S. 45, 53 (1932), quoted in, Moscony, 927 F.2d at 748.  The defendant's arguments touch upon each component of the guarantee.

### 1.  Attorney of Choice

In Grounds One and Four, the defendant asserts that he was denied his choice of counsel.  The Sixth Amendment guarantee of assistance of counsel includes by implication a presumptive right to counsel of choice, but that right is not absolute.  United States v. Kikumura, 947 F.2d 72, 78 (3d Cir. 1991).  The constitution is "satisfied so long as the accused is afforded a fair and reasonable opportunity to obtain his chosen counsel and there is no arbitrary action prohibiting the effective use of such counsel."  Id.; Fuller v. Diesslin, 868 F.2d 604, 607 (3d

4

Cir.) ("a defendant's choice may not be arbitrarily denied"),
cert. denied sub nom., Perretti v. Fuller, 493 U.S. 873 (1989).

The right to counsel of choice often is implicated when the
defendant's attorney has a conflict of interest.  In such cases,
the court must decide whether the conflict is one that the
defendant can waive.  Moscony, 927 F.2d at 749-50.  If the court
finds that a serious potential for conflict exists, "the
presumption in favor of a defendant's counsel of choice is
overcome and the trial court may disqualify counsel and reject
the defendant's waiver of conflict-free representation."  Id. at
750.

Attorney Tinari was under criminal investigation for tax
evasion and obstruction of justice during the investigation and
trial of this case.  The court was concerned that the pending
investigation could create a conflict that would hamper Tinari's
effective representation of the defendant.  Because the
investigation was in an early stage and because the nature of the
charges did not relate directly to Tinari's ability to practice
law, the court gave the defendant an opportunity to waive the
potential conflict.  See Moscony, 927 F.2d at 750 (noting the
district court's latitude to permit waivers of potential
conflicts).  On November 18, 1991, the court engaged the
defendant in the following colloquy:

> THE COURT:  Who did you decide to have represent you in
>      this case?
>
> MR. RIVERA:  Nino Tinari.

THE COURT:  Mr. Nino Tinari.  Did anyone put any pressure on you to do that?

MR. RIVERA:  No.

THE COURT:  This was of your own free will?

MR. RIVERA:  Yeah.

THE COURT:  Is this the lawyer you want?

MR. RIVERA:  Yeah.

THE COURT:  Okay.  Did you know that your lawyer is being investigated by the United States Attorney's office for possible criminal wrongdoing?

MR. RIVERA:  Yeah.

THE COURT:  Has he explained that to you?

MR. RIVERA:  Yeah.

THE COURT:  Or at least explained that it's going on.

MR. RIVERA:  Yeah.  He said it was going on, yeah.

THE COURT:  Okay.  What is the nature of this investigation, in very -- in as neutral terms as you can state it?

MR. RICE:  Tax related charges, Your Honor . . . and obstruction of justice. . . .

THE COURT:  Okay.  Alright.  Do you agree with his summary?  Is there anything that . . . should be told to Mr. Rivera that would bear on whether he can place his trust in you to defend him?

MR. TINARI:  No, Your Honor.  That's basically the Government's position, it's a tax related matter.

THE COURT:  Okay.  Do you understand that if you wanted another lawyer and could not afford one, we would try and get one for you and . . . see that one is gotten.

MR. RIVERA:  Yes.

THE COURT:  Okay.  Knowing all of this, do you still want Mr. Tinari to represent you?

6

106

MR. RIVERA:  Yes.

THE COURT:  Is the answer yes?

MR. RIVERA:  Yes.

THE COURT:  You should understand that there are some dangers in using a lawyer who's being investigated by the Government.  It's possible that during the trial, an article could come out in the newspaper relating the charges and the jury could read it and they might think that because he's being charged, you might be guilty.  Also there's a problem that he might put his interest in defending his criminal case before your case.  He might make a deal in his case that he doesn't defend your case as thoroughly as he -- as otherwise he would; or he might get busy on his case or be distracted by his case and not have the mental strength to do the best job for you.  Do you understand that?

MR. RIVERA:  Yeah.

THE COURT:  He could even become unavailable later on in the post-trial proceedings if he were on trial, disbarred, in jail or on probation or even if he absconded.  In short, you should consider carefully whether or not you want Mr. Tinari.  And I take it you have and you want him?

MR. RIVERA:  Yeah.

(N.T., 11/18/91, at 4-7).

Despite this colloquy, the defendant claims that his waiver was involuntary and that therefore he was deprived of his choice of counsel.  First, he asserts that Tinari disclosed the conflict to him on the eve of trial.  Second, he asserts that he construed the court's offer of substitute counsel to mean that, should he elect to discharge Tinari, he would be forced to proceed without a continuance.  He argues that his surprise about the investigation, coupled with the specter of proceeding as scheduled with an unprepared public defender, forced him to go

7

107

with the lesser of "two evils" and waive the conflict.   In this
way, he claims, he was denied his choice of counsel, which
apparently was any attorney other than Tinari.

Implicit in a defendant's Sixth Amendment right to obtain
counsel of choice is the "fair opportunity" to obtain such
counsel.  Powell, 287 U.S. at 53.  While this court did not offer
the defendant a continuance explicitly, nothing in the colloquy
suggested to the defendant that a continuance was unavailable.
Moreover, and more importantly, nothing in the colloquy suggested
that the defendant was dissatisfied with Tinari's representation.
The court described in detail the potential for prejudice to the
defendant if he decided to stay with Tinari and offered him the
opportunity to retain new counsel.  Implicit in this offer was
the court's recognition of the defendant's right to choose.
Nonetheless, the defendant unequivocally manifested his assent to
the continued representation.  Insofar as the court "denied" the
defendant his choice of counsel, the denial was not arbitrary
because the defendant's answers suggested to the court that his
choice was Tinari.

The defendant's situation is unlike the typical case in
which, on the eve of trial, the defendant claims dissatisfaction
with his or her attorney and requests a continuance to obtain
substitute counsel.  See Kikumura, 947 F.2d at 78.  In such
cases, the court must balance the defendant's presumptive right
to choice of counsel against the court's interest in the
"efficient administration of criminal justice."  Id.  Here, the

8

defendant articulated no dissatisfaction with counsel, did not manifest any confusion about this court's offer of replacement counsel and, of course, did not request a continuance.  Although in hindsight it may have been prudent for the court to articulate explicitly the availability of a continuance, the failure to do so does not constitute an arbitrary denial of the defendant's choice of counsel.

### 2.   The Remaining Ineffective Assistance Claims

The remainder of the defendant's ineffective assistance of counsel of claims focus on Tinari's performance.  Therefore the court must analyze these claims pursuant to the test articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court explained that a

> convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> . . . has two components.  First, the defendant must
> show that counsel's performance was deficient. . . .
> Second, the defendant must show that the deficient
> performance prejudiced the defense.

Id. at 687.  Under the first prong, the counsel's deficiency must fall "below an objective standard of reasonableness."  Id. at 688.  The reviewing court should defer to the strategy choices of counsel and presume that these choices are sound.  Id. at 689.

Under Strickland's second prong, "it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  Virtually every act or omission of counsel would meet that test."  Id. at 693.  Rather, the defendant must show "'that counsel's errors were so serious as to

9

deprive the defendant of a fair trial, a trial whose result is reliable.'" <u>Lockhart v. Fretwell</u>, 122 L. Ed. 2d 180, 189 (1993) (quoting <u>Strickland</u>).

A defendant claiming ineffective assistance of counsel "must prove both incompetence and prejudice." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) (citing <u>Strickland</u>). Therefore, the reviewing court need not approach the prongs in numerical order or even address both prongs:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, this course should be followed.

<u>Strickland</u>, 466 U.S. at 697; <u>United States v. Nino</u>, 878 F.2d 101, 105 (3d Cir. 1989) (applying <u>Strickland</u>).

### a.  Tinari's Alleged Conflict

The defendant claims that the aforementioned potential conflict rendered Tinari's representation ineffective.  Setting aside the defendant's waiver of any potential conflict, which this court finds was knowing, voluntary and intelligent, the court also finds that the defendant cannot establish prejudice.

> [W]hen an ineffective assistance of counsel claim is based on an alleged conflict of interest on the part of trial counsel, prejudice is presumed "if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"

<u>United States v. Brown</u>, 991 F.2d 1162, 1168 (3d Cir. 1993) (quoting <u>Strickland</u>, 466 U.S. at 692).  The defendant does not

10

110

argue that any of the potential conflicts identified by the court in its colloquy became actual conflicts. Instead, the defendant argues that Tinari hid the fact of his criminal investigation from the defendant so that the defendant would continue to pay legal fees to him. Tinari allegedly accomplished this by having his son, Eugene Tinari, Esquire, appear for the defendant on all pretrial matters so as not to require a colloquy earlier in the proceedings.

If true, such conduct could amount to an ethical violation because Tinari would have been representing conflicting interests.[3] Assuming that an actual conflict existed, however, the defendant cannot demonstrate the requisite adverse effect on Tinari's performance. The defendant does not attempt to link the conflict to Tinari's trial performance or the outcome of the trial. Rather, the defendant argues that Tinari's failure to inform defendant of the investigation frustrated the defendant's right to choose his attorney. As this court already has found, however, the defendant's right to choose was not infringed. The defendant has not persuaded this court that his decision to waive the conflict was involuntary or that he would have chosen substitute counsel had Tinari informed him sooner. The defendant therefore cannot prevail on this ground.

_____

3. The Pennsylvania Rules of Professional Conduct, which apply to attorneys in this court by operation of Local Rule 14, proscribe representation of a client "if the representation of that client may be materially limited . . . by the lawyer's interests" unless the client consents after full disclosure and consultation. Pa. R.P.C. 1.7(b).

111

### b.   Defendant's Decision to Stand Trial

In Ground Three of the Motion, the defendant argues that Tinari misinformed him of the potential maximum sentence for his charges.  Defendant claims that Tinari's estimate of the sentencing range was too low, and that had he known of the correct range, he would have chosen to pursue plea negotiations instead of standing trial.

The defendant echoes the argument made in <u>United States v. Day</u>, 969 F.2d 39 (3d Cir. 1992).  In <u>Day</u>, the defendant also alleged that Nino Tinari underestimated the potential minimum sentence.  <u>Id.</u> at 42.  Day claimed that, had Tinari informed him of his true sentence exposure, he would have accepted the government's plea bargain.  <u>Id.</u>  The trial court dismissed the claim, but the Court of Appeals reversed, holding that Day stated a claim for substandard performance under the first prong of <u>Strickland</u>.  <u>Id.</u> at 44.  The Court then remanded the cause to the district court for consideration of prejudice under <u>Strickland</u>'s second prong.  <u>Id.</u> at 47.

In the instant case, the defendant claims (and has so testified) that Tinari told him that his <u>maximum</u> sentence exposure was ten years.  Tinari, on the other hand, testified that he represented ten years to be the <u>minimum</u> sentence that the defendant could receive.  (N.T. at 136).  This court believes Tinari's version and therefore finds that Tinari's performance was not deficient.  Even if the defendant's version is correct, however, the defendant cannot prevail on this ground because he

12

112

also fails to demonstrate prejudice.

In the context of a plea decision, <u>Strickland</u>'s second prong focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's error, he would have sought a bargain and pleaded guilty rather than face trial.  <u>Brown</u>, 991 F.2d at 1168 (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted)).

This court is not persuaded that defendant's plea decision would have been any different.  The record permits the conclusion that however strong the government's case might have been, the defendant would have insisted upon going to trial.  For example, Dimitriou told the defendant that the government's case was strong, that the prosecution had audio- and video-taped evidence, and recommended that defendant cooperate and plead guilty. Defendant then promptly fired Dimitriou.  (N.T. at 35, 76, 127, 175).  Defendant switched to Tinari because Tinari thought there was a chance for establishing reasonable doubt and gaining an acquittal.  (N.T. at 35, 133).  All the while, defendant persisted in maintaining his innocence and refusing to plea-bargain.  Upon direct examination at the hearing on this Motion, the defendant testified:

> Q.  Now, Mr. Dimitriou came over and talked to you [in prison].  What did he say to you?

13

A.  What he said to me [was] that he had no papers at all, and so at that time, that he had spoken to Mr. Rice, and if I wanted to give my life away to the Government, you know, it could get me two to three years.

Q.  What happened after that discussion?

A.  I told him I wasn't culpable, that how was I to give the Government my life if . . . .

Q.  All right.  Let's move on to . . . Nino Tinari.  Did there come a time when it was your desire to seek other counsel?

A.  Well, it was then that I started feeling about -- you know, it wasn't convenient for me to have [Dimitriou] as my lawyer because all he wanted me to do was to give my life away to the Government.

(N.T. at 174-75).  On cross-examination, the defendant clarified:

Q.  So you hired Dimitriou and then you got rid of him?

A.  I fired him for the simple fact that when he told me that if I wanted, you know he could get me a break but I have to give my life to the Government.

Q.  You had to cooperate.

A.  Yes.

Q.  You didn't want to do that, did you?

A.  How can I cooperate if I wasn't culpable?

Q.  That's still your position.  You weren't culpable, right?

A.  No.  I wasn't culpable.

(N.T. at 188-89).  See also Id. at 38, 128.  The court infers from this testimony that the defendant's persistent refusal to plead guilty was based upon his belief that the evidence would demonstrate his innocence.  Moreover, the defendant knew that a conviction would involve the potential forfeiture of his property, which included a food market that provided income for

14

the defendant and his family.  (N.T. at 131).  This fact also suggests that the defendant preferred to stand trial rather than plead guilty.

In light of the foregoing testimony, the defendant's current assertion that he would have cooperated and entered a plea lacks credibility.  Assuming that Tinari misinformed the defendant about the potential sentence exposure and assuming that Tinari's representation of the exposure fell below an objective standard of reasonableness, the correct information would not have affected the defendant's decision.  The defendant has failed to establish a "reasonable probability" that he would have accepted a plea agreement.  Day, 969 F.2d at 45.  Therefore, the court denies the Motion insofar as it seeks relief on this basis.

### c.  Tinari's Performance at Trial

#### i.  Failure to Provide Copies of Discovery

In Ground Two, the defendant alleges that Tinari failed to provide him with copies of tape-recorded conversations, or the transcripts thereof, that the prosecution intended to use at trial.  He asserts that the tapes contained conversations that were conducted in Spanish, which is the defendant's native tongue, and therefore Tinari was ill-suited to evaluate the translations of the tapes.  He concludes that this failure to provide the defendant with recordings and transcripts deprived him of his opportunity to participate in his defense and reflects Tinari's inadequate preparation for trial.

15

There is a significant factual dispute about whether the
defendant actually requested copies of the discovery.  Tinari
denied that the defendant requested the tapes or transcripts,
(N.T. at 155), but testified that the defendant's wife, Wyrma,
listened to some of the tapes.  (N.T. at 134-35, 155).  He also
testified that he would have made provisions for the defendant if
the defendant had requested the tapes.  Wyrma had access to all
tapes and transcripts, was in constant contact with the
defendant, and could have taken the materials to him herself.
Id.

Assuming that the defendant did ask for the tapes and was
denied access, and assuming that Tinari's conduct was deficient
in so doing, the defendant has failed to demonstrate that he
suffered prejudice.  Tinari had copies of the tapes and the
transcripts and, when the defendant's current counsel replaced
Tinari on appeal, current counsel presumably received these
items.  (N.T. at 146-47).  The defendant identifies no
inconsistencies between the tapes and the transcripts.  Absent
some evidence that the jury considered an inaccurate
transcription, the defendant cannot show a "reasonable
likelihood" that the outcome of the trial would have been
different.


ii.  Failure to Assert an Entrapment Defense

In Ground Five of the Motion, the defendant asserts that
"Mr. Tinari failed to discuss with me the abandonment of [an

16

116

entrapment] defense although I had repeatedly requested that he discuss all aspects of the case with me."  At the hearing on this Motion, Tinari testified that

> "[t]here was some discussion about the possibility that there was entrapment, that [it] could be a defense.  We discussed it.  I think I discussed it with Wyrma.  We explored it I think through the -- looking at the discovery.  And I also think I may have raised it during the course of the trial.  I'm not sure."

(N.T. at 138).

This case involved a conspiracy to distribute cocaine.  The government alleged that Patria Rodriguez ("Rodriguez") regularly travelled to Allentown, Pennsylvania from New York City to supply the defendant with cocaine.  Before the trial in this case, Rodriguez struck a plea bargain that included her promise to testify.  During a sidebar conference before opening arguments, Tinari sought to preclude the government, pursuant to Fed. R. Evid. 404(b), from referring to or eliciting certain uncharged instances of criminal transactions between Rodriguez and the defendant.  (N.T., 11/19/91, at 9-10).  Evidence of these acts, Tinari feared, would prejudice the defendant because of its tendency to show that the discrete drug offenses charged in the indictment were merely part of a continuous pattern of drug dealing.

The government argued that the testimony would be admissible if the defendant attempted an entrapment defense, reasoning that evidence of the uncharged acts would be relevant to whether the defendant was predisposed to commit the charged acts.  This court granted Tinari's motion and ordered the government not to refer

17

to or elicit testimony about prior transactions between Rodriguez and the defendant except to impeach the defendant if he took the stand. <u>Id.</u>

As this case reveals, the entrapment defense can be a risky strategy choice. "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." <u>Mathews v. United States</u>, 485 U.S. 58, 63 (1988). If Tinari would have attempted an entrapment defense, the defendant would have had to assert his lack of predisposition to commit the charged drug dealing. As a practical matter,

> "it is very unlikely that the defendant [would have been] able to prove entrapment without testifying and, in the course of testifying, without admitting that he did the acts charged. . . . When he takes the stand, the defendant forfeits his right to remain silent, subjects himself to all of the rigors of cross-examination, including impeachment, and exposes himself to prosecution for perjury."

<u>Id.</u> at 65 (quoting <u>United States v. Demma</u>, 523 F.2d 981, 985 (9th Cir. 1975) (en banc)). Moreover, by asserting the lack of predisposition, the defendant necessarily places this character trait in issue. Therefore, even if the defendant attempted an entrapment defense without taking the stand, the government would have been entitled to present extrinsic evidence of the uncharged prior continuous conduct, including Rodriguez' proffered testimony that she made numerous prior cocaine deliveries. <u>United States v. Barrett</u>, 766 F.2d 609, 619 (1st Cir.), <u>cert. denied</u>, 474 U.S. 923 (1985).

118

Tinari's decisions concerning the theory of defense were tactical decisions.  <u>United States v. Thomas</u>, 992 F.2d 201, 205 (8th Cir. 1993).  Although it is unclear from the record whether and when Tinari affirmatively rejected the entrapment defense option, assertion of the defense might have been a mistake in this case.  This court concludes that Tinari's failure to raise the entrapment defense did not fall below an objective standard of reasonableness, and therefore the defendant's claim fails the first prong of the <u>Strickland</u> test.

### iii.  Motion to Sever

In Ground Six of the Motion, the defendant argues that he was denied effective assistance of counsel when Tinari "failed to file a Motion for Severance or in the alternative ask for a severance when the trial court granted co-defendant[']s Motion to Admit Guilty Plea."  Co-defendant Javier Cruz ("Cruz") pleaded guilty to three counts of the indictment, including charges of distributing cocaine from the defendant's food market, but elected to go to trial on the conspiracy count.  Before the court could engage Cruz in a plea colloquy, Tinari, concerned that evidence of Cruz' guilty plea might "spill over" into the defendant's case, orally moved for a severance.  (N.T., 11/18/91 at 10).  Tinari implicitly raised the severance issue again when this court admitted evidence of Cruz' guilty plea, arguing that a cautionary instruction would not suffice to mitigate the prejudice to his client.  (N.T., 11/19/91, at 8).  Thus, while

19

the defendant may be technically correct in that Tinari did not
"file" a motion to sever, the record belies the defendant's claim
that Tinari was somehow ineffective in failing to raise the issue
to the court.[4]

Alternatively, the court finds that the defendant cannot
demonstrate prejudice.  This court took measures to minimize the
potential for prejudice to the defendant.  The court instructed
the jury to consider each defendant separately, (N.T., 11/22/91,
at 27), and cautioned that the guilty pleas of Rodriguez and Cruz
could not be used as evidence against the other defendants.  Id.
at 36.  United States v. Gaev, No. 93-1643, 1994 U.S. App. LEXIS
9188, at *17 (3d Cir. Apr. 29, 1994) (noting that a proper
limiting instruction can cure the possible prejudice to the
defendant from admission of co-conspirator's confession).  In
order to assist the jury in compartmentalizing its deliberations,
the court provided a separate verdict slip for the defendant.
(N.T., 11/22/91, at 38).

The verdict suggests that the jury heeded the court's
instruction and was successful in considering the culpability of
each defendant on an individual basis.  Although Cruz pleaded
guilty to the distribution charges, the jury acquitted him of
conspiracy.  Despite returning an acquittal for Cruz, the jury
found sufficient evidence that the defendant was guilty of the

---

4.  Although a co-defendant's plea agreement is not admissible to
establish defendant's guilt, evidence of the agreement is
admissible for other purposes.  See, e.g. United States v. Gaev,
No. 93-1643, 1994 U.S. App. LEXIS 9188, at *9 (3d Cir. Apr. 29,
1994) (considering co-conspirator plea agreements).

120

conspiracy.  The different verdicts suggest that no "spillover" occurred and that the defendant cannot demonstrate prejudice.

                    iv.  Failure to Request a Jury Instruction

In Ground Nine, the defendant argues that Tinari was ineffective in failing to request a specific jury instruction on witness credibility.  The specific instruction, "<u>Falsus in Uno, Falsus in Omnibus</u>," informs the jury that it may disbelieve a witness' testimony in its totality if it finds that the witness lied about any given point.  The defendant fails to identify any false or inconsistent testimony and, therefore, has failed to demonstrate that such an instruction would have had a reasonable probability of changing the outcome of this case.  Moreover, this court gave an extensive instruction on the contours of the credibility determinations that the jurors were to make.  (N.T., 11/22/91, at 32-35).  Barring any hint of actual prejudice to the defendant, the failure to request this instruction does not entitle the defendant to a new trial based on ineffective assistance of counsel.

    B.  <u>Privilege against Self-Incrimination</u>

In Ground Seven of his Motion, the defendant claims that his conviction was obtained "by a violation of the privilege against self-incrimination."  The defendant's basis for this ground is the government-elicited testimony of Detective James Stephens ("Stephens") concerning his custodial interrogation of co-

                                    21

defendant José Rivera ("José").   Stephens testified at trial that

he read José his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436

(1966), and that José waived his <u>Miranda</u> rights and gave a

statement:

> Q.  What did [José] say, could you tell the members of
> the jury, with respect to this investigation, this
> case?
>
> A.  Well, first I asked him his background information,
> his name, where he lived, that type of thing, to get
> that first.  From there, I asked, you know, what he was
> doing that day.  He said that he was asked by an
> individual to go pick up a guy at the Puerto Rican food
> market.
>
> Q.  Did he say for what purpose?
>
> A.  He said that he knew something big was going on
> that day, but he didn't know what it was, and that he
> had been given free cocaine by this same individual to
> help out before.
>                                 * * *
>
> Q.  Agent Stephens, did [José] say that he wanted to
> terminate questioning at that time?
>
> A.  As we talked about this, he became concerned about
> what he was telling us, and he asked if he could
> consult with an attorney.
>
> Q.  What did the -- tell the members of the jury what
> [José] said at that point.
>
> A.  We were basically talking about what was going on
> that day . . . and his part.  And he became concerned
> about -- again, and asked to consult with an attorney.

(N.T., 11/21/91, at 29-30).

Tinari immediately moved for a mistrial based upon Stephens'

statement that José invoked his Fifth Amendment rights.  José's

attorney, Mr. Wallace, joined that motion.  Tinari also objected

to the substance of Stephens' testimony about José's statement,

arguing that the statement was inadmissible under the Supreme

Court's decision in <u>Bruton v. United States</u>, 391 U.S. 123

(1968).[5]  At sidebar, the court offered the defendant a

cautionary instruction:

> THE COURT:  . . . if my instinct is right, José Rivera
> will -- may be gone.  If he's gone, I'll tell the jury,
> don't draw any inferences one way or the other from the
> fact that he's not here anymore, and don't consider
> what Officer Stephens said about what he said in this
> case.
>
> TINARI:  Excellent.  Then I -- then that will suffice
> for my purposes.
>
> THE COURT:  Now, if he's still here, . . . I'll say,
> don't consider anything he said as far as any other
> defendant in this case, number one.  And number two,
> don't consider the fact that he invoked his <u>Miranda</u>
> rights as any evidence of guilt against him.
>
> TINARI:  Thank you, Your Honor.

<u>Id.</u> at 64-65.  Following a brief recess, the court determined

that it would not grant the motion for mistrial and gave a

cautionary instruction to the jury in general terms that did not

highlight Stephens' testimony:

> THE COURT:  . . . .  Members of the jury, in regard to
> Detective Stephens' testimony, there was mention by him

---

5.  The defendant does not raise the <u>Bruton</u> issue in his motion.
In <u>Bruton</u>, the Court held that an accomplice's hearsay confession
incriminating the defendant is presumptively inadmissible if the
defendant has no opportunity to confront the accomplice at trial.
391 U.S. at 126.  The Court since has recognized an exception to
<u>Bruton</u>'s rule of inadmissibility in cases where the confession is
admissible under Fed. R. Evid. 801(d)(2)(E), which excludes from
the definition of hearsay any "statement by a coconspirator of a
party during the course of and in furtherance of the conspiracy."
Upon considering Tinari's <u>Bruton</u> objection, this court found that
José gave his statement after the conspiracy had ended and
therefore the statement fell outside the exception.  N.T.
(11/21/91) at 61.  Although José's statement was "<u>Bruton</u>-ized,"
in that the defendant was not identified in Stephens' version of
the statement, this court instructed the jury to disregard the
entire statement.  <u>Id.</u> at 69-70.

of someone that José Rivera, Jr. was talking to or
doing something with or something like that.  Disregard
that.  I don't think any names were mentioned.  But
disregard that, what was said by Detective Stephens at
the end of his testimony as far as what anyone else was
doing in the case, if it was this case, and draw no
inferences from that, that might apply to this case.

Id. at 69-70.

The defendant now argues that he was prejudiced by Stephens'

statement that José invoked his right to counsel.  Ordinarily,

the invocation of Miranda rights may not be called to the

attention of the jury.  Doyle v. Ohio, 426 U.S. 610 (1976).  José

Rivera waived his Miranda rights and made a short statement

before requesting an attorney.  Detective Stephens was entitled

to testify to the statements that José Rivera made after waiving

his Miranda rights, and it was permissible for Stephens to relate

the fact that the interrogation ended.  Rowan v. Owens, 752 F.2d

1186, 1190 (7th Cir. 1984), cert. denied, 476 U.S. 1140 (1986).

The protections of the Fifth Amendment guarantee against

self-incrimination, including the prophylactic measures mandated

by Miranda and its progeny, are personal to the person invoking

the rights.  Bellis v. United States, 417 U.S. 85, 89-90 (1974).

The Supreme Court, however, has not decided whether a defendant

can claim trial error from Doyle-type violations of a co-

defendant's or witness' rights.

In Nezowy v. United States, 723 F.2d 1120 (3d Cir. 1983),

cert. denied, 467 U.S. 1251 (1986), the prosecution impeached a

non-party defense witness by questioning her about invocation of

the Fifth Amendment privilege.  The Court of Appeals held that

24

134

"questioning of a witness by the Government as to whether [the witness] had previously claimed the constitutional right to refuse to testify at a grand jury proceeding will constitute trial error, subject only to a harmless error determination." Id. at 1124.  This holding encompasses cases in which the witness is also a co-defendant.  Id., n.6.  Moreover, the rationale of Nezowy suggests that its rule also applies to cases such as this, where a non-party witness testifies to a co-defendant's invocation of Miranda.  The Court held as it did

> [b]ecause of the ever present danger that a jury might misunderstand the context in which such fifth amendment questioning occurs, and because such inquiries, invariably challenged at trial and questioned on appeal no matter how well-intentioned, may infect an entire trial which is otherwise free from error, and because we too find it difficult to imagine any circumstance where such examination would be relevant and appropriate . . . .

Id.  In such cases, the unduly prejudicial inference of guilt imputed to the witness, and derivatively to the defendant, can infringe upon the defendant's right to a fair trial.

Nezowy suggests that, even if José Rivera was not a co-defendant in this case, Stephens' testimony regarding José's invocation of Miranda rights was inadmissible because the jury might tend to equate José's invocation of the Fifth Amendment as an implicit admission that he was guilty.  The Nezowy panel suggested as "instructive" a two-pronged harmless error test for determining whether to grant a new trial.  If (1) the witness' testimony was remote from the crime charged, and (2) there was no likelihood that the jury would have become confused and would

25

1?5

link the defendant to the assertion of the privilege, the error was harmless.  <u>Id.</u> at 1125 (citations omitted).

The testimony at issue here is connected to the crime charged.  José stated, according to Stephens, that he was supposed to pick "someone" up from the food market, that "something big" was going on, and that the "someone" had given him free cocaine.  The government's case involved transactions that were conducted or planned to be conducted at the defendant's food market.  Therefore, a jury might infer that the "someone" José referred to was the defendant.

In light of the record as a whole, however, the court concludes that the defendant is not entitled to a new trial.  In <u>United States v. Dunbar</u>, 767 F.2d 72 (3d Cir. 1985), the prosecutor elicited from an FBI agent testimony that after the defendant was given <u>Miranda</u> warnings, the defendant made a statement and then asked for an attorney.  <u>Id.</u> at 75.  The district court denied the defendant's motion for a mistrial and the Court of Appeals for the Third Circuit affirmed.  <u>Id.</u> at 76.  The panel concluded that "even if the remark by the agent rose to constitutional dimensions, the court's failure to declare a mistrial constituted harmless error beyond a reasonable doubt . . . ."  <u>Id.</u>  In finding the error harmless, the <u>Dunbar</u> panel relied heavily on the fact that the district court gave a thorough curative instruction and that, on the whole, the evidence against the defendant was "overwhelming."  <u>Id.</u>  The panel did not cite <u>Nezowy</u>.

126

This court is satisfied that its cautionary instruction, which Tinari requested and approved, was effective in curing whatever prejudice the defendant may have suffered from Stephens' statement that José invoked <u>Miranda</u> rights. <u>See United States v. Hill</u>, 976 F.2d 132, 144 (3d Cir. 1992) (presuming that juries will follow an instruction to disregard inadmissible evidence inadvertently presented to it). Indeed, despite the direct prejudice to José, the jury acquitted him on all counts. This fact underscores the jury's ability to obey the court's instructions and compartmentalize the evidence, and suggests that the defendant was not prejudiced derivatively. In addition, this court finds that the evidence against the defendant was overwhelming, and that Stephens' statement had a negligible effect on the verdict. The defendant cannot prevail on this basis.

### C. Government's Failure to Disclose Brady Material

In Ground Eight of the Motion, the defendant claims that the government failed to disclose evidence favorable to his defense. He argues that Manuel de la Cruz ("de la Cruz"), the government's informant, had made notes for himself and referred to them to refresh his recollection before his testimony at trial. He further asserts that Tinari failed to object to the testimony on this basis.

The government has a constitutional duty to reveal exculpatory evidence to criminal defendants upon request. <u>Brady</u>

27

137

v. Maryland, 373 U.S. 83, 87 (1963).  Upon cross-examination by
Tinari, de la Cruz revealed that he had taken notes for himself
"throughout the whole process of this case."  (N.T., 11/19/91, at
166).  These notes were de la Cruz's personal recollections and
not government evidence.  Tinari requested the notes, which the
government produced, and had the opportunity to review them and
re-cross on that basis.  Id. at 166-68.

    Although the defendant had copies of the notes, he fails
to identify anything exculpatory about them.  The court finds
that the defendant therefore has failed to demonstrate a Brady
violation.  His failure to identify the exculpatory nature of the
notes also prevents him from establishing the prejudice necessary
to prevail on his ineffective assistance of counsel claim.

## III.  CONCLUSION

    For the foregoing reasons, the court concludes that the
defendant has identified no defects that would require a new
trial.  Accordingly, the defendant's Motion is denied.

    An order follows.

                                BY THE COURT:


                                _____
                                Edward N. Cahn, Chief Judge

138

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : CRIMINAL ACTION
           : No. 91-00394
           :
   v.       :
           :
           : CIVIL ACTION
JAIME RIVERA      : No. 93-2411

O R D E R

CAHN, C.J.              MAY 19, 1994

   AND NOW, this 19th day of May, 1994, in consideration of the
defendant's Motion to Vacate, Set Aside, or Correct a Sentence,
and the response thereto, IT IS ORDERED that the Motion is hereby
DENIED.

            BY THE COURT:


            _____
            Edward N. Cahn, Chief Judge

109

# EXHIBIT - 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :          CRIMINAL ACTION
                                  :
              v.                  :
                                  :
JAIME RIVERA                      :          NO. 91-394-01

**ENTERED**
**FEB - 9 2000**
**CLERK OF COURT**

ORDER

AND NOW, this 8th day of February, 2000, upon
consideration of defendant's pro se motion for resentencing
(docket entry # 80), the Government's response thereto, and
defendant's reply brief, and the Court finding that:

(a) Following Rivera's conviction for conspiracy to
distribute cocaine, distribution of cocaine, possession of
cocaine with intent to distribute, and distribution of cocaine
within one thousand feet of a school, our former colleague, Judge
Edward N. Cahn, on June 1, 1992, sentenced him to 292 months in
custody;

(b) Rivera now argues that he is entitled to
resentencing under 18 U.S.C. § 3582(c)(2), which allows a
defendant "who has been sentenced to a term of imprisonment based
on a sentencing range that has subsequently been lowered by the
Sentencing Commission" to move for a reduction in sentence;

(c) His motion is based on Amendment 439, a 1992
amendment to U.S.S.G. § 1B1.3 that "clarifie[d] and more fully
illustrate[d] the operation of th[at] guideline," U.S.S.G. app.
C, Amendment 439, at 249 (1997 ed.);

(d) U.S.S.G. § 1B1.3 currently reads, in relevant part,
that a defendant's base offense level, "in the case of jointly
undertaken criminal activity," is determined on the basis of "all

7a
EX H.3

reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," U.S.S.G. § 1B1.3(a)(1)(B);

(e) Amendment 439 merely moved the "reasonably foreseeable" language from the guideline's application notes to the text of the guideline itself, see U.S.S.G. app. C, Amendment 439, at 249 (1997 ed.), and we therefore conclude that it is not a proper basis for a motion pursuant to 18 U.S.C. § 3582(c)(2), as it does not in fact lower a defendant's sentencing range; see, e.g., United States v. Cook, 1999 WL 1267362, at *3 (4th Cir. 1999) ("Amendment 439 did not introduce the concept of reasonable foreseeability to relevant conduct under § 1B1.3."); United States v. Mustakeem, 913 F. Supp. 410, 413 (W.D. Pa. 1995) ("A clarification to the sentencing guidelines . . . does not make a substantive change in the application of a guideline."); and

(f) Furthermore, because Amendment 439 is not included in U.S.S.G. § 1B1.10(c)'s list of amendments that qualify for retroactive application, it is not a proper basis for a motion for reduction, Application Note 1 to § 1B1.10 stating that "eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (c) that lowers the applicable guideline range"; see also, e.g., United States v. Cruz, 1997 WL 115835, at *3 (S.D.N.Y. Mar. 11, 1997) ("Because . . . Amendment 439 [is not] listed in . . . Section[] 1B1.10(c), [defendant] is not entitled to a reduction in sentence pursuant to Section 3582(c)(2)"); United States v. Kelly, 1993 WL

2

8a

86447, at *2 (E.D. Pa. Mar. 23, 1993) ("Amendment 439 . . . is
not among those amendments which qualify for retroactive
application according to section 1B1.10");[1]

It is hereby ORDERED that:

1.  Defendant's motion for resentencing is DENIED; and

2.  Defendant's motions "to modify/reply" (docket entry
# 84), "for leave to supplement" (docket entry # 85) and "for a
status report" (docket entry # 87) are DENIED AS MOOT.

BY THE COURT:

Stewart Dalzell, J.

---

[1] Some courts have concluded that, because 439 is a
"clarifying" amendment, it can be applied retroactively.  See,
e.g., Mustakeem, 913 F. Supp. at 413 ("When an amendment . . .
serves merely to clarify the meaning of an existing guideline, .
. . such amendments . . . may receive retroactive effect,
irrespective of whether [it is] listed in section 1B1.10"
(internal quotation omitted)).  Generally, however, courts giving
retroactive effect to "clarifying" amendments have done so only
on direct appeal.  See, e.g., United States v. Drath, 89 F.3d
216, 217 (5th Cir. 1996); United States v. Felix, 87 F.3d 1057,
1060 (9th Cir. 1996); United States v. Capers, 61 F.3d 1100, 1109
(4th Cir. 1995); United States v. Cabellero, 936 F.2d 1292, 1299
n.8 (D.C. Cir. 1991); United States v. Perdomo, 927 F.2d 111,
116-17 (2d Cir. 1991).  Because this is a collateral attack on
his sentence, Rivera is not entitled to reduction based on
Amendment 439.

9a

# EXHIBIT - 4

NO. 00-1220

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,

Appellee

v.

JAIME RIVERA,

Appellant

ON APPEAL FROM AN ORDER DENYING RESENTENCING
ENTERED ON FEBRUARY 9, 2000
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
AT CRIMINAL NO. 81-394

BRIEF OF APPELLEE
UNITED STATES OF AMERICA
AND SUPPLEMENTAL APPENDIX

MICHAEL R. STILES
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

TIMOTHY R. RICE
Assistant United States Attorney

Suite 1250
615 Chestnut Street
Philadelphia, Pennsylvania  19106
(215) 861-8448

Exh. 4

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . .  1

STATEMENT OF RELATED APPEALS . . . . . . . . . . . . . .  1

COUNTER-STATEMENT OF ISSUES PRESENTED
    FOR REVIEW AND STANDARDS OF REVIEW . . . . . . . . .  2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . .  3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . .  4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .  6

      THE DISTRICT COURT PROPERLY DENIED RIVERA'S
      MOTION PURSUANT TO 18 U.S.C. § 3582(c)(2)
      WHEN RIVERA'S SENTENCE WAS NOT BASED ON
      ACCOMPLICE LIABILITY AND WHEN THE SENTENCING
      COMMISSION HAS EXCLUDED FROM RETROACTIVE
      APPLICATION THE SENTENCING GUIDELINE
      AMENDMENT RELIED UPON BY RIVERA . . . . . . . .  6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 10

a proper basis" for relief under § 3582(c)(2) because it does not lower Rivera's sentencing range (Supp. App. 8).

Finally, § 3582(c)(2) allows a court to reduce a term of imprisonment based on a sentencing range subsequently lowered by the Sentencing Commission only to the extent allowed by applicable policy statements of the Commission. In § 1B1.10, the Commission expressly identified which amendments could be applied to reduce a previously imposed term of imprisonment. Amendment 439 is not listed in § 1B1.10(c), and therefore even assuming arguendo it would benefit Rivera, it cannot provide a basis to reduce Rivera's sentence. <u>United States v. Drath</u>, 89 F.3d 216, 218 (5th Cir. 1996); <u>see United States v. Ebbole</u>, 8 F.3d 530, 539 (7th Cir. 1993) (§ 1B1.10 limits Sentencing Guideline amendments that can be applied retroactively).[4]

---

[4]    Rivera also alleges for the first time on appeal that the district court erred by not submitting for jury consideration the drug quantities for each count of conviction.  <u>See Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). Rivera can raise this issue only in a § 2255 petition.  Rivera would require permission from this Court to file a successive petition raising the <u>Apprendi</u> issue, a motion which would present the unresolved question whether <u>Apprendi</u> applies retroactively to cases on collateral review. <u>See e.g.</u>, <u>Talbot v. State of Indiana</u>, 226 F.3d 866, 869 (7th Cir. 2000); <u>Sustache-Rivera v. United States</u>, 221 F.3d 8, 15 (1st Cir. 2000); <u>see generally</u> <u>Teague v. Lane</u>, 489 U.S. 288 (1989).

# EXHIBIT - 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

UNITED STATES OF AMERICA
ex rel JAIME RIVERA
REGISTER NO. 44529-066
    PETITIONER

VS.

WARDEN, FCI ELKTON,
    RESPONDENT

**4:99 CV 1539**

C.A._____
28 U.S.C. §§ 2241

**JUDGE POLSTER**

**MAG. JUDGE VECCHIARELLI**

FILED
99 JUN 28 PH 2: 45

## PETITION FOR WRIT OF HABEAS CORPUS
## BY PERSON IN FEDERAL CUSTODY

1. PLACE OF DETENTION: FCI Elkton, Elkton, OH 44415.

2. NAME AND LOCATION OF COURT WHICH IMPOSED SENTENCE.

    United States District Court, Eastern District of Pennsylvania.

3. THE INDICTMENT NUMBER OR NUMBERS UPON WHICH AND THE OFFENSE OR OFFENSES FOR WHICH SENTENCE WAS IMPOSED:

    91-00394-001

4. THE DATE UPON WHICH SENTENCE WAS IMPOSED AND THE TERMS OF THE SENTENCE.

    June 12, 1992, 292 Months Imprisonment, ten years supervised release and a $100,000.00 fine.

5. A FINDING OF GUILT WAS MADE FOLLOWING A PLEA OF NOT GUILTY.

6. IF YOU WERE FOUND GUILTY AFTER A PLEA OF NOT GUILTY, CHECK WHETHER THAT FINDING WAS MADE BY A JURY/A JUDGE WITHOUT A JURY. Finding made by a jury.

7. DID YOU APPEAL FROM THE JUDGMENT OF CONVICTION OR THE IMPOSITION OF SENTENCE? Yes.

Exh- 5

2

8. IF YOU ANSWERED "YES" TO (7), LIST

(a) THE NAME OF EACH COURT TO WHICH YOU APPEALED: United States Court of Appeals for the Third Circuit.

(b) THE RESULT IN EACH COURT TO WHICH YOU APPEALED: Dismissed by agreement of parties pursuant to Fed. R. App. P 42(b).

(c) THE DATE OF EACH RESULT: September 18, 1992

(d) IF KNOWN, CITATIONS OF ANY WRITTEN OPINION OR ORDER ENTERED PURSUANT TO SUCH RESULTS: N/A.

9.  STATE CONCISELY ALL THE GROUNDS ON WHICH YOU BASE EACH ALLEGATION THAT YOU ARE BEING HELD UNLAWFULLY:

A.  Violation of Sixth Amendment right to effective assistance of counsel for failure to properly advise Petitioner of the ramifications of waiving his right to direct appeal.

B.  Petitioner was denied adequate remedy through his §2255 Motion because the court failed to address the sentencing issues in making its determination.

10.  STATE CONCISELY AND IN THE SAME ORDER THE FACTS WHICH SUPPORT EACH OF THE GROUNDS SET OUT IN (9):

See attached Memorandum of Law in support of Petition for Writ of Habeas Corpus, a copy of which is attached hereto and incorporated by reference herewith.

11.  HAVE YOU PREVIOUSLY FILED PETITIONS FOR HABEAS CORPUS, MOTIONS UNDER SECTION 2255 OF TITLE 28, UNITED STATES CODE, OR ANY OTHER APPLICATION, PETITIONS OR MOTIONS WITH RESPECT TO THIS CONVICTION?  Yes.

12.  IF YOU ANSWERED "YES" TO (11), LIST WITH RESPECT TO EACH PETITION, MOTION OR APPLICATION.

(a) THE SPECIFIC NATURE THEREOF:

1.  Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255.

2.  Appeal from denial of Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255.

3.  Motion to Grant Relief from Judgment pursuant to Fed. R. Civ. P. 60(b).

4. Petitioner's Motion to Vacate Order entered January 14, 1997.

(b) THE NAME AND LOCATION OF THE COURT IN WHICH EACH WAS FILED.

1. United States District Court, Eastern District of Pennsylvania.

2. United States Court of Appeals for the Third Circuit.

3. United States District Court, Eastern District of Pennsylvania.

4. United States Court of Appeals for the Third Circuit.

(c) THE DISPOSITION THEREOF:

1. Denied after evidentiary hearing on some issues.

2. Judgment Affirmed.

3. Referred to Third Circuit District Court

4. Denied.

(d) THE DATE OF EACH DISPOSITION

1. May 20, 1994.

2. February 15, 1995.

3. January 14, 1997.

4. Unknown.

(e) IF KNOWN, CITATIONS OF ANY WRITTEN OPINIONS OR ORDERS ENTERED PURSUANT TO EACH SUCH DISPOSITION.  N/A.

13.  IF YOU DID NOT FILE A MOTION UNDER SECTION 2255 OF TITLE 28, UNITED STATES CODE, [OR IF YOU FILED SUCH A MOTION AND IT WAS DENIED] STATE WHY YOUR REMEDY BY WAY OF SUCH MOTION IS INADEQUATE OR INEFFECTIVE TO TEST THE LEGALITY OF YOUR DETENTION.

4

Petitioner was denied a full hearing on the issues raised in his 2255 Habeas Corpus Petition. The Third Circuit affirmed the District Court's judgment of May 20, 1994.

As demonstrated in the attached memorandum of law, the remedy by 2255 motion proved inadequate and ineffective to test the legality of Petitioner's detention and he may therefore, apply for relief under 28 U.S.C. § 2241. **IN RE HANSERD,** 123 F3D 922, 929 (6TH CIR. 1997).

14. HAS ANY GROUND SET FORTH IN (9) BEEN PREVIOUSLY PRESENTED TO THIS OR ANY OTHER FEDERAL COURT BY WAY OF PETITION FOR HABEAS CORPUS MOTION UNDER SECTION 2255 OF TITLE 28, UNITED STATES CODE, OR ANY OTHER PETITION, MOTION OR APPLICATION? Yes.

15. IF YOU ANSWERED "YES" TO (14), IDENTIFY WHICH GROUNDS HAVE BEEN PREVIOUSLY PRESENTED.

The claims ineffective assistance of counsel as set forth in the attached memorandum of law were presented in the 2255 Motion to Vacate, Set Aside, or Correct Sentence, and in the Appeal submitted to the United States Court of Appeals for the Third Circuit.

16. WERE YOU REPRESENTED BY AN ATTORNEY AT ANY TIME DURING THE COURSE OF

(a) YOUR ARRAIGNMENT AND PLEA? Yes.

(b) YOUR TRIAL, IF ANY? N/A

(c) YOUR SENTENCING? Yes.

(d) YOUR APPEAL? N/A

(e) PREPARATION, PRESENTATION, OR CONSIDERATION OF ANY PETITION, MOTIONS OR APPLICATIONS WITH RESPECT TO THIS CONVICTION WHICH YOU FILED? Yes.

17. IF YOU ANSWERED "YES" TO ONE OR MORE PARTS OF (16), LIST

(a) THE NAME AND ADDRESS OF EACH ATTORNEY WHO REPRESENTED YOU:

PLEA – Robert J. Fickman, 1301 McKinney, Suite 3100, Houston, Texas 77010.

SENTENCING- Same.

PETITION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255- N/A.

APPEAL FROM DENIAL OF PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PERSUANT TO U.S.C. § 2255 - Cheryl J. Sturm, Esquire, P.O. Box 210, Westtown, PA 19395.

18. IF YOU ARE SEEKING LEAVE TO PROCEED IN FORMA PAUPERIS, HAVE YOU COMPLETED THE SWORN AFFIDAVIT SETTING FORTH THE REQUIRED INFORMATION IN INSTRUCTIONS, PAGE 1 OF THIS FORM? N/A.

I, Jamie Rivera, state under penalty of perjury that the foregoing is true and correct.

EXECUTED ON  June 16, 1989

Jamie Rivera

Dated: June 23, 1999

Cheryl J. Sturm
Attorney-at-Law
P.O. Box 210
Westtown, Pa. 19395
610-399-8467

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

UNITED STATES OF AMERICA      :   CIVIL ACTION NO.
ex rel JAIME RIVERA
Registration No. 44529-066      :

      Petitioner              :

                             :

          v.                   :

WARDEN, FCI ELKTON,           :

      Respondent            :

**MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT
TO 28 U.S.C. §2241 AND §2243**

**JAMIE RIVERA** ["Petitioner"], submits the following in support of his Petition

for Habeas Corpus pursuant to 28 U.S.C. §2241 and §2243 et. seq..

## I. STATEMENT OF THE CASE

On August 1, 1991, a Federal Grand Jury returned Indictment #91-394 charging

Jamie Rivera with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 [Count

I], distributing cocaine in violation of 21 U.S.C. § 841 (a)(1) [Count IV], distribution of

cocaine within one thousand (1,000) feet of a protected location in violation of 21 U.S.C.

§ 860 [Counts V & VIII], and possession with intent to distribute cocaine [Count VII].

On August 14, 1991, Eugene Tinari, Esquire, entered his appearance on behalf of

Jaime Rivera, after which Rivera entered a plea of not guilty.

On September 20, 1991, Eugene Tinari again filed an entry of appearance, and Mr. Rivera filed a Motion contesting the Magistrate's Pretrial Detention Order. This Motion was denied November 28, 1991.

On November 18, 1991, on the eve of trial, Eugene Tinari filed a withdrawal of appearance and Nino Tinari, Esquire, filed an entry of appearance.

On November 22, 1991, following a jury trial, Petitioner was found guilty on Counts One, Four, Five, Seven and Eight.

After the verdict, Jamie Rivera retained Louis T. Savino, Esquire, to handle the sentencing and the direct appeal.

On June 1, 1992, Petitioner was sentenced to 292 months' imprisonment, ten years' supervised release, and fined $100,000.00. An Order of Forfeiture was entered in the sum of $78,600.00. The Judgment and Commitment Order was entered on June 10, 1992.

On June 10, 1992, the Notice of Appeal was filed. Subsequently, Louis Savino, Esquire, Mr. Rivera's lawyer, persuaded Mr. Rivera to execute a document consenting to a voluntary dismissal of the appeal. On September 18, 1992, the appeal was dismissed pursuant to Fed. R. App. P. 42(b).

On May 6, 1993, Mr. Rivera filed a pro-se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. The Motion alleged conflict of interest, trial errors, and sentencing errors. The district court judge scheduled an evidentiary hearing. Petitioner hired Mr. Savino to represent him at the evidentiary hearing.

On November 22, 1993, an evidentiary hearing was held on some of the issues[1]. On May 20, 1994, the district court judge filed a Memorandum and Order denying the § 2255 Motion. The Memorandum and Order overlooked the sentencing issues raised in the § 2255 Motion.

On May 31, 1994 a Notice of Appeal was filed. On September 26, 1994 Petitioner filed a motion to stay the appeal and remand for consideration of the sentencing issues. On November 7, 1994 the Third Circuit denied the Motion to stay the appeal and on February 15, 1995 affirmed the district court's decision.

On January 23, 1997, a Motion to Grant Relief from Judgment was filed pursuant to Fed. R. Civ. P. 60(b) in the United States District Court for the Eastern District of Pennsylvania. This "second or successive" 2255 Motion was removed to the Third Circuit Court of Appeals and denied on January 14, 1997.

On July 7, 1998, a pro-se Motion for Resentencing under 18 U.S.C. 3582(c)(2) was filed in the United States District Court for the Eastern District of Pennsylvania.

## II. STATEMENT OF THE FACTS

At trial, Manuel De La Cruz testified on direct examination that he saw Mr. Rivera in possession of 500 grams of cocaine, that Mr. Rivera offered to sell him a kilo of cocaine for $21,500/kilogram, and three or more kilos for $21,000.00 [Tr. 11/19/91, pp. 81-85]. On June 26, 1991, Mr. De La Cruz purchased from Jamie Rivera 125 grams of cocaine [Tr., pp. 88, 110]. The Government played a video of the transaction [Tr., p. 115]. Subsequently, Mr. De La Cruz asked Mr. Rivera to supply 6 kilograms of cocaine, and Mr. Rivera agreed. On July 31, 1991, Mr. Rivera produced three (3) kilograms for

---

[1] The District Court did not address the sentencing issues raised in Mr. Rivera's 2255

## A. LEGAL PRINCIPLES

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right...to have the assistance of counsel for his defense." The right to the assistance of counsel means the right to effective assistance of counsel. **Cuyler v. Sullivan**, 446 U.S. 335, 343, 100 S.Ct. 1708, 1715, 80 L.Ed.2d 657 (1980),

A criminal defendant has the right to the assistance of counsel at all critical stages of the proceedings against him, or whenever his substantial rights may be affected. **Estelle v. Smith**, 451 U.S. 454, 469-71, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), **Kirby v. Illinois**, 406 U.S. 682, 688-89, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), **Mempa v. Rhay**, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967).

A stage is critical where the defendant is "confronted by the legal system in that he has law related choices before him...and could profit from the expert advice of counsel." (quoting **Estelle v. Smith**, 451 U.S. at 471, 101 S.Ct. 1866). Critical stages include pretrial investigation, plea bargaining, trial, sentencing, and direct appeal. **United States v. Gray**, 878 F.2d 702 (3rd Cir. 1989)[pretrial investigation], **Boria v. Keane**, 99 F.3d 492 (2nd Cir. 1996), **United States v. Day**, 969 F.2d 39 (3rd Cir. 1992), **United States v. Gordon**, 156 F.3d 306 (2nd Cir. 1998), **Paters v. United States**, 159 F.3d 1043 (7th Cir. 1998), **Esslinger v. Davis**, 44 F.3d 1515 (11th Cir. 1995), **Carmichael v. United States**, 1998 WL 894592 (DCT 12/16/98, Burns, S.J.). [plea bargaining], **Berryman v. Morton**, 100 F.3d 1089 (3rd Cir. 1996), **Groseclose v. Bell**, 130 F.3d 1161 (6th Cir. 1997), **United States v. Kelly**, 62 F.3d 1215 (9th Cir. 1995), **Code v. Montgomery**, 799 F.2d 1481, 1483 (11th Cir. 1986), **Nealy v. Cabana**, 764 F.2d 1173, 1177 (5th Cir. 1985) [trial], **United States v. Breckenridge**, 93 F.3d 132 (4th Cir.

4

Mr. De La Cruz and was immediately arrested [Tr., p. 161]. According to Mr. De La

Cruz, Mr. Rivera said, "well, I can only do three now because the people that brought this

couldn't bring the whole six down. Let's just do this three and we'll do the three later"

[Tr., p. 161].

D.E.A. Special Agent Frank Marrero testified that he negotiated with Jamie

Rivera to purchase 6 kilograms of cocaine [Tr. 11/20/91, pp. 111-113].

Patria Rodriguez testified that she transported cocaine from New York to Jaime

Rivera in Allentown, Pennsylvania. She testified that she worked for "Cello" a New York

Cocaine supplier. [Tr. 209-215]. She went on to testify that she delivered quantities of

cocaine from New York to Allentown three times a month, or less, from April or May of

1990 until her arrest on July 31, 1991. [Tr. 209]. She received payments ranging from

between $200.00 to $500.00 for performing these services. [Tr. 216]. The Government

introduced the following exhibits:

Exhibit 1: 54 grams of cocaine
Exhibit 10: 121 grams of cocaine
Exhibit 18: 27.7 grams of cocaine
Exhibit 22: 3,022 grams of cocaine [Tr. 11/21/91, p. 71].

Louis Savino, Esquire, who represented Mr. Rivera at sentencing and on direct

appeal, persuaded Mr. Rivera to sign a document relinquishing his right to direct appeal.

Mr. Savino did not inform Mr. Rivera that, by not pursuing the appeal, Mr. Rivera would

be waiving deficiencies in the application of the sentencing guidelines.

## III. GROUND ONE: THE CONVICTION WAS OBTAINED AND/OR SENTENCE IMPOSED IN VIOLATION OF THE SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

---

motion.

1996)[sentencing], and **United States v. Bonneau**, 961 F.2d 17, 19 (1st Cir. 1991) [direct appeal].

As a general rule, successful claims of ineffective assistance of counsel have two components: deficient performance, and prejudice. Performance is measured against an objective standard of reasonableness, eliminating strategic decisions, which are within the province of defense counsel. **Government of Virgin Islands v. Weatherwax**, 77 F.3d 1425 (3rd Cir. 1996), **Sexton v. French**, 163 F.3d 874, 882 (4th Cir. 1998). Prejudice is a reasonable showing sufficient to undermine confidence in the fairness of proceedings. **Nix vs. Whiteside**, 475 U.S. 157, 175, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). Decisions are not strategic unless they are supported by trial strategy from which the defendant could realize some advantage or benefit. **Berryman v. Morton**, 100 F.3d 1089 (3rd Cir. 1996), **United States vs. Hansel**, 70 F3d 6 (2d Cir. 1995), **Mason vs. Scully**, 16 F3d 38 (2d Cir. 1994).

Defense counsel has a duty investigate the facts, learn the law, and evaluate the application to the facts of the case. **Correale v. United States**, 479 F.2d 944 (1st Cir. 1973), **Hill v. Lockhart**, 894 F.2d 1009 (8th Cir. 1990), **Cooks v. United States**, 461 F.2d 530 (5th Cir. 1972). Constitutionally ineffective assistance of counsel can consist of a single error on the part of defense counsel if it is sufficiently egregious. **Murray v. Carrier**, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)(dictum).

The Supreme Court has stated:

> That a person who happens to be a lawyer is present at trial alongside the accused...is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the

assistance of counsel because it envisions counsel's playing a

role that is critical to the ability of the adversarial system to

produce just results. **Strickland v. Washington**, 466 U.S. 668, 685, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Ineffective assistance of counsel takes place, "When counsel has unwittingly

relieved the government of its burden of proof, particularly where the evidence of record

does not satisfy that burden, it is fair to say counsel has so undermined the proper

functioning of the adversarial process that it cannot be relied on as having produced a just

result...This is, of course, the benchmark for judging any claim of ineffectiveness."

**United States v. Glover**, 97 F.3d 1345, 1349 (10th Cir.1996)[sentencing].

## B. THE FACTS UNDERLYING THE CLAIM OF INEFFECTIVE ASSITANCE OF COUNSEL ARE BASED ON COUNSEL'S ADVICE TO DISMISS AND WAIVE RIGHT TO DIRECT APPEAL

When a federal petitioner voluntarily waives or dismisses his right to appeal, he is

deemed to have had a full and fair opportunity to present his federal claims in the federal

forum.  The waiver of the direct appeal acts as a bar to raising the issues that would have

been raised on direct appeal in a § 2255 habeas corpus motion.  Therefore, a § 2255

motion may not be filed in lieu of an appeal.  **United States of America v. Khiralla**, 755

F.2d 933 (6th Cir.1985), <u>citing</u> **United States v. Frady**, 456 U.S. 152, 102 S.Ct. 1584, 71

L.Ed.2d 816 (1982), **Unger v. United States of America**, No. 97-C-233, 91-Cr-97, 1998

W.L. 337476 (E.D. Wis. June 22, 1998).

Mr. Savino, who represented Mr. Rivera at sentencing, advised Mr. Rivera to give

up his right to direct appeal, and file a § 2255 Motion instead.  He did not inform Mr.

8

Rivera that, by adopting this course, Mr. Rivera would run the substantial risk of waiving

the right to contest possible misapplication of the sentencing guidelines. **Montemoino v.**

**United States**, 68 F.3d 416, 417 (11th Cir. 1995) [because a defendant has the

opportunity to raise sentencing issues on direct appeal, they can not be raised in a § 2255

proceeding], **United States v. Allen**, 16 F.3d 377, 378 (10th Cir. 1994) [Defendant who

fails to raise issues on direct appeal is procedurally barred from raising them in a § 2255

proceeding absent a showing of actual prejudice], **United States v. Schlesinger**, 49 F.3d

483, 485 (9th Cir. 1994) [Nonconstitutional sentencing errors not raised on direct appeal

are deemed waived and may not be reviewed by way of § 2255 motion].

As a result of counsel's erroneous advice, Mr. Rivera consented to the voluntary

dismissal of his appeal. Mr. Rivera was not aware of the ramifications of dismissing his

appeal, as counsel incorrectly advised him that he could file a § 2255 Motion in lieu of a

direct appeal. As a result, Mr. Rivera lost the opportunity to raise the following

sentencing misapplications on direct appeal.

1. The two level enhancement for selling drugs within 1000 feet of a school zone.

U.S.S.G. § 2D1.2(a)(1) allows for an additional 2 points for a drug offense

directly involving a protected location or an underage individual.

Viewed in light most favorable to the Government, the evidence established Mr.

Rivera distributed 125 grams within 1000 feet of a school, and possessed with intent to

distribute 3,033 grams within 1000 feet of a school. There was no evidence establishing

Mr. Rivera distributed or possessed with intent to distribute 15-50 kilograms of cocaine

within 1000 feet of a school. Based on the evidence, the district court could have

sentenced Mr. Rivera based on 3,147 grams of cocaine [Level 28], the added two points

9

for the school zone, or it could have sentenced Mr. Rivera based on the actual quantity

plus all relevant conduct. What it could not do was speculate that all the relevant conduct

occurred within 1000 feet of a school zone. According to the commentary to § 2D1.2 in

Application Note 1, when only part of the relevant offense occurred in a protected area,

there may be different offense levels pursuant to § 2D1.2(a)(1) and § 2D1.2(a)(2).

2. Organizer, Leader, Supervisor Enhancement

 Viewed in light most favorable to the Government, there was no rational basis for

the four level enhancement for role in the offense. At trial the evidence showed a series

of drug sales between sellers in New York to Mr. Rivera in Reading, PA, but did not

show an organization or scheme that Mr. Rivera could be said to have led or organized.

In addition, there was no evidence that Mr. Rivera exercised control over anybody else.

According to the evidence, Javier Cruz has several suppliers. Mr. Rivera was but one of

them. Jose Rivera was found not guilty by a jury, and therefore, was a non-participant.

Patricia Rodriguez was under control of suppliers in New York[2]. **United States vs.

Alred**, 144 F3d 1405 (11th Cir. 1998)[multiple buyers not enough to trigger

enhancement][fronting drugs does not trigger enhancement][negotiating deal does not

trigger enhancement]

 To aggravate the situation, the district court did not identify the Participants over

whom Mr. Rivera allegedly exercised control.

3. Quantity of Drugs

---

[2] The district court implies that Patria Rodriguez was under the direction of Mr. Rivera, but her trial testimony evidences that she worked for "Cello", a New York cocaine supplier. [Tr. 209-212].

With respect to the quantity of drugs, the district court found that six kilograms of cocaine was the weight under negotiation by taking the word "negotiation" beyond its outer limits.

In **United States vs. Hendrickson**, 26 F.3d 321, 334 (2nd Cir. 1994), the Court held that negotiations alone do not suffice to prove relevant quantity, and that the government must show at sentencing "dealings closer to the agreement end of the spectrum." In this case, Mr. Rivera wanted to buy six kilograms, but the sellers would not sell him six kilograms thus negating any agreement for six kilograms. [Tr. 227]. See also **United States vs. Crespo**, 982 F.2d 483 (11th Cir. 1993).

If (1), (2) and (3) had been raised on direct appeal, there is a reasonable likelihood that Mr. Rivera's Total Offense Level would have been 34, and the sentence would have been somewhere in the 151-188 month range. Therefore, Savino's persuading Mr. Rivera to dismiss his appeal based on the ground that there were no appealable issues constitutes prejudice. Clearly, there were appealable issues regarding sentencing that should have been raised on direct appeal, but were lost as a result of having not been raised.

These sentencing issues were presented in Mr. Rivera's initial pro-se § 2255 Motion. However, they were either overlooked (or deemed abandoned) when the district court wrote the Memorandum and Order denying the pro-se § 2255 Motion.

In the case at hand, defense counsel was constitutionally ineffective for erroneously advising Mr. Rivera to waive his right to appeal and file a §2255 motion instead. Had the foregoing issues had been raised on direct appeal there is a reasonable

likelihood that they would have been heard and Mr. Rivera would have received a lower sentence.

Waiver of right to appeal may be excused in the interest of justice. **Thomas v. Arn**, 106 S. Ct. 466, 476, 474 U.S. 140, 155, 88 L.Ed.2d 435 (1985). Moreover, misapplication of the guidelines is a fundamental defect resulting in a complete miscarriage of justice that cannot be waived. **United States v. Maybeck**, 23 F.3d 888 (4th Cir. 1994).

In **United States vs. Ford**, 88 F3d 1350 (4th Cir. 1996), the Court said, "Furthermore, sentencing a defendant at the wrong guideline range seriously affects the fairness, integrity, and public reputation of the judicial proceedings. If we do not correct this error, Reid will serve a term of imprisonment of three years longer than required by the sentencing guidelines. We cannot casually ignore this fact because of an overly-strict adherence to technical requirements. Three years of a man's life is not a trifling thing. No court of justice would require a man to serve three undeserved years in prison when it knows that the sentence is improper. The fairness, integrity, and public reputation of our judicial system demand that we correct Reid's sentence." Id. at page 1356

Even if such a manifest miscarriage of justice were waivable, the sentencing issues could still be considered under the rubric of ineffective assistance of counsel on direct appeal which is a non-waivable defect in the proceedings. **United States vs. DeRewal**, 10 F.3d 100 (3rd Cir. 1993), or considered as novel issues because of the clarifying amendments to the guidelines that have been enacted since Rivera's sentencing. **Jones vs. United States**, 161 F3d 397 (6th Cir. 1998),

**Marmolejos vs. United States**, 140 F3d 488 (3d Cir. 1998)[clarifying amendments retroactive].

## IV. GROUND TWO: EXECUTION OF THE SENTENCE IS AN UNCONSTITUTIONAL DENIAL OF DUE PROCESS OF LAW AND EQUAL PROTECTION OF THE LAWS

### A. LEGAL PRINCIPLES

Since the date of Mr. Rivera's sentencing, the United States Sentencing Commission ["Commission"] promulgated several amendments clarifying ambiguous guidelines relating to the interpretation for guidelines in connection with relevant conduct and role in the offense.

For instance, in **United States vs. Marmolejos**, 140 F3d 488 (3d Cir. 1998), the Third Circuit identified Amendment 518 as a clarifying amendment, and declared it to be retroactive. In **United States vs. DiMaio**, 1994 WL 253756 (EDPA, Bechtle, C.J.), affirmed, 37 F3d 1489 (3d Cir. 1994), the Court stated that sentencing guidelines clarifying relevant conduct were retroactive. In **Jones vs. United States**, 161 F3d 397 (6th Cir. 1998), the Sixth Circuit took the same approach to clarifying amendments, holding that a criminal defendant should not be subjected to additional punishment because the United States Sentencing Commission wrote an ambiguous guideline.

At the time of Petitioner's sentencing, the guidelines controlling his sentencing were unclear, which is why they required clarification. At the time of sentencing, the Commission did not state with clarity that a person could not be held responsible for drugs distributed before that person joined the conspiracy. It was not clear that the district court was required to conduct a searching inquiry into the scope of the criminal agreement before making an assessment of relevant conduct. It was not clear that a

1ɔ

person was not an organizer, supervisor or leader unless he exercised some degree of

"control" over that activities of some other person.

28 U.S.C. 994 authorizes the United States Sentencing Commission to promulgate

sentencing guidelines based on the following factors:

(1) the grade of the offense;

(2) the circumstances under which the offense was committed which mitigate or

aggravate the seriousness of the offense;

(3) the nature and degree of harm caused by the offense, including whether it involved

property, a person, a number of persons, a breach of public trust;

(4) the community view of the gravity of the offense;

(5) the public concern generated by the offense;

(6) the deterrent effect a particular sentence may have on the commission of the offense

by others; and

(7) the current incidence of the offense in the community and in the Nation as a whole.

28 U.S.C. 994(f) states that the Commission, in promulgating guidelines, shall

adhere to the requirements of 28 U.S.C. 991(b)(1)(B) for "providing certainty and

fairness in sentencing and reducing unwarranted sentence disparities."

28 U.S.C. 991(b)(1)(B) describes the purposes and objectives of the Commission.

According to that subsection, the Commission is supposed to promulgate guidelines to

ensure fairness in sentencing, avoiding unwarranted sentencing disparities among

defendants with similar records who have been found guilty of similar criminal conduct.

Presently, the execution of sentence is unconstitutional because there is no

Sentencing Commission, and thus there is no mechanism to eliminate the unwarranted

disparities caused by the Commission's failure to make the clarifying amendments retroactive.

Presently, the execution of sentence is unconstitutional because there are no Commissioners to apply the provisions of 28 U.S.C. 994(s), which provide:

> (s) The Commission shall give due consideration to any petition filed by a defendant requesting modification of the guidelines utilized in the sentencing of such defendant, on the basis of changed circumstances unrelated to the defendant, including changes in---
>
> (1) the community view of the gravity of the offense;
>
> (2) the public concern generated by the offense; and
>
> (3) the deterrent effect particular sentences may have on
>
> the commission of the offense by others.

Presently, the Sentencing Commission is an empty suit. It has no Commissioners. Therefore, there is no Commission capable of acting on his petition as envisioned by the Sentencing Reform Act, and there is no Commission capable of correcting the huge disparity in sentences caused by the failure to make clarifying amendments retroactive. The sentencing guidelines, as applied generally, and as applied to Rivera specifically, violate the enabling statute, and are unconstitutional. Consequently, Rivera's sentence, which is based on the guidelines, is unconstitutional.

## V. THE § 2255 MOTION WAS INADEQUATE OR INEFFECTIVE TO TEST THE LEGALITY OF PETITIONER'S DETENTION.

The Judiciary Act of 1789, ch 20, § 14, 1 Stat. 81-82, empowered federal courts in the district in which a prisoner was confined to issue a writ of habeas corpus if the

15

prisoner was "in custody, under or by colour of the authority of the United States." See **McCleskey v. Zant**, 499 U.S. 467, 477-78, 111 S.Ct. 1454, 1461, 113 L.Ed.2d 517 (1991). In 1867, the writ was made available to any federal prisoner "restrained of his or her liberty in violation of the Constitution, or any treaty or law of the United States." Act of February 5, 1867, ch. 28, § 1, 14 Stat. 385; see **Kaufman v. United States**, 394 U.S. 217, 221, 89 S.Ct. 1068, 1071, 22 L.Ed.2d 227 (1969)(*overruled on different grounds*).

Today, federal courts continue to retain jurisdiction to entertain habeas corpus petitions from federal prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 states that "writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district court and any circuit judge within their respective jurisdictions" to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3); see **In re Dorsainvil**, 119 F.3d 245, 248 (3rd Cir. 1997); **Triestman v. United States**, 124 F.3d 361, 377 (2nd Cir. 1997).

The Supreme Court has held that a federal court may grant a habeas writ so long as the prisoner's custodian is within the court's jurisdiction[3]. **Braden v. 30th Judicial Circuit Court**, 410 U.S. 484, 499-500, 93 S.Ct. 1123, 1131-32, 335 L.Ed.2d 443 (1973); see also, **Poodry v. Tonawanda Band of Seneca Indians**, 85 F.3d 874, 890 n.17 (2nd Cir.), cert. denied, 117 S.Ct. 610 (1996).

The two common federal procedures for relief from illegal confinement— Petition for a writ of habeas corpus, under 28 U.S.C. §2241 and motion under § 2255, although similar in many ways, are not the same. See **In re Hanserd**, 123 F.3d 922, 925 (6th Cir.

1997); see also **United States v. Hayman**, 342 U.S. 205, 220, 72 S.Ct. 263, 272, 96 L.Ed. 232 (1952) (a § 2255 action is not a habeas corpus proceeding). If the remedy by § 2255 motion is inadequate or ineffective to test the legality of the detention, then a federal prisoner may apply for a writ of habeas corpus under 28 U.S.C. § 2241. 28 U.S.C. § 2255; see **In re Hanserd** at 929.

A federal prisoner denied a full and fair hearing on the § 2255 motion has an "inadequate or ineffective" remedy under § 2255 and thus is entitled to proceed in federal habeas corpus. **Sanders v. United States**, 373 U.S. 1, 14-15, 83 S.Ct. 1068, 1076-77, 10 L.Ed.2d 148 (1963). A federal prisoner who cannot get total and complete relief in a § 2255 motion is entitled to proceed with a § 2241 habeas petition. **Cohen v. United States**, 593 F.2d 766, 771 & n.12 (6th Cir.1979)(allowing federal inmate to use habeas corpus where § 2255 remedy inadequate). Moreover, the Court in **In re Hanserd** stated that a § 2241 motion is not barred by the new restrictions on successive motions and petitions imposed by the AEDPA. **Id.** at 930.

In a case where the section 2255 procedure is shown to be "inadequate or ineffective," the section § 2255 provides that the habeas corpus remedy shall remain open to afford the necessary hearing. **In re Dorsainvil,** supra at 249.  In **Triestman,** the Court of Appeals stated that the limit on availability of habeas corpus relief to federal prisoner, to circumstances where motion for post-conviction relief would be "inadequate or ineffective", did not refer solely to practical limitations on prisoner's ability to obtain relief by way of motion, but rather included legal limitations as well. **supra** at 377.

---

[3] The custodian for this purpose is the prison warden or director. **Yi v. Maugans**, 24 F.3d 500, 507 (3rd Cir.1994).

The **Triestman** Court went on to construe that the habeas-preserving paragraph of § 2255 provides that habeas corpus remains available to federal prisoners when § 2255 is not available and when the failure to allow for some form of collateral review would raise serious constitutional questions. **Id.** at 377. The Court went on to encourage that the district courts continue to find that habeas corpus may be sought whenever a situation arises in which a petitioner's inability to obtain collateral relief would raise serious questions as to § 2255's constitutionality. **Id.** Moreover, the Supreme Court in **Hayman** stressed that in enacting § 2255 Congress did not intend to impinge upon prisoner's rights of collateral attack upon their convictions. **Id.** at 219, 72 S.Ct. at 272. See **Cohen vs. United States**, 593 F2d 766 (6th Cir. 1979)[holding that a person can bring a claim under 2241 even if the remedy afforded by 2255 is inadequate to provide complete relief in a single proceeding], **United States ex rel. Goldberg vs. Warden**, 622 F2d 60 (3d Cir. 1980) citing the **Cohen** case with approval.

Here, the remedy afforded by 28 U.S.C. 2255 is "inadequate or ineffective" to test the legality of the detention. On May 6, 1993, Mr. Rivera, acting pro se, filed a §2255 Motion and Memorandum alleging, inter alia, that the sentence of 292 months was the byproduct of a misapplication of the sentencing guidelines. Given liberal construction, the pro se §2255 Motion alleged the sentence was based on materially inaccurate information and false assumptions in violation of the due process clause of the Fifth Amendment, and the advice to forego the direct appeal in favor of the 2255 motion was ineffective assistance of counsel.

The District Court held a hearing on the 2255 Motion. The Court disposed of all the issues presented except the sentencing issues, which were left unaddressed.

Petitioner is entitled to relief under U.S.C. § 2241 because (a) the sentencing issues that were presented in Mr. Rivera's initial pro-se § 2255 Motion[4] were overlooked when the district court wrote the Memorandum and Order denying the pro-se § 2255 Motion. (b) Mr. Rivera did not have a full and fair hearing on the sentencing issues. (c) The remedy afforded by § 2255 is no longer the same as the one provided in § 2241 in that the case is referred back to the sentencing judge with a § 2255, but to another judge with a § 2241. An adverse decision in a § 2255 is not reviewable unless certain criteria are met, but the adverse decision in a § 2241 is reviewable without restriction. In addition, a § 2255 Motion cannot be used to litigate a sentencing mistake absent a claim of ineffective assistance of counsel, but a § 2241 is not subject to such limitations.

Furthermore, this case involves a miscarriage of justice, and a fundamental defect in the proceedings for which there is no remedy except habeas corpus under 28 U.S.C. 2241. **In re Dorsainvil**, 119 F3d 245 (3d Cir. 1997). **In re Hanserd**, 123 F3d 922 (6th Cir. 1997),**Triestman vs. United States**, 124 F3d 361 (2d Cir. 1997), **Kolster vs. INS**, 101 F3d 785 (1st Cir. 1996)[habeas available when other remedies are not].

Finally, under the **Cohen** case, Petitioner is not required to file separate actions and litigate piecemeal. In the case at bar, he could not avail himself of the 2255 remedy because half of the habeas corpus is an attack on the execution of sentence, which is outside the scope of 28 U.S.C. 2255.

Because, the remedy provided by the § 2255 motion was and remains "inadequate or ineffective", Mr. Rivera is entitled to proceed with a writ of habeas corpus under 28 U.S.C. § 2241.

---

[4] Mr. Rivera's pro-se 2255 motion alleged, inter alia, that the sentence of 292 months was

## VI. CONCLUSION

Petitioner is entitled to a full and fair hearing on the merits before a neutral and impartial judge. The writ should issue.

Cheryl J. Sturm
Attorney-At-Law
P.O. Box 210
Westtown, Pennsylvania  19395
610/399-8467

---

a misapplication of the sentencing guidelines.

# EXHIBIT - 6

FILED as

00 MAY -1 PM 2: 09

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO

FILED

00 APR 31 PM 3: 1

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF OHIO
YOUNGSTOWN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA          )
ex rel. JAIME RIVERA,             )
                                  )     CASE NO. 4:99CV1539
          Petitioner,             )
                                  )     Judge Daniel A. Polster
                                  )
     v.                           )
                                  )     REPORT AND
                                  )     RECOMMENDATION
WARDEN, FCI ELKTON,               )     OF MAGISTRATE JUDGE
                                  )
          Respondent.             )     Magistrate Judge George J. Limbert

   Petitioner, who is currently incarcerated at the Federal Corrections Institution in Elkton,

Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C.§ 2241. *See* Docket #1.

Respondent has filed a brief in opposition to Petitioner's writ of habeas corpus. *See* Docket #7.

This matter is currently before this Court upon Petitioner's motion to strike the government's

response. *See* Docket #8. Respondent has not filed a response to Petitioner's motion. Petitioner

has also filed a traverse to Respondent's brief in opposition. *See* Docket #9.


I.  **FACTUAL AND PROCEDURAL BACKGROUND**

   On August 1, 1991, a federal grand jury returned an indictment charging Petitioner with

conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (Count 1), distribution of cocaine

in violation of 21 U.S.C. § 841(a)(1) (Count 4), distribution of cocaine within one thousand feet

of a protected location in violation of 21 U.S.C. § 860 (Counts 5 and 8), and possession with the

intent to distribute cocaine (Count 7). On November 22, 1991, following a jury trial at which he

was represented by counsel, Petitioner was found guilty on the above mentioned counts. On

June 1, 1992, a district court judge in the United States District Court for the Eastern District of

Pennsylvania sentenced Petitioner to 292 months' imprisonment, 10 years' supervised release,

and a $100,000.00 fine. On June 10, 1992, Petitioner filed a notice of appeal with the United

States Court of Appeals for the Third Circuit. Thereafter, Petitioner consented to a voluntary

dismissal of the appeal, and the appeal was dismissed on September 18, 1992 pursuant to FED. R.

EXH-6

App. P. 42(b).

On May 6, 1993, Petitioner filed a pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 in the United States District Court for the Eastern District of Pennsylvania. On November 22, 1993, the district court held an evidentiary hearing on the motion, and Petitioner was represented by counsel at that hearing. On May 19, 1994, the district court denied Petitioner's § 2255 motion. *See United States v. Rivera*, 1994 WL 242528 (E.D. Pa. 1994).

On May 31, 1994, Petitioner filed a notice of appeal with the Third Circuit Court of Appeals. Subsequently, on September 26, 1994, Petitioner filed a motion to stay the appeal and remand for consideration of the sentencing issues raised in his § 2255 motion. On November 7, 1994, the Third Circuit denied Petitioner's motion to stay. Furthermore, on February 15, 1995, the Third Circuit affirmed the district court's denial of Petitioner's § 2255 motion.

On January 23, 1997, pursuant to Fed. R. Civ. P. 60(b), Petitioner filed a motion to grant relief from judgment in the United States District Court for the Eastern District of Pennsylvania. This motion was removed to the Third Circuit Court of Appeals as a second or successive § 2255 motion and subsequently denied.

On July 7, 1998, Petitioner filed a pro se motion for resentencing pursuant to 18 U.S.C. § 3582(c)(2) in the United States District Court for the Eastern District of Pennsylvania. He then filed the current petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 with this Court on June 28, 1999. He bases his petition on the following grounds:

(a)    The conviction was obtained and/or sentence imposed in violation of the Sixth Amendment right to the effective assistance of counsel.

(b)    Execution of the sentence is an unconstitutional denial of due process of law and equal protection of the laws.

Docket #1, Memorandum in Support, at 4, 12. Petitioner claims that the Sentencing Guidelines in place at the time of his sentencing were vague, and that the execution of his sentence is unconstitutional because there are currently no commissioners on the Sentencing Commission.

-2-

*See id.* at 12-14. Petitioner further alleges that his previous § 2255 motion was inadequate or ineffective to test the legality of his detention. *See id.* at 14-18. In turn, he claims that the writ should issue so that he might enjoy a full and fair hearing on the merits before a neutral and impartial judge. *See id.* at 19.

On March 10, 2000, Respondent filed a brief in opposition to Petitioner's § 2241 petition for writ of habeas corpus. Respondent claims that Petitioner uses his § 2241 action to merely challenge the legality of the sentence imposed upon him, which is a matter to be addressed in another § 2255 motion. *See* Docket #7 at 8. Respondent alleges that:

> Petitioner's attempt to file a § 2241 action in this court is an effort to avoid the application of § 2255, the procedures under 28 U.S.C. § 2244(b)(3), and the prior adverse decision of the District Court for the Eastern District of Pennsylvania and the Third Circuit Court of Appeals.

*Id.* Respondent urges that Petitioner should have filed the instant matter with the sentencing court in the Eastern District of Pennsylvania. *See id.* For these reasons, Respondent asks this Court to dismiss Petitioner's writ. *See id.* at 9.

On March 29, 2000, Petitioner filed a motion to strike the government's response and a traverse to Respondent's brief in opposition to his writ. Petitioner claims that Respondent's brief in opposition is labeled as a "response," but is really no different from the motion to dismiss denounced in *Browder v. Department of Corrections of Illinois*, 434 U.S. 257 (1978). *See* Docket #8 at 1. In turn, Petitioner argues that: the government's "response" should be stricken; the government should be deemed to have admitted the allegations in the instant § 2241 petition; and Petitioner should be granted judgment by default. *See id.* at 2. Petitioner further contends that his § 2241 petition is properly before this Court because it is based upon deficiencies in the Sentencing Commission and the Sentencing Guidelines that arose after the imposition of his sentence. *See* Docket #9 at 1.

## II.    RELEVANT LAW

It is essential to determine whether a petitioner's action is properly termed a § 2241 petition or whether it is actually a § 2255 motion. The difference between the two is important for jurisdictional purposes. *See In Re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999). In determining the nature of a petitioner's action, the court is to consider the essence of the claims raised rather than the label attached to it by the petitioner. *See Chambers v. United States*, 106 F.3d 472, 475 (2nd Cir. 1997); *Solsona v. Warden, F.C.I.*, 821 F.2d 1129, 1132 & n.1.

Section 2255 provides a federal inmate with a collateral post-conviction means of attacking his conviction and sentence. *See Gregory*, 181 F.3d at 714. Motions brought pursuant to § 2255 are the sole means by which a federal prisoner can collaterally attack a conviction or sentence that he alleges to be in violation of federal law. *See Davis v. United States*, 417 U.S. 333 (1974); *Cohen v. United States*, 593 F.2d 766, 770 (6th Cir. 1979). Motions to vacate, set aside, or correct a sentence pursuant to § 2255 are to be filed in the trial court that sentenced the prisoner. *See* 28 U.S.C. § 2255; *United States v. Hayman*, 342 U.S. 205, 210-219 (1952); *In re Dorsainvil*, 119 F.3d 245, 249 (3rd Cir. 1997). Whereas a challenge to the imposition of a sentence is to be filed as a § 2255 motion, a challenge to execution of the sentence is to be filed as a petition for writ of habeas corpus pursuant to § 2241. A federal prisoner can file a § 2241 application in the first instance with the district in which he is confined–he need not first file it with the court that sentenced him. *See United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). In essence, federal prisoners are to utilize § 2241 petitions to challenge the execution of a sentence and § 2255 motions to challenge the underlying validity of a sentence or conviction.

The "savings clause" of § 2255 provides that:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255. If the remedy provided by § 2255 is proven to be inadequate or ineffective, a

federal prisoner can apply for a writ of habeas corpus pursuant to § 2241. The burden is upon the petitioner to establish that § 2255's remedy was inadequate or ineffective. *See Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999); *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998). Federal habeas corpus is an available remedy under § 2241 when remedy under § 2255 is not available and when the failure to allow for some form of collateral review would raise serious constitutional questions. *See Triestman v. United States*, 124 F.3d 361, 377(2nd Cir. 1997). Section 2255's remedy is not available where, by its terms, that section does not apply—for instance, where a judgment or the imposition of a sentence is not being attacked. *See Jalili*, 925 F.2d at 893.

It should be noted that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which went into effect on April 24, 1996, placed restrictions upon prisoners seeking to pursue § 2255 motions or federal petitions for writ of habeas corpus. *See In re Hanserd*, 123 F.3d 922, 924 (1997). 28 U.S.C. § 2244(b)(3) sets forth the steps to be taken by a petitioner wishing to file a second or successive application. Before such an application may be filed in district court, the petitioner must "move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). With regard to the filing of second or successive motions to vacate, set aside, or correct a sentence, § 2255 provides the following:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain–
>
> (a)     newly discovered evidence that, if proven and reviewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (b)     a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255.

### III.   ANALYSIS

In his motion to strike the government's response, Petitioner asserts that the government's "response has all the trappings of a motion to dismiss" and should therefore be stricken pursuant to *Browder v. Department of Corrections of Illinois*, 434 U.S. 257 (1978). Petitioner complains that Respondent's brief does not respond to the allegations in the instant § 2241 petition. *See* Docket #8 at 2. Typically, a motion to dismiss is not by itself sufficient to respond to a court's order for an "answer." *See Browder*, 434 U.S. at 269, n.14 ("response to a habeas corpus petition is not like a motion to dismiss"). Clearly, prior to the adoption of the Habeas Corpus Rules, a motion to dismiss was deemed an inappropriate response to a habeas petition. *See id.* However, the Habeas Corpus Rules confer ample discretionary authority on district courts to tailor the proceedings of habeas cases, thus enabling the courts to handle the matters quickly, efficiently, and fairly. *See Lanchar v. Thomas*, 517 U.S. 314, 325 (1996); *Ukawabutu v. Morton*, 997 F. Supp. 606, 608 (D. N.J. 1998). It should be noted that the Habeas Corpus Rules apply to petitions filed pursuant to both § 2254 and § 2241. *See Ukawabutu*, 997 F. Supp. at 606, n.2.

Here, Respondent has labeled his "response" as the "Government's Brief in Opposition to Petitioner's Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241." Docket #7 at 1. Respondent's main contention is that Petitioner has filed another § 2255 motion which is improperly before this Court. *See id.* at 8. In turn, Respondent asks this Court to dismiss Petitioner's writ. *See id.* at 9. Even assuming, *arguendo*, that Respondent's brief is the functional equivalent of a motion to dismiss, as Petitioner claims it is, the undersigned recommends that this Court use its discretionary authority to deny Petitioner's motion to strike the government's response. It is further recommended that this Court consider Respondent's brief, which, as will be explained, raises meritorious dispositive claims.

This Court must next determine whether, as alleged by Petitioner, the instant matter is properly before this Court as a § 2241 federal habeas petition. Respondent contends that

Petitioner has actually filed a second or successive § 2255 motion, which should have been filed with the sentencing court in the Eastern District of Pennsylvania and subsequently transferred to the Third Circuit Court of Appeals for certification pursuant to 28 U.S.C. § 2255. *See* Docket #7 at 8. Petitioner asserts that he has properly labeled the instant § 2241 petition because it is based upon alleged deficiencies in the Sentencing Commission and the Sentencing Guidelines that arose after the imposition of his sentence. *See* Docket #9 at 1. Petitioner also claims that § 2241 is the proper remedy for his claim because he has established that the remedy under § 2255 was inadequate or ineffective to test the legality of his detention. *See id.* at 5-8.

One of Petitioner's bases for his § 2241 petition is alleged ineffective assistance of counsel. He bases this claim upon his counsel's advice to dismiss and waive his appeal and to file a § 2255 motion in the stead of a direct appeal. *See* Docket #1, Memorandum in Support, at 7. Petitioner urges that his counsel's advice was deficient because his waiver of direct appeal has left him procedurally barred from filing a § 2255 motion. *See United States v. Frady*, 456 U.S. 152, 164 (1982). More specifically, Petitioner claims that he has lost the opportunity to raise the following sentencing misapplications on direct appeal: the two-level enhancement for selling drugs within 1,000 feet of a school zone; the sentencing enhancement for an organizer, leader, or supervisor; and the quantity of drugs used as the basis of Petitioner's sentence. *See* Docket #1, Memorandum in Support, at 8-10. Petitioner claims that these issues were raised in his initial pro se § 2255 motion but that they were overlooked or deemed abandoned by the sentencing district court in the Eastern District of Pennsylvania. *See id.* at 10.

It is true that petitioners are typically procedurally barred from raising issues in a § 2255 motion that they could have raised on a direct appeal and failed to do so. *See Frady*, 456 U.S. at 164; *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994). However, if a petitioner can establish cause for his failure to raise an issue on appeal and prejudice therefrom, or if he can show that a fundamental miscarriage of justice will occur if his claim is not addressed, he is entitled to raise that claim. *See Frady*, 456 U.S. at 167-168. Here, Petitioner attempts to

-7-

establish cause, prejudice, and a potential fundamental miscarriage of justice. *See* Docket #1 and Docket #9. Furthermore, if procedural bar is not raised as an issue by the government, which is the case here, a court may address the merits of a petitioner's § 2255 motion. *See Allen*, 16 F.3d at 379. In the instant matter, review of the claims which Petitioner asserts he was unable to raise on direct appeal reveals that they deal with the imposition of his sentence. They allege misapplication of the sentencing guidelines and collaterally attack the sentence imposed. Clearly, these are the types of claims that are to be raised in a § 2255 motion before the sentencing court. *See* 28 U.S.C. § 2255; *Davis*, 417 U.S. 317; *Cohen*, 593 F.2d at 770. Therefore, it is recommended that the claims raised in support of Petitioner's allegation of ineffective assistance of counsel should have been filed as part of a § 2255 motion in the Eastern District of Pennsylvania, where it would have been transferred to the Third Circuit Court of Appeals for certification pursuant to § 2255. In turn, it is unnecessary for this Court to consider the merits of these claims.

As his second ground for habeas relief, Petitioner alleges that the execution of his sentence is an "unconstitutional denial of due process of law and equal protection of the laws." Docket #1, Memorandum in Support, at 12. He complains that, at the time of his sentencing, the guidelines controlling his sentencing were unclear, thereby requiring clarification. Petitioner then notes that there are currently no commissioners on the Sentencing Commission, claiming that the execution of his sentence is unconstitutional because there is no mechanism to eliminate the disparity in sentences caused by the failure to make clarifying amendments to the guidelines retroactive. *See id.* at 13-14. Petitioner stresses that there are no commissioners to apply the following provisions of the sentencing guidelines:

(s)     The Commission shall give due consideration to any petition filed by a defendant requesting modification of the guidelines utilized in the sentencing of such defendant, on the basis of changed circumstances unrelated to the defendant, including changes in—

(1)     the community view of the gravity of the offense;

(2)     the public concern generated by the offense; and

-8-

     (3)    the deterrent effect particular sentences may have on the commission of
the offense by others.

28 U.S.C. § 994(s).

Petitioner was appropriately sentenced under the guidelines in place at the time of his

sentencing. *See* 18 U.S.C. § 3553(a)(4); *United States v. Holmes*, 975 F.2d 275, 278 (6th Cir.

1992). If Petitioner wishes to attack the constitutionality of that sentence based upon particular

amendments to the Sentencing Guidelines or the lack thereof, he may do so in a motion pursuant

to § 2255. In essence, the undersigned finds once more that Petitioner is attempting to

collaterally attack the imposition of his sentence. A § 2241 petition for writ of habeas corpus is

clearly not the appropriate means by which to present these issues. Petitioner should present

these challenges to the legality of his sentence in a § 2255 motion filed in the sentencing court in

the Eastern District of Pennsylvania. *See* 28 U.S.C. § 2255; *Hayman*, 342 U.S. at 210-219.

Petitioner's final reason for bringing the instant action as a § 2241 petition in this Court is

his claim that the remedy provided by a § 2255 motion is inadequate or ineffective to test the

legality of his detention. *See* Docket #1, Memorandum in Support, at 14. Petitioner claims that

§ 2255's remedy is inadequate or ineffective because the United States District Court for the

Eastern District of Pennsylvania did not address or dispose of the sentencing issues raised in the

initial pro se § 2255 motion that he filed on May 6, 1993. *See id.* at 17. In turn, pursuant to the

"savings clause" of § 2255, Petitioner contends that he is entitled to apply for a writ of habeas

corpus under § 2241. *See* 28 U.S.C. § 2255; *In re Hanserd*, 123 F.3d at 929.

Petitioner clearly bears the burden of establishing that § 2255's remedy is inadequate or

ineffective. *See Charles*, 180 F.3d at 756; *Capaldi*, 135 F.3d at 1124. It should be noted that:

> No circuit court has to date permitted a post-AEDPA petitioner who was not
> effectively making a claim of 'actual innocence' to utilize § 2241 (via § 2255's
> 'savings clause') as a way of circumventing § 2255's restrictions on the filing of
> second or successive habeas petitions.

*Charles*, 180 F.3d at 757. Here, Petitioner does not assert any claims of actual innocence.

Rather, he alleges that his sentence is unconstitutional, and he claims that § 2255's remedy is

-9-

inadequate or ineffective because the sentencing court in the Eastern District of Pennsylvania failed to address or resolve the sentencing issues raised in his initial pro se § 2255 motion. However, the remedy provided by § 2255 is not inadequate or ineffective simply because Petitioner has been denied that remedy by a prior decision. *See Charles*, 180 F.3d at 756. For these reasons, the undersigned finds that § 2255's remedy is not inadequate or ineffective to test the legality of Petitioner's detention. Rather, § 2255 provides the appropriate remedy for Petitioner to pursue in this matter. Therefore, it is recommended that this Court not permit Petitioner to utilize § 2255's "savings clause" to bring a § 2241 petition for writ of habeas corpus in the Northern District of Ohio.

In sum, the claims raised by Petitioner in the instant § 2241 petition amount to a collateral attack on his sentence and therefore should be brought in a § 2255 motion in the sentencing court in the Eastern District of Pennsylvania. *See* 28 U.S.C. § 2255; *Hayman*, 342 U.S. at 210-219. Further, Petitioner has failed to establish that the remedy provided by § 2255 is inadequate or ineffective. Petitioner may well have filed his § 2241 petition in an effort to avoid the application of § 2255, the procedures under § 2244(b)(3), and the prior adverse decisions of the United States District Court for the Eastern District of Pennsylvania and the Third Circuit Court of Appeals. *See Gregory*, 181 F.3d 715. Regardless of Petitioner's intent, it is recommended that this Court adopt the undersigned's finding that the instant action is essentially a second or successive § 2255 motion that should have been filed in the Eastern District of Pennsylvania and transferred to the Third Circuit Court of Appeals for certification pursuant to § 2255.

## IV.    CONCLUSION AND RECOMMENDATION

Upon review of the pleadings and the relevant law, the Magistrate Judge finds that it is appropriate for this Court to consider the merits of Respondent's brief. Therefore, it is recommended that this Court deny Petitioner's motion to strike the government's response. Further, the undersigned finds that Petitioner's § 2241 petition for writ of habeas corpus is based upon claims concerning the legality of his sentence. In essence, Petitioner has filed a second or successive § 2255 motion. This action should have been filed with the sentencing court in the Eastern District of Pennsylvania and subsequently transferred to the Third Circuit Court of Appeals for certification pursuant to § 2255. For these reasons, it is recommended that this Court dismiss the instant matter, which has been improperly filed in the Northern District of Ohio, without prejudice.

George J. Limbert
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

# EXHIBIT - 7

FILED

00 AUG -3 PM 2: 43

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Ex rel. JAIME RIVERA | ) | CASE NO. 4:99 CV 1539 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | |
| | ) | <u>JUDGMENT ENTRY</u> |
| WARDEN, FCI, ELKTON, | ) | |
| | ) | |
| Respondent. | ) | |

For the reasons stated in the Memorandum of Opinion and Order filed contemporaneously with this Judgment Entry, and pursuant to Federal Rule of Civil Procedure 58, it is hereby ORDERED, ADJUDGED AND DECREED that the above-captioned case is hereby terminated and dismissed as final.

Moreover, pursuant to 28 U.S.C. §2253(c) and Fed. R. App. P. 22(b), there is no basis upon which to issue a certificate of appealability. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

**Dan Aaron Polster**
**United States District Judge**

Ex 4-7

FILED

00 AUG -3 PM 2:43

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 4:99 CV 1539 |
| Ex rel. JAIME RIVERA | ) | |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| | ) | MEMORANDUM OF OPINION |
| WARDEN, FCI, ELKTON, | ) | AND ORDER |
| | ) | |
| Respondent. | ) | |

Before the Court is the Report and Recommendation of Magistrate Judge George

J. Limbert (Doc. No. 10). Pending is the Petition for Writ of Habeas Corpus by Person in

Federal Custody, pursuant to 28 U.S.C. §2241 (Doc. No. 1), as well as a motion to strike the

government's response (Doc. No. 8). Petitioner Jaime Rivera was found guilty of multiple drug-

related charges after a jury trial in the United States District Court for the Eastern District of

Pennsylvania, and was subsequently sentenced to 292 months of imprisonment followed by 10

years of supervised release. Rivera claims that he received ineffective assistance of counsel due

to counsel's advice to dismiss and waive a direct appeal. He also claims that the execution of his

sentence is unconstitutional (1) in light of the Sentencing Guideline Amendments which have

clarified guidelines relating to relevant conduct and role in the offense, and (2) because there are

no commissioners presently sitting on the Sentencing Guidelines Commission.

In a comprehensive and well-written opinion, the Magistrate Judge recommended that the Court deny Rivera's motion to strike the government's response to the Petition. The Magistrate Judge also recommended that the Court dismiss the pending § 2241 petition because it concerns the legality of Rivera's sentence as opposed to the execution of his sentence. Thus, it is in fact a second or successive § 2255 motion that should have been filed with the sentencing court and transferred to the Third Circuit Court of Appeals for certification. Rivera filed Petitioner's Objections to the Report and Recommendation of Magistrate (Doc. No. 11).

The Court has thoroughly reviewed the Magistrate Judge's Report and Recommendation and the Petitioner's Objections thereto, and agrees with the Magistrate Judge's conclusions. This Court is without jurisdiction to entertain this petition because it is a second or successive § 2255 petition.

Accordingly, the Court hereby **OVERRULES Petitioner's Objections and ADOPTS the Magistrate Judge's Report and Recommendation Decision in full.** The § 2241 habeas corpus petition is hereby **DISMISSED.**

**IT IS SO ORDERED.**

**Dan Aaron Polster**
**United States District Judge**

# EXHIBIT - 8

**CRIMINAL DOCKET · U.S. District Court**

| | | | | | | U.S. | (LAST, FIRST, MIDDLE) | | Case Filed | | | Docket No. | Def. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ☐ WRIT | VS. | RIVERA, JAIME | | Mo. | Day | Yr. | 00394 | 01 |
| PO | ☐ | 0313 | 2 | Assigned 1337EC | ☐ JUVENILE | ▷ ● | | | 08 | 28 | 91 | | |
| Misd. | ☐ | | | Orig. Complaint 1356SD | ☐ ALIAS | | | | No. of | | | | |
| Felony | ☒ | District | Off | Judge/Magistr. | OFFENSE ON INDEX CARD▷ | | | | 06 | Def's | U.S. MAG. CASE NO. | 91-0566-M-1 | |

**I. CHARGES**

| U.S. TITLE/SECTION | OFFENSES CHARGED | ORIGINAL COUNTS | DISM. NG |
|---|---|---|---|
| 21:846 | Conspiracy to distribute Cocaine, a Schedule II narcotic drug controlled substance  Ct. 1 | 1 | |
| 21:841(a)(1) | Distribution of Cocaine  Ct. 4 | 1 | |
| 21:860 | Distribution of cocaine within 1,000 feet of a school  Cts. 5,8 | 2 | |
| 21:841(a)(1) | Possession with intent to distribute cocaine  Ct. 7 | 1 | |
| 21:853(a)(1) | Criminal Forfeiture  Ct. 9 | 1 | |
| 18:2 | Aiding and Abetting  Cts. 7,8 | 2 | |

SUPERSEDING COUNTS ▶

**II. KEY DATE**

| INTERVAL ONE | END ONE AND/OR BEGIN TWO (OR RESTART PERIOD TO TRIAL) | END INTERVAL TWO |
|---|---|---|
| KEY DATE ☐ arrest ☐ sum'ns ☐ custody ☐ appears on complaint | KEY DATE 8-28-91 | KEY DATE ☒ Indictment filed/unsealed ☐ Information ☐ Felony-W/waiver | KEY DATE | a) ☐ 1st appears on pending charge /R40 b) ☐ Receive file R20/21 c) ☐ Supsdg ☐ ind ☐ inf d) ☐ Order New trial e) ☐ Remand f) ☐ G/P Withdrawn | KEY DATE | ☐ Dismissal ☐ Pled ☐ guilty ☐ After N.G. ☐ Nolo ☐ After nolo ☐ Trial (voir dire) began ☐ Jury ☐ N.J. |
| EARLIEST OF | APPLICABLE | | | | APPLICABLE | |

| 1st appears with or waives counsel | ARRAIGNMENT | 1st Trial Ended | RE-TRIAL | 2nd Trial Began | DISPOSITION DATE | SENTENCE DATE | PTD ☐ Nolle ☐ Pros. | FINAL CHARGES DISMISSED ☐ on S.T. ☐ grounds ☐ W.P. ☐ WOP | on def motion on gov't motion |
|---|---|---|---|---|---|---|---|---|---|

**III. MAGISTRATE**

| Search Warrant | | DATE | INITIAL/NO. | INITIAL APPEARANCE DATE ▶ 8-1-91 | INITIAL/NO. | OUTCOME: |
|---|---|---|---|---|---|---|
| | Issued | | | PRELIMINARY EXAMINATION OR | Date Scheduled ▶ 8-5-91 | ACR/ | ☐ DISMISSED HELD FOR GJ OR OTHER PRO-CEEDING IN THIS DISTRICT |
| | Return | | | ☐ REMOVAL HEARING | Date Held ▶ 8-5-91 | EEN/13AC | |
| Summons | Issued | | | ☐ WAIVED ☐ NOT WAIVED | Tape Number | | HELD FOR GJ OR OTHER PRO-CEEDING IN DISTRICT BELOW |
| | Served | | | | | | |
| Arrest Warrant Issued | | 8-5-91 | EEN/13AC | ☐ INTERVENING INDICTMENT | | | |
| COMPLAINT ▶ | | 8-5-91 | EEN/13AC | | | | |

| Date of Arrest | OFFENSE (In Complaint) |
|---|---|
| 8-1-91 | 21 USC §§ 841(a)(1) and 846  JAMIE RIVERA, p.p. # 44529-066 (88) |

Show last names and suffix numbers of other defendants on same indictment/information:

L.S.C.I. ALLENWOOD, BRADY-B
P.O. BOX 1000
WHITE DEER, PA. 17887-1000

| RULE | 20 | 21 | 40 | In | Out |
|---|---|---|---|---|---|
| | | | | | |

**ATTORNEYS**

U.S. Attorney or Asst.

AUSA Timothy Rice

Defense:  1 ☐ CJA.    2 ☐ Ret.    3 ☐ Waived.    4 ☐ Self.    5 ☐ Non / Other.    6 ☐ PD.    7 ☐ CD

p. (61)

JAIME RIVERA  # 44529-066
LSCI Allenwood

P.O. Box 1000

White Deer, PA  17887-1000

12977

, Esq. (77)

9395

zera, p.p. (184)
130
OH 44415

*10a*

**BAIL · RELEASE**

PRE-INDICTMENT

| Release Date | |
|---|---|
| ☒ Bail Denied | ☐ Fugitive |
| | ☐ Pers. Rec. |
| AMOUNT SET | ☐ PSA |
| $ | ☐ Conditions |
| Date Set | ☐ 10% Dep. |
| | ☐ Surety Bnd |
| ☐ Bail Not Made | ☐ Collateral |
| Date Bond Made | ☐ 3rd Prty |
| | ☐ Other |

POST-INDICTMENT

| Release Date | |
|---|---|
| Bail ☐ Denied | ☐ Fugitive |
| | ☐ Pers. Rec. |
| AMOUNT SET | ☐ PSA |
| $ | ☐ Conditions |
| Date Set | ☐ 10% Dep. |
| | ☐ Surety Bnd |
| ☐ Bail Not Made | ☐ Collateral |
| Date Bond Made | ☐ 3rd Prty |
| | ☐ Other |

APPEALS FEE PAYMENTS

...ies Begin On Reverse Side

| DATE | RECEIPT NUMBER | C.D. NUMBER | DATE | RECEIPT NUMBER | C.D. NUMBER |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

EXH. 8

| DATE | Yr | Docket No | Def | MASTER DOCKET · MULTIPLE DEFENDANT CASE  PAGE ☐ OF ☐ ☐ PROCEEDINGS DOCKET FOR SINGLE DEFENDANT | VI EXCLUDABLE DELAY | | |
|---|---|---|---|---|---|---|---|
| DOCUMENT NO. | 91 | 00394 | 01 | | Start Date End Date | Ltr Code | Total Days |

**V. PROCEEDINGS**

(OPTIONAL) Show last names of defendants

<u>1991</u>

**Aug 1** — Initial Appearance: Def. appeared before ACR at which time he CJA J. Heidecker was appointed for the def. Pretrial detention/prel. exam set for 8-5-91 before EEN.  EEN

**Aug. 5** — Pretrial Det/Prel. Exam: Ct made a finding of prob. cause and def. detained pending trial.  EEN

**Aug. 7** — Bail status sheet dtd. 8-5-91, and ORDER detaining def. pending trial both filed.  EEN

**Aug. 5** — ORDER DTD. 8/1/91 FIXING DETENTION HEARING FOR 8/5/91, AT 1:30 P.M., ETC., FILED.  ACR
8/8/91 entered.

**Aug. 7** — Affidavit of Special Agent Richard A. Ford, DEA, filed.
**Aug. 7** — Bail status sheet dtd. 8/5/91 re: deft. is detained, filed.
**Aug. 7** — Appearance of J. Heidecker, Esq. for deft., filed.
**Aug. 7** — MOTION AND ORDER DTD. 8/5/91 THAT THE DEFT. IS COMMITTED TO THE CUSTODY OF THE ATTORNEY GENERAL, ETC., FILED.  EEN
8/8/91 entered and copies mailed.

| | | | |
|---|---|---|---|
| 1 | Aug | 28 | TRUE BILL |
| 2 | " | 28 | MOTION AND ORDER FOR BENCH WARRANT, FILED.    WARRANT EXIT   WFH  No Bail Entered |
| 3 | " | 28 | Records transferred from Mag. No. 91-0566-M-1 to this case, filed. |
| 4 | Sep. | 16 | DEFT'S MOTION FOR DISCOVERY AND INSPECTION, MEMORANDUM, CERT. OF SERVICE, FILED. |
| 5 | " | 16 | DEFT'S MOTION TO COMPEL THE GOVT. TO PRESERVE AND RETAIN ORIGINAL NOTES, MEMORANDUM, CERT. OF SERVICE, FILED. |
| 6 | " | 16 | DEFT'S MOTION FOR EARLY RELEASE OF JENCKS ACT MATERIAL, MEMO., CERT. OF SERVICE, FILED. |
| 7 | " | 16 | Deft's Memorandum in opposition to Govt's motion for Pretrial Detention, cert. of service, filed. |
| 8 | " | 16 | DEFT'S MOTION TO SUPPRESS ELECTRONIC SURVEILLANCE, MEMORANDUM, CERT. OF SERVICE, FILED. |
| 9 | " | 16 | DEFT'S MOTION FOR DISCLOSURE OF EVIDENCE FAVORABLE TO THE ACCUSED, MEMORANDUM, CERT. OF SERVICE, FILED. |
| 10 | " | 16 | DEFT'S MOTION FOR DISCLOSURE OF GOVT. INFORMERS' INDENTITIES, MEMORANDUM, CERT. OF SERVICE, FILED. |
| 11 | " | 16 | Deft's requested voir dire, filed. |
| 12 | " | 16 | Deft's proposed jury instructions, filed. |
| 13 | " | 18 | GOVT'S MOTION TO ADMIT TAPE RECORDINGS, MEMORANDUM, CERT. OF SERVICE, FILED. |
| 14 | " | 20 | Appearance of Eugene Tinari, Esq., filed. |
| 15 | " | 20 | PLEA OF 9/19/91: NOT GUILTY TO CTS. 1,4,5,7,8,9, Deft. allowed   TGL  10 days to file motions, filed. |
| 16 | " | 26 | GOVT'S APPLICATION FOR EX PARTE ORDER TO DISCLOSE RETURNS AND RETURN INFORMATION, FILED. |

CONTINUED... *11a*
CONTINUED TO PAGE ☐

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET    *U. S. vs*    RIVERA, JAIME

AO 256A

| 91 | 00394 | 0 |
|----|-------|---|
| Yr. | Docket No. | |

| DATE 1991 | PROCEEDINGS (continued) (Document No.) | V. EXCLUDABLE DEL (a) | (b) | (c) |
|-----------|-----------------------------------------|---------------|-----|-----|
| 17 Sep. 30 | DEFT'S MOTION FOR REVOCATION AND/OR AMENDMENT OF MAGISTRATE'S PRETRIAL DETENTION ORDER, MEMORANDUM, CERT. OF SERVICE, FILED. | | | |
| 18 " 30 | ORDER FOR DISCLOSURE OF RETURNS AND RETURN INFORMATION, FILED. 10/1/91 entered & copies mailed. | EC | | |
| 19 Oct. 1 | Govt's consolidated response to deft's pretrial discovery motions, cert. of service, filed. | | | |
| 20 " 2 | Appearance of Eugene Tinari, Esq, on behalf of deft, filed. | | | |
| 21 " 7 | Govt's response to deft's application to vacate detention Order, Cert. of service, filed. | | | |
| 22 " 11 | ORDER DATED 10/8/91 THAT A HEARING IS FIXED FOR 10/28/91 AT 3:30 P.M. IN COURTROOM 17-A ON MOTION FOR REVOCATION AND/OR AMENDMENT OF PRETRIAL DETENTION ORDER, FILED. 10/11/91 entered & copies mailed. | EC | | |
| 23 " 11 | ORDER DATED 10/8/91 THAT EXCLUDABLE TIME BE COMPUTED FROM THE DATE OF FILING OF DEFT'S MOTION FILED 9/16/91, FILED. 10/11/91 entered & copies mailed. | EC | | |
| 24 " 11 | DEFT'S MOTION FOR TRIAL CONTINUANCE, CERT. OF SERVICE, FILED. | | | |
| 25 Nov. 5 | ORDER DATED 11/4/91 THAT THE DE NOVO REVIEW OF THE EVIDENCE PURSUANT TO 18:3145(b), THE 8/8/91 ORDER OF HON. EDWIN E. NAYTHONS IS AFFIRMED, FILED. 11/5/91 entered & copies mailed. | EC | | |
| 26 " 5 | PETITION AND ORDER THAT THE WARDEN OF FCI ALLENWOOD AND THE U.S. MARSHAL PRODUCE THE BODY OF CARLOS DIAZ FOR TRIAL PREPARATION ON 11/14/91 AND ON 11/19/91 AT 9:30 A.M. TO 11/22/91 FILED. 11/6/91 entered. | JG | | |
| 27 " 8 | ORDER THAT JURY SELECTION SHALL TAKE PLACE ON 11/18/91 AT 10:00 A.M. AND TRIAL SHALL COMMENCE ON 11/19/91 IN COURTROOM 2, OLD LEHIGH COUNTY COURTHOUSE, ALLENTOWN, PA., FILED. 11/8/91 entered & copies mailed. | EC | | |
| 28 " 12 | Hearing of 10/28/91 re: Motion for release and for severance of Jose Cruz - Denied, Motion for release of Jamie Rivera Denied, Trial set for 11/18/91, filed. | | | |
| 29 " 12 | Govt's requested questions for voir dire, Cert. of Service, filed. | | | |
| 30 " 12 | Govt's proposed jury instructions, cert. of service, filed. | | | |
| 31 Nov. 13 | GOVT'S TRIAL MEMORANDUM AND MOTIONS IN LIMINE TO ADMIT 404(b) EVIDENCE AND TAPE TRANSCRIPTS, CERT. OF SERVICE, FILED. | | | |
| 32 " 14 | Govt's supplemental proposed jury instructions, cert. of service, filed. | | | |
| 33 " 18 | WITHDRAWAL OF APPEARANCE OF EUGENE P. TINARI, ESQ. WITH COURT APPROVAL, TOGETHER WITH APPEARANCE OF NINO V. TINARI, ESQ., FILED. 11/18/91 entered. | EC | | |

( O V E R )  *12a*

| | Interval (per Section II) | Start Date End Date | Ltr. Te Code D. |
|--|---------------------------|---------------------|-----------------|

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET

AO 256A

| DATE | | PROCEEDINGS (continued) | V. EXCLUDABLE DELAY | | | |
|---|---|---|---|---|---|---|
| | | —(Document No.)— | (a) | (b) | (c) | (d) |
| **1991** | | | | | | |
| 34 Nov | 21 | Warrant Returned: " On 9/19/91 Executed"; filed. | | | | |
| 35 " | 25 | JURY TRIAL OF 11/18/91: Jurors selected, filed. | | | | |
| 36 " | 25 | Trial of 11/19/91 resumes: witnesses called, filed. | | | | |
| 37 " | 25 | Trial of 11/20/91 resumes, filed. | | | | |
| 38 " | 25 | Trial of 11/21/91 resumes, filed. | | | | |
| 39 " | 27 | Trial of 11/22/91 resumes | | | | |
| | | VERDICT: GUILTY TO CTS. 1,4,5,7 & 8, filed. | | | | |
| 40 " | 27 | Jury Verdict Slip, filed. | | | | |
| 41 " | 27 | ORDER DATED 11/25/91 FIXING SENTENCING FOR 2/24/92 AT 12:00 | EC | | | |
| | | P.M. IN COURTROOM 17-A, FILED. | | | | |
| | | 11/29/91 ENTERED AND COPIES MAILED. | | | | |
| 42 Dec. | 2 | ORDER THAT A STIPULATED GUILTY VERDICT IS ENTERED AS TO CT. 9 | | | | |
| | | SUBJECT TO DEFT'S RIGHT TO APPEAL, FILED. | EC | | | |
| | | 12/2/91 entered & copies mailed. | | | | |
| **1992** | | | | | | |
| 43 Feb | 18 | ORDER DATED 2/13/92 THAT THE SENTENCING SCHEDULED FOR 2/24/92 | EC | | | |
| | | IS CANCELLED AND RESCHEDULED FOR 5/4/92 AT 9:30 A.M. IN | | | | |
| | | COURTROOM 17-A, FILED. | | | | |
| | | 2/19/92 ENTERED AND COPIES MAILED. | | | | |
| 44 " | 21 | Certified copy of Order dated 11/5/91 returned "executed on | | | | |
| | | 11/12/91", filed. | | | | |
| 45-48 Mar | 23 | Transcripts of 11/19/91, 11/20/91, 11/21/91, 11/22/91, filed. | | | | |
| 49 Apr. | 24 | ORDER THAT THE SENTENCING SCHEDULED FOR 5/4/92 IS CANCELLED | | | | |
| | | AND RESCHEDULED FOR 6/1/92 AT 2:00 P.M. IN COURTROOM 17-A, | | | | |
| | | FILED. | EC | | | |
| | | 4/24/92 entered. | | | | |
| 50 May | 15 | Govt's Proposed Sentencing Findings of Fact and Conclusions of | | | | |
| | | Law, Certificate of Service, filed. | | | | |
| 51 " | 29 | Govt's Amended Proposed Sentencing Findings of Fact and | | | | |
| | | Conclusions of Law, Certificate of Service, filed. | | | | |
| 52 Jun | 1 | SENTENCING FACTUAL FINDINGS AND CONCLUSIONS OF LAW, CAHN, J. | EC | | | |
| | | RE: DEFT. TO PAY A FINE OF $5,000. IMMEDIATELY WITH THE PAYMENT | | | | |
| | | OF ANY REMAINING BALANCE TO BE A CONDITION OF SUPERVISED | | | | |
| | | RELEASE, PLUA A $95,000 FINE TO BE PAID AS A CONDITION OF | | | | |
| | | SUPERVISED RELEASE BUT NOT DUE NOW, FILED. | | | | |
| | | 6/2/92 ENTERED AND COPIES MAILED. | | | | |
| 53 " | 1 | ORDER OF FORFEITURE RE: THE SUM OF $78,600., FILED. | EC | | | |
| | | 6/2/92 ENTERED AND COPIES MAILED. | | | | |
| 54 " | 10 | SENTENCE OF 6/1/92: | | | | |
| | | Cts. 1,4,5,7,8 - Impr. 292 months, supervised release 10 yrs., | | | | |
| | | fine of $100,000 and Special Assessment of $250.00, filed. | | | | |
| 55 " | 10 | JUDGMENT AND COMMITMENT ORDER DATED 6/1/92, FILED. | EC | | | |
| | | 6/10/92 entered. | | | | |

( C O N T )

13a

| Interval (per Section II) | Start Date End Date | Ltr. Code | Total Days |
|---|---|---|---|

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET    *U. S. vs*    RIVERA, JAIME

AO 256A

| 91 | 00394 | 01 |

| DATE | | PROCEEDINGS (continued) | V. EXCLUDABLE DELA |
|---|---|---|---|

| | | | (a) | (b) | (c) |
|---|---|---|---|---|---|

| | DATE | | PROCEEDINGS (continued) (Document No.) | (a) | (b) | (c) |
|---|---|---|---|---|---|---|
| | **1992** | | | | | |
| 56 | Jun | 10 | Deft's Notice of Appeal, filed. (USCA 92-1485) | | | |
| | | | 6/11/92 Entered and Copy to: U.S. Court of Appeals; T. Rice, Esq., AUSA; Cahn, J.; U.S. Probation. | | | |
| 57 | " | 10 | Copy of Clerk's Notice of Appeal to U.S. Court of Appeals, filed. | | | |
| | | | 6/11/92 Entered and Copy to: U.S. Court of Appeals; Cahn, J.; Appeals Clerk. | | | |
| 58 | " | 29 | Copy of Transcript Purchase Order, filed. | | | |
| — | " | 30 | RECORD COMPLETE FOR PURPOSES OF APPEAL–TRANSCRIPT NOT NEEDED | | | |
| 59 | Sept | 18 | CERTIFIED COPY OF ORDER RECEIVED FROM U.S. COURT OF APPEALS THAT,WITH THE AGREEMENT OF THE PARTIES, THE APPEAL IS DIS-MISSED BY THE CLERK UNDER RULE 42(b) F.R.A.P., FILED. 9/18/92 ENTERED. | | | |
| 60 | Dec | 3 | Copy of Judgment Returned: " On 11/24/92 Executed",  filed. | | | |
| | **1993** | | | | | |
| 61 | May | 6 | DEFT'S PRO SE MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28:2255, FILED. | | | |
| 62 | " | 21 | Transcript of 10/28/91, filed. | | | |
| 63 | " | 21 | Transcript of 11/18/91, filed. | | | |
| 64 | Jul. | 7 | Govt's response to deft's motion to vacate, set aside or correct sentence, Cert. of Service, filed. | | | |
| 65 | " | 19 | ORDER DATED 7/15/93 THAT A HEARING ON DEFT'S 2255 MOTION SHALL TAKE PLACE ON 9/13/93 AT 2:00 P.M. IN COURTROOM 17A, FILED. 7/20/93 ENTERED AND COPIES MAILED. | EC | | |
| 66 | Sep. | 13 | ORDER DATED 9/9/93 THAT THE HEARING SCHEDULED FOR 9/13/93 IS CANCELLED AND RESCHEDULED FOR 11/22/93 AT 9:30 A.M. IN COURT-ROOM 17A, FILED. | | | |
| | | | 9/14/93 entered. | EC | | |
| 67 | Oct. | 25 | ORDER THAT THE WARDEN OF FCI, RAYBROOK, RAYBROOK, NEW YORK, PRODUCE BEFORE THIS COURT THE BODY OF JAMIE RIVERA, ON NOVEMBER 22, 1993 AT 9:30 A.M. BEFORE THE HONORABLE EDWARD N. CAHN, COURTROOM 17A, TO APPEAR FOR A HEARING IN THE ABOVE CAPTIONED CASE, FILED.           10/26/93 ENTERED. | EC | | |
| 68 | Nov | 29 | HEARING OF 11/22/93 RE: 2255 Motion, filed. | EC | | |
| 69 | Dec | 6 | Transcript of 11/22/93, filed. | | | |
| | **1994** | | | | | |
| 70 | Apr | 25 | Deft's Brief in Support of Motion to Vacate, Set Aside or Correct Sentence, Certificate of Service, filed. | | | |
| 71 | " | 26 | Govt's Supplemental response to deft's motion to vacate, set aside or correct sentence, Cert. of Service, filed. | | | |
| 72 | May | 20 | MEMORANDUM CAHN, J. AND ORDER DATED 5/19/94 THAT DEFT'S MOTION PURSUANT TO 28:2255 IS DENIED, FILED. | EC | | |
| | | | 5/20/94 entered & copies mailed. | | | |
| 73 | " | 31 | Deft's Notice of Appeal, filed.  (USCA # 94-1583) copies to: USCA, AUSA, Judge Cahn, Appeals Clerk. | | | |
| 74 | " | 31 | Copy of Clerk's Notice to USCA, filed. | | | |

(O V E R)  *14a*

| | Interval (per Section II) | Start Date End Date | Ltr. Code | Tot. Day |
|---|---|---|---|---|

UNITED STATES DISTRICT COURT
CRIMINAL DOCKET

AO 256A

| DATE | PROCEEDINGS (continued) | V. EXCLUDABLE DELAY | | | |
|---|---|---|---|---|---|
| | (Document No.) | (a) | (b) | (c) | (d) |
| **1994** | | | | | |
| 75 Jun 16 | Copy of Transcript Purchase Order, filed. | | | | |
| — " 17 | RECORD COMPLETE FOR PURPOSES OF APPEAL (transcript not needed) | | | | |
| **1995** | | | | | |
| 76 Apr 10 | CERTIFIED COPY OF JUDGMENT RECEIVED FROM U.S. COURT OF APPEALS THAT THE JUDGMENT OF THE DISTRICT COURT ENTERED 5/20/94 IS AFFIRMED 4/11/95 ENTERED. | | | | |
| **1996** | | | | | |
| 77 Nov 12 | DEFT'S MOTION TO GRANT RELIEF FROM JUDGMENT PURSUANT TO RULE 60(B) F.R. CIV. P, MEMORANDUM, CERTIFICATE OF SERVICE, FILED. | | | | |
| 78 Dec 9 | CERTIFICATION THAT IT APPEARING THAT THE DEFT'S MOTION TO GRANT RELIEF FROM JUDGMENT IS THE FUNCTIONAL EQUIVALENT OF A PETITION FOR HABEAS CORPUS PURSUANT TO 28:2255 AND SHOULD BE TREATED BY THIS COURT AS A PETITION FOR HEBEAS CORPUS PURSUANT TO 28:2255. THIS CASE IS A SECOND OR SUCCESSIVE 28:2255 PETITION, AND IT IS ACCORDINGLY SUBMITTED TO THE U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT FOR CONSIDERATION, FILED. | EC | | | |
| **1997** | | | | | |
| 79 Jan 14 | CERTIFIED COPY OF ORDER RECEIVED FROM U.S. COURT OF APPEALS THAT PETITIONER'S MOTION FOR RELIEF PURSUANT TO RULE 60(b) AS DOCKETED IN U.S.D.C., E.D. PA AND WAS TRANSFERRED BY THE DISTRICT COURT AS AN APPLICATION PURSUANT TO 28:2244 TO FILE A SECOND OR SUCCESSIVE HABEAS CORPUS PETITION IS DENIED, FILED. 1/15/97 ENTERED. | | | | |
| **=1998=** | | | | | |
| 80 JUL 8 | DEFTS PRO SE MOTION FOR RESENTENCING, MEMORANDUM, CERT. OF SERVICE, FILED. | | | | |
| 81 " 22 | ORDER DATED 7/22/98 THAT THE GOVT. SHALL FILE A RESPONSE TO DEFT'S MOTION FOR RESENTENCING ON OR BEFORE 8/13/98, FILED. 7/23/98 ENTERED AND COPIES MAILED. | EC | | | |
| 82 July 30 | Government's Response to Defendant's Motion for Frsentencing, Certificate of Service. | | | | |
| 83 Aug 7 | Deft's Pro-Se Reply to Govt's Response to Deft's 18:3582(c)(2) Motion, Certificate of Service, filed. | | | | |
| 84 " 27 | DEFT'S PRO SE MOTION TO MODIFY/REPLY TO GOVT'S 8/10/98 LETTER, CERT. OF SERVICE. | | | | |
| **1999** | | | | | |
| 85 Jan 11 | DEFT'S PRO SE MOTION FOR LEAVE TO SUPPLEMENT, FILED. | | | | |
| 86 Apr 26 | ORDER DATED 4/26/99 THAT THIS CASE IS REASSIGNED FROM THE CALENDAR OF JUDGE CAHN TO THE CALENDAR OF JUDGE DALZELL, FILED. 4/27/99 ENTERED AND COPIES MAILED. | JG | | | |
| 87 Oct 8 | DEFT'S PRO SE MOTION FOR A STATUS REPORT, CERTIFICATE OF SERVICE, FILED. | | | | |
| **2000** | | | | | |
| 88 Jan. 24. | Defendant's pro se letter dated 1/20/00, Re: Response to motions. filed. | | | | |

( C O N T ) 15a

| | Interval (per Section II) | Start Date End Date | Ltr. Code | Total Days |
|---|---|---|---|---|

DC 111A
(Rev. 1/75)

## CIVIL DOCKET CONTINUATION SHEET

| PLAINTIFF | | DEFENDANT | DOCKET NO. 91-394-01 |
|---|---|---|---|
| | | RIVERA, JAIME | PAGE ___ OF ____ PAGES |

| DATE | NR. | PROCEEDINGS | |
|---|---|---|---|
| **2000** | | | |
| 89 Feb | 9 | ORDER DATED 2/8/00 THAT DEFT'S MOTION FOR RESENTENCING IS DENIED. DEFT'S MOTIONS " TO MODIFY/REPLY" (DOCKET ENTRY # 84), "FOR LEAVE TO SUPPLEMENT" (DOCKET ENTRY # 85) AND "FOR A STATUS REPORT (DOCKET ENTRY # 87) ARE DENIED AS MOOT, FILED. 2/9/00 ENTERED AND COPIES MAILED. | SD |
| 90 " | 24 | Deft's Pro Se Notice of Appeal of the Order Denying Motion for Resentencing (Document # 89), filed. (USCA 00-1220) 2/24/00 Entered and Copy to: U.S. Court of Appeals, Tim Rice, Esq., AUSA, Jaime Rivera, Dalzell, J., U.S. Probation. | |
| 91 " | 24 | Copy of Clerk's Notice of Appeal to U.S. Court of Appeals, filed. 2/24/00 Entered and Copy to: U.S. Court of Appeals, Dalzell, J., Appeals Clerk. | |
| -- Apr | 10 | Notice of Appeal Filing Fee paid, Receipt # 400 728860. ($105.00) | |
| " " | 12 | CERTIFIED AND TRANSMITTED RECORD ON APPEAL TO U.S. COURT OF APPEALS AS TO JAIME RIVERA (PLEADINGS 60, 84, 85, 86, not included). | |

16a

**EXHIBIT - 9**

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAIME RIVERA,                          :      CIVIL NO. 1:CV-01-0096

      Petitioner                     :

        v.                            :      (Judge Caldwell)

WARDEN, L.S.C.I. ALLENWOOD,            :      (Magistrate Judge Blewitt)

      Respondent                     :

**DECLARATION OF W. SMITH**

I, W. Smith, hereby declare and state as follows:

1.   I am currently employed by the United States Department of
     Justice, Federal Bureau of Prisons ("FBOP"), as a Case
     Management Coordinator (CMC), at the Low Security Correctional
     Institution (LSCI), Allenwood, Pennsylvania.   I began my
     career at the United States Penitentiary (USP) Lewisburg on
     July 26, 1981.   On January 4, 1996, I transferred to LSCI
     Allenwood as an Unit Manager.   On February 15, 1997, I became
     the CMC at LSCI Allenwood.

2.   In my official capacity, I have access to records, including,
     but not limited to, records regarding an inmate's sentencing,
     dates of confinement, places of confinement and release
     information.

3.   I have reviewed the petition filed by the Petitioner, inmate

Jaime Rivera, Federal Register Number 44529-066. Essentially, the Petitioner alleges that the Bureau of Prisons has relied on erroneous information in his Pre-Sentence Investigation Report (P.S.I.) to apply a Public Safety Factor of "Greatest Severity Offense" to his custody classification.

4.   The Petitioner was sentenced on June 1, 1992, in the United States District Court for the Eastern District of Pennsylvania, to a two-hundred and ninety-two (292) month sentence, a fine of $100,000.00, a felony assessment of $250.00, and a ten year term of supervision, for "Conspiracy To Distribute Cocaine" in violation of 21 U.S.C. § 846; and "Distribution Of Cocaine" in violation of 21 U.S.C. § 841 (a)(1); "Distribution Of Cocaine Within 1,000 Feet Of A School" in violation of 21 U.S.C. § 860; and "Possession With Intent To Distribute Cocaine" in violation of 21 U.S.C. § 841 (a) (1). Petitioner's projected release date is October 11, 2012, via Good Conduct Time Release. I have attached a copy of the Petitioner's "Sentence Monitoring Computation Data" sheet to my declaration as Attachment #1.

5.   Chapter 7 of Bureau of Prisons Program Statement 5100.07, entitled Security Designation and Custody Classification Manual, lists nine Public Safety Factors (PSFs) which are applied to inmates who are not appropriate for placement at an

institution which would permit inmate access to the community (i.e., MINIMUM security). These nine factors are based on certain demonstrated behaviors which require increased security measures to ensure the protection of society. Among these PSFs is "Greatest Severity Offense". I have attached a copy of Chapter 7 to my declaration as Attachment #2.

6.   Appendix B of this same program statement states that "Any drug offender whose current offense includes the following criteria shall be scored in the greatest severity category: The offender was part of an organizational network and he or she organized or maintained ownership interest/profits from **large-scale** drug activity, ***AND*** the drug amount equals or exceeds the amount below: cocaine - greater than or equal to 10,000 gm, 10 K, or 22 lb". (Emphasis in the original) I have attached a copy of Appendix B to my declaration as Attachment #3.

7.   The Petitioner was initially designated to the Federal Correctional Institution (FCI) Ray Brook, New York, on October 27, 1992. At that time, he was classified with the Public Safety Factor of "Greatest Severity" as his Pre-Sentence Investigation report (P.S.I.) demonstrated that the Petitioner's offense involved 15-50 kilos of cocaine and that he had received an increase of four levels as a result of his

leadership or organizer role in the offense.   The PSI also
stated that the Petitioner had directed a minimum of seven
individuals in the drug trafficking conspiracy, that he had
made major decisions regarding the drug distribution and that
he was responsible for directing the flow of cocaine from New
York through establishments in Allentown, Pennsylvania.   The
Petitioner was also given a PSF of "Sentence Length" as his
sentence was more than twenty (20) years.   I have attached a
copy of the petitioner's Pre-Sentence Investigation report to
my declaration as Attachment #4.

8.   On August 6, 1999, the Mid-Atlantic Regional Office of the
     Federal Bureau of Prisons approved the Petitioner for re-
     designation to L.S.C.I. Allenwood for "Nearer To Release
     Purposes" and "Hardship Conditions" (ailing mother).

9.   The Petitioner arrived at L.S.C.I. Allenwood on September 1,
     1999.

10.  During his initial classification and subsequent program
     reviews, the Petitioner's records were reviewed and once
     again, the Public Safety Factors of "Greatest Severity" and
     "Sentence Length" were applied.

11.  Based on all of the above information, the two Public Safety

Case 1:01-cv-00098-WWC    Document 5    Filed 03/07/2001    Page 171 of 172

Factors ("Greatest Severity Offense" and "Sentence Length") are appropriately applied and the Petitioner's custody classification is correct.

I certify that the documents attached to this declaration are true and correct copies of documents maintained in the ordinary course of business by the Federal Bureau of Prisons. Additionally, I declare that the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. §1746.

EXECUTED this 19th day of February, 2001.

W. SMITH
Case Management Coordinator
Low Security Correctional Institution
Allenwood, Pennsylvania

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JAIME RIVERA,                    :
                Petitioner       :
                                 :    No. 1:CV-01-0096
                v.               :
                                 :    (Judge Caldwell)
WARDEN, L.S.C.I. ALLENWOOD,      :    (Magistrate Judge Blewitt)
                Respondent       :

### AMENDED CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 7th day of March, 2001, she served a copy of the attached

GOVERNMENT'S EXHIBITS IN SUPPORT OF ITS
RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS

by placing said copy in a envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by sending said envelope and contents via Federal Express.

ADDRESSEE:

Cheryl Sturm, Esquire
408 Ring Road
Chadds Ford, PA 19317

ANITA L. LIGHTNER
Paralegal Specialist